UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| JOHN PARKS,<br><br>*Plaintiff,*<br><br>v.<br><br>LAKE OSWEGO SCHOOL DISTRICT; and LAKE OSWEGO SCHOOL BOARD,<br><br>*Defendants.* | Case No. 3:24-cv-1198<br><br>**COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF AND MONETARY DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiff John Parks is an experienced and distinguished track and field coach who has coached high school, college, professional, and Olympic athletes.

2. Most recently, Parks was the head track and field coach at Lake Oswego High School ("LOHS"), a public school located in Lake Oswego, Oregon.

3. LOHS is within the Lake Oswego School District (the "District"), which is overseen and governed by the Lake Oswego School Board (the "Board").

4. In mid-May 2024, Parks sent an email-letter to the Oregon School Activities Association ("OSAA"), a non-profit organization that regulates high school athletics in Oregon.

5. In his letter to the OSAA in advance of the Oregon state track and field championship later in May, Parks expressed his personal opinion on OSAA's

1

policies regarding transgender athletic participation, based on his decades of experience as a track coach at the Olympic, college, and professional ranks.

6. In Parks's view, as he expressed in his letter, OSAA's current policies on transgender athletes—particularly those that relate to athletes born as biological males who are allowed to compete as females—were flawed and posed a threat to the ongoing existence and integrity of female athletics.

7. Specifically, Parks suggested in his letter an "open" division in which transgender athletes could participate against each other. Parks noted that he believed that the open division could be a solution to the transgender athletic public debate, and would allow transgender athletes to compete in their own division while also preserving the integrity of female athletic competition.

8. He further noted in his letter that he fully supported transgender athletes competing and participating in an open division and shared that he has two transgender extended family members.

9. Shortly after sending his letter to the OSAA, officials with LOHS, the District, and Board commenced an investigation against Parks for expressing his personal views on OSAA's transgender athletic policies.

10. Later in June before the end of the LOHS school year, officials informed Coach Parks that he was being terminated from his coaching and teaching positions at LOHS based on his letter that he sent to the OSAA.

11. In terminating Parks for expressing his private and personal views on transgender athletes participating against female athletes, the District and

Board engaged in an unlawful retaliatory investigation and subsequent termination, depriving Coach Parks of his First Amendment free speech rights.

12. This lawsuit seeks to vindicate Coach Parks's Free Speech and Due Process rights under the First and Fourteenth Amendments of the U.S. Constitution.

## PARTIES

13. Plaintiff John Parks is the former head coach of track and field, the former head coach of cross-country, and a former teaching assistant at Lake Oswego High School. He lives in West Linn, Oregon, in Clackamas County.

14. Defendant Lake Oswego School District is a school district located in Lake Oswego in Clackamas County.

15. Defendant Lake Oswego School Board is the elected governing body that oversees and promulgates policies for the District and LOHS.[1]

## JURISDICTION AND VENUE

16. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. This case raises federal claims arising under 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the U.S. Constitution. Plaintiff brings his claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, Federal Rules of Civil Procedure 57 and 65, and the general legal and equitable powers of this Court.

---

[1] *See* https://www.losdschools.org/lake-oswego-school-board.

17. Venue is proper in this Court because all Defendants have their offices located in the District of Oregon, 28 U.S.C. § 1391(b)(1), and a substantial part of the events and omissions giving rise to the claims occurred in Clackamas County in the Portland Division, 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

### *The Board's Policy on Nondiscrimination and Bullying*

18. The Board promulgates and publishes policy for the District and LOHS.[2]

19. The Board's policy on nondiscrimination, "AC—Nondiscrimination," adopted in 2008 and readopted in 2015, 2017, and 2022,[3] states:

> The district prohibits discrimination and harassment on any basis protected by law, including but not limited to . . . sex, sexual orientation, gender identity . . . .

20. The Board's policy on harassment and intimidation, entitled "GBNA—Hazing, Harassment, Intimidation, Bullying, Menacing, or Cyberbullying—Staff," adopted in 2009, and readopted or revised in 2010, 2013, 2015, 2016, and 2019,[4] states:

---

[2] *See* https://www.losdschools.org/lake-oswego-school-board/losd-policies.

[3] *See* https://www.losdschools.org/lake-oswego-school-board/losd-policies/losd-policies-details-2/~board/policies/post/nondiscrimination.

[4] *See* https://www.losdschools.org/lake-oswego-school-board/losd-policies/losd-policies-details-2/~board/policies/post/gbna-ar-hazing-harassment-intimidation-bullying-menacing-or-cyberbullying-reporting-procedures-staff.

> Hazing, harassment, intimidation, bullying, menacing, and acts of cyberbullying of staff or third parties by staff, students, or third parties is strictly prohibited and shall not be tolerated in the district . . . . Staff whose behavior is found to be in violation of this policy will be subject to consequences and appropriate remedial action which may include discipline, up to and including dismissal.

21. The Board's policy on nondiscrimination makes it clear that it prohibits discrimination, "on any basis protected by law."

22. A staff member's expression of concern for the welfare of both transgender and non-transgender athletes in a letter to a third party and conversations with third parties does not constitute discrimination prohibited by law.

23. The Board's policy on hazing and harassment, even construed liberally, would not preclude conversations, emails, and letters by staff to third parties where the primary concern is the welfare of all student athletes.

***Parks's Communication with OSAA and its "Asserted Gender" Policies***

24. OSAA's policy on Gender Identity Participation is contained within OSAA's 2023-2024 Handbook, which may be found on its public website.[5]

25. The OSAA policy "allow[s] students to participate for the athletic or activity program of their consistently asserted gender identity while providing a fair and safe environment for all students."[6]

---

[5] Oregon School Activities Association, *2023-2024 Oregon School Activities Association Handbook* (P. Weber ed./pub., 2024), 80-82, ¶ 38, available at https://osaa.org/docs/handbooks/osaahandbook.pdf (last visited Jul. 24, 2024).

[6] *Id.* at p. 80.

26.     In other words, a student athlete may participate in either the boys or girls division based on the gender the student "asserts."

27.     In mid-May on his own time away from his duties at LOHS and from his personal email address, Parks sent an email-letter to Peter Weber, Executive Director of OSAA and Kelly Foster, OSAA Assistant Executive Director, expressing his personal opinion on the potential creation of a separate track league or "open" division for transgender athletes. Attached as **Exhibit 1** is a true and correct copy of the letter.

28.     In the letter, Parks opined that the inconsistency between OSAA policies allowing certain transgender women born as biological males, such as a specific athlete attending the Portland Public Schools, to compete against biological women contravened the International Olympic Committee standards and other world athletic organizations' standards and rules.

29.     He further stated that the OSAA's "asserted gender" policy placed too much national media attention on transgender athletes, and overall he expressed concern for all track athletes, transgender and non-transgender alike.

30.     On July 2, 2024, OSAA Executive Director Weber confirmed in an email to Fox News Correspondent Dan Springer that, "The email that John Parks sent our office didn't violate either the Gender Identity Participation policy or Rule 3 in our Handbook." Attached as **Exhibit 2** is a true and correct copy of Weber's email.

31.     Moreover, although he was not required to do so, Parks advised his principal and athletic director of his **Exhibit 1** letter to the OSAA, and they did not object to the contents of the letter.

32.     Parks sent the letter as a private citizen on his own time to express his opinion based on his decades-long experience as a track and field coach.

33.     Parks spoke out in his letter on a matter of public concern and importance: whether transgender athletes born as biological males should compete against athletes born as biological females in athletic competitions.

34.     Coach Parks's official duties at LOHS did not require him to communicate with OSAA officials to recommend proposed changes in policies.

### *Marshall Haskins's Letter and Complaint Against Parks*

35.     On May 24, 2024, Marshall Haskins, OSAA representative on Diversity, Equity and Inclusion, and District Athletic Director at Portland Public Schools, wrote a letter about Parks to Larry Ramirez, Director of High School Education in the Salem-Keizer School District, and Louis Bailey, Executive Director of Secondary Programs at Lake Oswego School District.

36.     Haskins described Parks's email to OSAA and his actions "throughout the 23-24 track season and at the OSAA 6A State Championships" as "premeditated, calculated and discriminatory in an effort to deny our [transgender] student's participation at the state tournament and to create a hostile environment to shame our student." Attached as **Exhibit 3** is a true and correct copy of Haskins's letter.

7

37.    Haskins's **Exhibit 3** letter listed eight examples of what he claimed were Parks's "harassing discriminatory behavior" (quoted verbatim here):

   A. Sent an email to OSAA in an effort to stop our student from participating at the state track meet.

   B. Contacted coaches from other schools prior to the state tournament asking them to submit letters, emails, and call OSAA office to deny our student an opportunity to participate in the OSAA state tournament.

   C. Contacted coaches from other schools telling them to boycott medal presentation at state tournament.

   D. Coordinating phone calls with coaches to contact our families of student athletes related to the state tournament participation.

   E. Harassing our student athletes and their families prior and during the state tournament, forcing them to participate in his personal agenda though calls, email and on-site inquiries.

   F. Speaking negatively to our transgender student athlete on the podium at the medal presentation for the 200 M race.

   G. Communicating with student athletes at the state tournament, recommending they not participate in medal presentation if our student won either the 200 M or 400 M race.

   H. Riling up state tournament spectators in stands, including a large contingent from the Lake Oswego community to "boo" our student athlete during the medal presentation.

38.    These allegations in Haskins's letter were false.

39.    On the same day Haskins sent the letter to Ramirez and Bailey, Haskins also filed a complaint with Lake Oswego School District alleging that Parks violated the Lake Oswego School District Policy "AC-Nondiscrimination" by discriminating against a McDaniel High School transgender athlete.

8

*The District's Investigation and Termination*

40. On June 12, 2024, Kristen Colyer, Principal of Lake Oswego High School, sent a letter to Parks stating that, following an investigation from Haskins's complaint, there was a preponderance of the evidence that Parks violated the Board's AC-Nondiscrimination and "JFCF—Hazing, Harassment, Intimidation, Bullying, Menacing, Cyberbullying, Teen Dating Violence or Domestic Violence" policies. Attached as **Exhibit 4** is a true and correct copy of Colyer's letter.

41. There is no "JFCF" policy listed in the Lake Oswego School District policy page, only a "GBNA" policy with the same name.

42. Principal Colyer sent another letter to Parks terminating his employment at LOHS. Attached as **Exhibit 5** is a true and correct copy of Colyer's second letter.

43. A reasonable person of ordinary firmness in Parks's position would refrain from speaking out in the future on transgender athletic participation as a result of the District, LOHS, and Board's (1) investigation and (2) eventual termination of Parks and non-renewal of his contract.

44. On June 25, 2024, Parks appealed the findings of the investigation and the termination of his contract by denying all factual allegation found by LOHS except for the fact he sent a letter on May 15 to OSAA officials regarding his opinion on OSAA's policy on transgender participation. Attached as **Exhibit 6** is Parks's appeal letter.

45. In addition to sending a letter to the OSAA, Parks also sent a letter as a private citizen to Oregon State Senator Rob Wagner, attached hereto as **Exhibit 7**.

46. In his letter to Senator Wagner, Parks expressed his opinion on transgender athletic eligibility.

47. Later, Principal Colyer verbally advised Parks that "he had no right to send the letter to Senator Wagner," and it was "illegal" for him to do so.

48. A reasonable person of ordinary firmness in Parks's position would refrain from sending elected representatives letters in the future to speak out on transgender athletic participation as a result of Principal Colyer's verbal comments to Parks.

*Coach Parks's Injury*

49. Parks has coached 9 Olympic and World Championship medalists and 16 NFL football players in his storied coaching career. He has coached at least one participant in the U.S. Olympic Track and Field Trials each meet since 1988. Attached as **Exhibit 8** is a copy of his resume.

50. Parks was the head track and field and cross-country coach and a special education teaching assistant for the 2023-2024 season and school year and for the foreseeable future at LOHS.

51. The termination and revocation of Parks's coaching and teaching contract caused economic injury and prevented him from assisting students and athletes he has worked with through previous seasons and school years.

52. The investigation and termination of Parks's contract was based on his letter that he sent to the OSAA.

53. And his letter that he sent to Senator Wagner factored into his termination based upon Principal Colyer's verbal comments to him.

54. The investigation by the District did not provide Parks with the evidence that allegedly supported the District's finding.

55. No name-clearing hearing was provided to Parks.

56. Derogatory and false statements about his conduct were placed in his personnel file.

57. But for his letter to the OSAA, he would still be a teacher and coach at LOHS.

58. But for his letter to Senator Wagner, he would still be a teacher and coach at LOHS.

59. The District and Board have provided no protection or due process for Parks to protect his liberty interest in his good name and reputation, and his property interest in maintaining future employment with LOHS. Nor did the District provide him with evidence regarding his alleged violation of policies.

60. Since his contract was terminated, Parks has applied to return to both his cross-country and track and field positions, which the District opened up to anyone. But the District denied his applications.

61. Upon information and belief, the LOHS head track and field coaching position has yet to be filled and is posted online seeking applicants.

62.     Parks has also been denied his special education teaching assistant position, for which he also applied.

63.     Parks did not violate any Board or District policies, or even the broader OSAA policies on discrimination or harassment.

64.     The investigation of Parks and his subsequent dismissal from LOHS therefore can only be categorized as retaliatory adverse actions arising from his letter to OSAA and the exercise of his free speech rights.

65.     Parks's letter to OSAA did not cause any disruption at LOHS of the normal and usual school functions.

66.     Parks's dismissal from LOHS can also be categorized as a retaliatory adverse action arising from his letter to Senator Wagner and the exercise of his free speech rights.

67.     Parks's letter to Senator Wagner did not cause any disruption at LOHS of the normal and usual school functions.

## CLAIMS FOR RELIEF

**COUNT ONE**
**(Against Lake Oswego School District**
**and Lake Oswego School Board)**
**42 U.S.C. § 1983 – First Amendment Retaliation**

68.     Parks incorporates the preceding paragraphs by reference.

69.     In *Pickering v. Bd. Of Educ.,* 391 U.S. 563, 574 (1968), the U.S. Supreme Court held that, "absent proof of false statements knowingly or recklessly made by him, a teacher's exercise of his right to speak on issues of

public importance may not furnish the basis for his dismissal from public employment."

70. Specifically, in that case the Court held that a teacher's letter to a local newspaper criticizing the school's excessive resources devoted to athletic programs over academics was a matter of public concern. *Id.*, at 571.

71. *Pickering* requires courts to balance the interests of the employee, as a citizen, in commenting on matters of public concern against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. *Id.*, at 568.

72. Further, the "non-renewal of a nontenured public school teacher's one-year contract may not be predicated on his exercise of First and Fourteenth Amendment rights." *Branti v. Finkel*, 445 U.S. 507, 515 (1980).

73. Here, at all relevant points Parks was engaged via his letter to the OSAA in speaking on a matter of public concern and not engaged in speech, "ordinarily within the scope" of his duties as a coach and teacher at LOHS. *Lane v. Franks*, 573 U.S. 228, 240 (2014).

74. Parks was also not speaking according to a government policy nor was he intending to convey a government created message on behalf of LOHS, the District, or Board. See *Id.*

75. The adverse actions against him by the District and Board's investigation and eventual termination and non-renewal of his contract would cause a reasonable person of ordinary firmness from not exercising in the future

13

his protected right to speak out on a matter of public concern as a private citizen.

76. Parks did not violate any of the District or Board's policies with his letter to the OSAA.

77. Nor did his letter violate OSAA's policies as confirmed by the OSAA Executive Director Weber.

78. Further, his letter to Senator Wagner as a private citizens speaking out on a matter of public concern was likewise protected by the First Amendment.

79. Because the District and Board deprived Parks of his First Amendment right to free speech, he is entitled to a preliminary and permanent injunction ordering the District and Board to remove the derogatory comments related to the investigation and termination from his employment record and personnel file.

80. He is further entitled to a preliminary and permanent injunction ordering the District and Board to restore him to his position as head coach of the track and field and cross-country teams and to his special education teacher assistant position at LOHS.

81. Parks is further entitled to a declaratory judgment declaring that the District and Board violated his First Amendment free speech rights under the *Pickering* framework.

82. Parks is also entitled to monetary damages against the District and Board for the deprivation of his First Amendment free speech rights.

**COUNT TWO**
**(Against Lake Oswego School District**
**and Lake Oswego School Board)**
**42 U.S.C. § 1983 – Fourteenth Amendment Procedural Due Process**

83. Parks incorporates the preceding paragraphs by reference.

84. The Fourteenth Amendment guarantees that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

85. Procedural due process under the Fourteenth Amendment requires that, "when a State seeks to terminate an interest . . it must afford notice and an opportunity for hearing appropriate to the nature of the case before the termination becomes effective." *Bell v. Burson*, 402 U.S. 535, 542 (1971).

86. In order for the Fourteenth Amendment procedural due process requirements to apply, the interest being deprived must involve life, liberty, or property.

87. A property interest in a benefit requires more than an abstract need or desire and more than a unilateral expectation . Instead, there must be a legitimate claim of entitlement to it. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

88. The Supreme Court further articulated that "[a] person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the

benefit and that he may invoke at a hearing." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972).

89. Here, Parks had a protected property interest in continued employment due to a mutually explicit understanding that coaches would be routinely rehired as he had in the past.

90. As Parks noted in his appeal letter, the investigation into him falsely stated that his coaching contract required yearly applications, but that such applications were not required prior to the 2024 track season and are not required for any other coaches at LOHS.

91. Despite this, Parks still applied to his open track and field, cross-country, and teacher assistant positions and was denied those positions, even though he is well-qualified.

92. Because LOHS has never before required Parks or coaches for any sport, including track and cross country, to apply yearly, there was a mutually explicit understanding that Parks would enjoy continued employment in his coaching and teaching positions at LOHS.

93. Moreover, a person has a protected liberty interest in his good name, reputation, honor, or integrity because of what the government is doing to him in which case, "notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971).

94. Therefore, Parks has a protected liberty interest because his honor and integrity are at stake.

95. The false allegations that Parks engaged in discrimination and harassment as a result of his letter to the OSAA impinges on his good name, reputation, honor, and integrity.

96. Falsely claiming Coach Parks acted in a discriminatory manner when he made all efforts to comply with the OSAA's own policies besmirches his reputation and character as a highly accomplished and elite track and field coach and a compassionate coach and teacher.

97. This contravenes that character shown by Parks in the treatment of his own transgender athletes at LOHS, and the concern mentioned in his letter to OSAA officials.

98. Because Parks has both a protected property interest in continual employment at LOHS and a liberty interest in protecting his good name, reputation, honor, and integrity, he was entitled to procedural due process, including notice, a name clearing hearing, and a meaningful opportunity to respond to the false allegations levied against him, prior to the investigation and termination becoming effective.

99. For example, Parks was presented with no evidence that he communicated with student athletes to recommend they not participate in the medal ceremony that the transgender student won.

100. Without giving Parks the evidence to which he could respond, the chance of erroneous deprivation of his protected interest was extremely high.

Lacking such information, Parks did not have notice and an opportunity to be heard on the false allegations levied against him.

101. The fiscal and administrative burdens on the District and Board to give Parks the evidence to which he could respond would be exceptionally low.

102. Because the District and Board deprived Parks of his Due Process rights under the Fourteenth Amendment, he is entitled to a preliminary and permanent injunction ordering the District and Board to remove the derogatory comments related to the investigation and termination from his employment record and personnel file.

103. He is further entitled to a preliminary and permanent injunction ordering the District and Board to restore him to his positions at LOHS as head coach of the track and field and cross-country teams and to his special education teacher assistant position.

104. Parks is further entitled to a declaratory judgment declaring that the District and Board violated his Fourteenth Amendment Due Process rights.

105. Parks is also entitled to monetary damages against the District and Board for the deprivation of his Fourteenth Amendment Due Process rights.

## **PRAYER FOR RELIEF**

Plaintiff John Parks respectfully requests that this Court provide the following relief:

A. Under Counts I and II, preliminary and permanent injunctions ordering the District and Board to remove the derogatory comments related to the investigation and termination from his employment record and personnel file;

B. Under Counts I and II, a preliminary and permanent injunction ordering the District and Board to restore him to his position at LOHS as head coach of the track and field and cross-country teams and to his special education teacher assistant position;

C. Under Counts I and II, a declaratory judgment declaring that the District and Board violated his rights pursuant to the First and Fourteenth Amendments;

D. Under Counts I and II, monetary damages against the District and Board in an amount to be determined at trial;

E. A jury to be empaneled;

F. Attorney's fees and costs as a prevailing party under Counts I and II pursuant to 42 U.S.C. § 1988; and

G. All further relief that the Court deems just, proper, or equitable.

Dated: July 24, 2024              Respectfully submitted,

                                        *s/ Luke D. Miller*
                                        Luke D. Miller
                                        Miller Bradley Law, LLC.
                                        1567 Edgewater St. NW
                                        PMB 43
                                        Salem, OR 97304
                                        luke@millerbradleylaw.com

M.E. Buck Dougherty III*
LIBERTY JUSTICE CENTER
13341 W. U.S. Highway 290
Building 2
Austin, TX 78737
(512) 481-4400 - telephone
bdougherty@libertyjusticecenter.org

*Pro hac vice admission forthcoming*

*Attorneys for Plaintiff John Parks*

20