# Exhibit 6

To:     Kristen Colyer, Principal

CC:     Chris Coleman, Athletic Director/Assistant Principal
        Donna Watson, Executive Director, Human Resources
        Lou Bailey, Executive Director, Secondary Schools

From:   John Parks, Head Track Coach

Date:   June 25, 2024

This is official notice of my appeal of the termination of my position as Head Coach for Track & Field and Head Coach for Cross Country. You note the positions require applying yearly but that was not required prior to the 2024 track season nor has the process been done for all the other coaches at LOHS.

The basis of the appeal is that the findings in the letter I was given on June 12, 2024, are not based on fact. Furthermore, the school has violated my First Amendment rights by terminating me for expressing my personal beliefs in support of Title IX. (*Pickering v. Board of Education AND Kennedy v. Bremerton*) In addition, the school has also acted illegally as there is no evidence that the school has silenced all discussions on this topic, just that they have attempted to silence my position, which is in violation of the law. (*Tinker v. Des Moines Independent Community* School *District*)

The *Kennedy v Bremerton* case is very important to this appeal, in this recent decision by the United States Supreme Court in that case, coach Kennedy was a high school football coach in Washington who who was instructed to stop leading prayers on football field. After he refused to follow these directives he was terminated. The US Supreme Court found that Bremerton Schools violated his First Amendment protections. The *Kennedy* ruling establishes that even though coaches are at-will employees retain First Amendment rights and can not suffer adverse consequences for exercising their First Amendment rights. Due to statements protected by the First Amendment, you actions violate the US Supeme Court's holdings in *Kennedy.*

I am prepared to pursue all legal remedies for this violation of my rights and the defamatory statements made by the PPS Athletic Director that your own findings report noted as not factual yet you still included in part his accusations despite the loss of credibility. The district has failed to respond to requests for evidence and facts of the investigation so as to provide a fair and full rebuttal.

*Factual Inaccuracies:*

1. The finding that I violated a directive by Athletic Director Chris Coleman not to discuss issues related to transgender athletic performance in athletic events, specifically at the OSAA state track meet is inaccurate. The only direction I received from AD Coleman prior to State meet was to insure I not advocate for our students to protest and speak on the issue in a

positive manner. The next directive from Coleman came at 3:09pm on day one of the meet, May 17 (I have text messages and phone records that prove this).   I did not have discussions with any student or coach at the meet on this topic after this directive. I have witnesses available who were with me throughout the meet that can support these facts including 2 students that shadowed me in all areas of the stadium to film LO athlete's performances as well as coaching staff that were not interviewed as part of this investigation.

> Prior to this directive, I did have one conversation with an athlete from Roosevelt HS who was expressing her frustration over having to compete versus the transgender athlete. I told her we had some athletes that wanted to protest as well. I did not in that discussion advocate for a protest nor was there any further discussion of this matter with her or any other athlete or coach from any other school.. I also talked to one other  coach at the meet to ask his opinion on the subject.  At no time did I organize or attempt to advocated for a protest with him.

2. The finding that my email to the OSAA was a violation of board policy is without merit.  I wrote the email with the prior approval of Coleman that I received in his office on May 9 when he shared a story of 2 West Linn HS boys that approached their AD last year to discuss transitioning to play football, then girls basketball and track as a protest to the transgender competition rue.  Following my sending the email, it was forwarded by Kelly Foster, to Coleman and he told me "She wanted you to know that she can't respond but she is in agreement with you."  He said he also concurred on the issue and never said anything to warn me that writing the letter would be a violation of Board Policy.

> As you are aware, I also spoke to you on May 15th to bring you up to speed on my having written the letter with the intent of having you advocate for future change in support of our students' Title IX rights. You concurred with my views and only warned me to say nothing that would reflect poorly on LO, which I did not. I have several individuals who can testify to my receiving support from Foster, Coleman and yourself via discussions I had in the hours and days after before the state meet with coaching staff and some parents of LO athletes as well electronic messages confirming this as well.

> To say the that this letter which was written to protect our female athletes' Title IX rights was somehow discriminatory or harassing is without merit.  I was writing my personal opinion and asking for consideration of a rule change.  At no time does the letter state I am advocating on behalf of Lake Oswego Schools or representing the school.  I did identify myself as the coach, but also identified my other coaching positions I'd held in my long coaching history and made it clear I was advocating on behalf of the sport I have spent my career coaching.

During the termination discussion you said my letter was advocating to exclude the transgender PPS student from participating. I have consistently advocated for participation for all athletes including transgender athletes. I merely asked for the intent of Title IX to be honored so as not to exclude fair competition. I advocated for a future change in support of female athletes' rights to fair competition with some form of an open division. The science here is without question. There is ZERO controversy surrounding trans-male athletes competing in the male category. This is because they do not have an unfair physical advantage and so are not impacting the cis-male athletes scholarship and competitive opportunities. This fact alone should cause some reflection.

As we agree in the summary hearing, at no time either in the letter or any conversation, have I ever advocated that transgender athletes should be stopped or prevented from competing. I support 100% competitive opportunities for transgender students but in a fashion that encourages more transgender student participation where they are not subjected to the boos we witnessed at State and are not forced to choose between competing with physical advantages versus their cis-female classmates and teammates and instead can be celebrated for their own efforts. A just comparison is the OSAA not compelling wheelchair athletes into able bodied races of either gender as a chair athlete has a similar competitive advantage over able bodied runners hence separate divisions in road and track races worldwide.

At no time does the letter include any hate or discriminatory language. If my suggestion of the proposed rule consideration is considered discriminatory then why is this the standard adopted at the national and international level and the majority of states? Athletes participating at the Nike HS Outdoor Nationals in Eugene, are not eligible to compete if they haven't undergone a minimum of one year of hormone treatment. Is Lake Oswego suggesting that the esteemed international and national sports bodies and the majority of state high school associations are discriminating?

3. The finding that I contacted other coaches and encouraged them to write letters prior to the OSAA state meet is patently false as I contacted no coaches prior to the State meet. My due process rights entitle me to confront all evidence against me and I have been provided no evidence to support this allegation

4. The finding that I communicated with student athletes from other schools at the State meet recommending they not participate in the medal ceremony if the transgender student won an event is patently false. As noted above, I had one discussion, with one student from another school, prior to Coleman's directive,. At no time did I instruct or engage in a conversation recommending anyone not attend the medal ceremony. Similar to the

    allegation in paragraph above, I was presented with no evidence of my advocating for a protest to support this allegation.

5. The allegation that I spoke to coaches and student athletes asking what they planned to do if the transgender student won any events is patently false. I had two conversations as noted above, and this was not discussed. I would like all the evidence that the school gathered in regard to this allegation and conclusion. Similar to the allegation in paragraph above, I was presented with no evidence of my advocating for a protest to support this allegation.

6. The allegation that I was insubordinate of Coleman's directive to not discuss issues related to transgender athlete participation in athletic events specifically the OSAA State track meet is false. As noted above, I was not given any specific directive by Coleman regarding not discussing or trying to organize any type of protest until after I had two conversations (one with a student and one with a coach). These conversations did not recommend protest or attempt to organize any protest; they were simple conversations about a topic that was a main concern at the meet for anyone participating.

    Even if I had received Coleman's directive prior to these conversations, I would not have violated what he actually told me. What I was to advocate for protest which I never did. (again, his text messages indicate his failure to be any more specific than his original comments of keep discussions positive and not advocate for protest)

The basis of this finding was a complaint filed by PPS Athletic Director Marshall Haskins. He lacked the professional integrity to identify my role beyond serving as coach at LOHS, notifying my former school district that I departed over a year ago and sacrifice at great financial loss on coaching the athletes and also serving the students at LOHS in the Access program as an instructional assistant. This should've been a tip off to the lack of ethical veracity in his complaint. Your own investigation found no credibility to his claim of my riling up the crowd, of leading the booing or of speaking to the student on the award stand inappropriately. Further, Haskins alleged that I spoke with an athlete on award stand after the 200 meters despite not even in the stadium at the time because I was on the warmup field as you found in your findings. The numerous inaccuracies of Haskins' allegations causes his entire complaint to lack credibility including sending the complaint to a school I haven't worked at in over a year. I strongly suspect that you have only spoken to one LO track and field student in conducting your investigation. This investigation is woefully lacking.

You stated at the end of our summary meeting when my status was questioned by the OSEA representative, you said "John did a terrific job in our Access program." I was informed by your

staff member yesterday that I wouldn't be rehired in our Access program and he made clear he was unable to provide a reason why despite full support from the staff members Todd Morgan and Lindsey Ludington for my work.

All conclusions that I was being discriminatory, or harassing are false.  In fact, quite the opposite, my request of the OSAA was to consider how the current rule violates our female athletes' Title IX rights.  This is why rules have been adopted at the national level and the majority of other states.  Further, the school has made zero efforts to silence discussion advocating for trans females to participate in female sports.  The School cannot pick sides and silence only one side of a debate of public concern without violating my First Amendment rights, especially when my speech is protected as I was advocating for Title IX, NOT engaging in any discriminatory or harassing behavior.

In addition, in the meeting where you informed me of my termination, you stated that I could not write to my Senator as a private citizen seeking a rule or law change.  This is a direct violation of my First Amendment rights as further established in *Pickering*.  I find it interesting that this directive was not included in the written response but you felt the need to bring my letter into the meeting for discussion.

For all of the reasons above, I request immediate reinstatement to my positions as Head Coach of Track and Field, Head Coach of Cross Country, and restoration of my position in the Access program as an Instructional Assistant.

John Parks