## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| JOHN PARKS,<br><br><br>*Plaintiff,*<br><br>v.<br><br>LAKE OSWEGO SCHOOL DISTRICT; LAKE OSWEGO SCHOOL BOARD; OREGON SCHOOL ACTIVITIES ASSOCIATION; PORTLAND PUBLIC SCHOOLS; and MARSHALL HASKINS, individually and *in his representative capacity for OREGON SCHOOL ACTIVITIES ASSOCIATION and PORTLAND PUBLIC SCHOOLS*<br><br><br>*Defendants.* | Case No. 3:24-cv-1198<br><br><br><br>**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW Pursuant to Fed. R. Civ. P. 65**<br><br><br><br><br><br>**Request For Oral Argument<br>Expedited Hearing Requested** |

Plaintiff John Parks files this motion for preliminary injunction and supporting memorandum of law pursuant to Fed. R. Civ. P. 65(a), LR 7-1, and LR 65, against Defendants Lake Oswego School District and Lake Oswego School Board (collectively "Lake Oswego"). In compliance with LR 7-1(a), the parties through their respective counsel made a good faith effort by video conference on October 7, 2024, to resolve the dispute and have been unable to do so. Plaintiff Parks requests oral argument pursuant to LR 7-1(d)(2). And in compliance with LR 7-1(g), Plaintiff further seeks an expedited hearing, and Defendant Lake Oswego opposes an expedited hearing.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................ 3

   Coach Parks's Speech as a Private Citizen on Matters of Public Concern ........... 3

   Lake Oswego's Response to Coach Parks's Speech to the OSAA ......................... 4

   Coach Parks's Speech Did Not Disrupt Lake Oswego Track Activities ................ 5

LEGAL STANDARD ....................................................................................................... 7

ARGUMENT .................................................................................................................... 7

   A.  This Court should issue a preliminary injunction and order Defendants to restore Coach Parks to his position as coach and teacher at Lake Oswego High School pending the outcome of trial ........................................... 7

      1.  Coach Parks is likely to succeed on the merits of his First Amendment free speech claim. .................................................................... 8

         a.  Coach Parks's letter to the OSAA about its policies on transgender athletes was protected speech. ........................................ 10

         b.  Lake Oswego took and adverse employment action against Coach Parks. ................................................................................... 11

         c.  Coach Parks's protected speech to the OSAA was a motivating factor for Lake Oswego's adverse employment action against him. ................................................................................................. 13

         d.  Lake Oswego cannot carry its burden that it had a legitimate interest in workplace efficiency that outweighed Coach Parks's protected speech. .................................................................................. 13

      2.  Coach Parks will be irreparably harmed absent a preliminary injunction because he has lost his First Amendment rights. ................... 14

      3.  A preliminary injunction serves the public interest. ............................. 15

   B.  It is appropriate to waive the bond requirement under Rule 65(c) ............... 16

CONCLUSION ............................................................................................................... 17

CERTIFICATE OF COMPLIANCE ............................................................................. 18

CERTIFICATE OF SERVICE ...................................................................................... 19

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Associated Press v. Otter,*
  682 F.3d 821 (9th Cir. 2012) ................................................................ 15

*Blair v. Bethel Sch. Dist.,*
  608 F.3d 540 (9th Cir. 2010) ........................................................ 12, 13

*Branti v. Finkel,*
  445 U.S. 507 (1980) ............................................................................. 8

*Brodheim v. Cry,*
  584 F.3d 1262 (9th Cir. 2009) ...................................................... 11, 12

*Connecticut General Life Ins. Co. v. New Images of Beverly Hills,*
  321 F.3d 878 (9th Cir. 2003) .............................................................. 16

*Coszalter v. City of Salem,*
  320 F.3d 968 (9th Cir. 2003) ........................................................ 11, 12

*Dahlia v. Rodriguez,*
  735 F.3d 1060 (9th Cir. 2013) ...................................................... 11, 12

*Dodge v. Evergreen Sch. Dist. #114,*
  56 F.4th 767 (9th Cir. 2022) ................................................ 9, 10, 11, 13

*Elrod v. Burns,*
  427 U.S. 347 (1976) ............................................................................ 15

*Eng v. Cooley,*
  552 F.3d 1062 (9th Cir. 2009) ......................................................... 9, 13

*Garcetti v. Ceballos,*
  547 U.S. 422 (2006) ......................................................................... 9, 11

*Garcia v. Bd. of Educ.,*
  777 F.2d 1403 (10th Cir. 1985) ........................................................... 15

*Greisen v. Hanken,*
  925 F.3d 1097 (9th Cir. 2019) ...................................................... 11, 12

*Index Newspapers LLC v. City of Portland,*
  474 F. Supp 3rd 1113 (D. Or. Jul. 23, 2020) ...................................... 15

*Johnson v. Couturier,*
  572 F.3d 1067 (9th Cir. 2009) ............................................................ 16

*Kennedy v. Bremerton Sch. Dist.,*
  597 U.S. 507 (2023) .............................................................................. 8

*Lane* v. *Franks*,
573 U. S. 228 (2014) ................................................................. 8

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ............................................. 15, 16

*Mendocino Env't Ctr. v. Mendocino County*,
192 F.3d 1283 (9th Cir. 1999) ................................................ 12

*Mulligan v. Nichols*,
835 F.3d 983 (9th Cir. 2016) ................................................. 12

*New York Times Co. v. United States*,
403 U.S. 713 (1971) ............................................................... 15

*Nken v. Holder*,
556 U.S. 418 (2009) ........................................................... 7, 15

*Pickering v. Board of Education*,
391 U.S. 563 (1968) ................................................................. 8

*Rosenblatt v. Baer*,
383 U.S. 75 (1966) ................................................................ 15

*Schrier v. Univ. of Colo.*,
427 F.3d 1253 (10th Cir. 2005) ................................................ 7

*Tinker* v. *Des Moines Independent Community School Dist.*,
393 U. S. 503 (1969) ................................................................ 8

*Virginia v. Hicks*,
539 U.S. 113 (2003) ................................................................. 8

*Warsoldier v. Woodford*,
418 F.3d 989 (9th Cir. 2005) .................................................. 14

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ............................................................... 7, 8

**Statutes**

48 U.S.C. § 1983 ..................................................................... 7

**Other Authorities**

Fed. R. Civ. P. 65 .............................................................. 7, 16

**Rules**

W.D. Mich. LCivR 7.1(a) .......................................................... i

W.D. Mich. LCivR 7.2(b) .......................................................... i

**Constitutional Provisions**

U. S. Const. amend. I..................................................................................................... 8

## PRELIMINARY STATEMENT

Plaintiff John Parks is an experienced and distinguished track and field coach who has coached high school, college, professional, and Olympic athletes. Most recently, Parks was the head track and field coach at Lake Oswego High School, a public school in Lake Oswego, Oregon.

In mid-May 2024, Parks sent an email-letter to the Oregon School Activities Association, a non-profit organization that regulates high school athletics in Oregon. In his letter, sent in advance of the Oregon state track and field championship to be held later in May, Parks expressed his personal opinion on OSAA's policies regarding transgender athletic participation, based on his decades of experience as a track coach at the Olympic, college, and professional ranks. In Parks's view, as he expressed in his letter, OSAA's policies on transgender athletes—particularly those that relate to athletes born as biological males who are allowed to compete as females—were flawed and posed a threat to the ongoing existence and integrity of female athletics.

Specifically, Parks suggested in his letter the creation of an "open" division in which transgender athletes could participate against each other. Parks noted that he believed the open division could be a solution to the transgender athletic public debate, and would allow transgender athletes to compete in their own division while also preserving the integrity of female athletic competition. He further noted in his letter that he fully supported transgender athletes competing and participating in an open division and shared that he has two transgender extended family members.

But shortly after he sent his letter to the OSAA, Lake Oswego officials commenced an investigation against Parks for expressing his personal views on a matter of public concern—OSAA's transgender athletic policies. And later in June, before the end of the school year, officials informed Coach Parks that he was being terminated from his coaching and teaching positions at Lake Oswego High School because he sent his letter to the OSAA.

In terminating Coach Parks because he expressed his private and personal views, Lake Oswego engaged in unlawful retaliation in violation of Coach Parks's First Amendment free speech rights.

Parks's expression of his personal opinions as a private citizen, entirely outside his official duties as Lake Oswego High School track and field coach, did not disrupt Lake Oswego High School activities or functions, nor did it disrupt the track and field team or lead to inefficiency at the School—except any inefficiency caused by his termination.

Lake Oswego's termination of Coach Parks as a coach and teacher, in violation of his First Amendment rights, have caused him continuous and ongoing irreparable injury. Coach Parks therefore respectfully requests that the Court hold an expedited hearing and issue a preliminary injunction to restore him to his positions at the school.

## <u>STATEMENT OF FACTS</u>

**Coach Parks's Speech as a Private Citizen on a Matter of Public Concern**

In or around May 2024, on his own time away from his duties at Lake Oswego High School, the Plaintiff, Coach John Parks, sent an email-letter to Peter Weber, Executive Director of the Oregon School Activities Association ("OSAA"), the non-profit organization that regulates high school athletics in Oregon, and Kelly Foster, OSAA's Assistant Executive Director. *See* Declaration of John Parks ("Parks Decl.") at ¶ 6. A true and correct copy of that letter is attached to the First Amended Complaint ("Amend. Compl.") as **<u>Exhibit 1</u>**. Parks Decl. at ¶ 6. In his letter, Coach Parks expressed his personal opinion supporting the idea of creating a separate track league or "open" division for transgender high-school athletes. Parks Decl. at ¶ 7.

In his letter, Coach Parks opined that OSAA policies allowing certain transgender women born as biological males, such as a specific athlete attending the Portland Public Schools, to compete against biological women contravened the International Olympic Committee standards and other athletic organizations' standards and rules. Parks Decl. at ¶ 8; Amend. Compl., **<u>Exhibit 1</u>**. He further stated that the OSAA's "asserted gender" policy placed too much national media attention on transgender athletes, and overall he expressed concern for all track athletes, transgender and non-transgender alike. Amend. Compl., **<u>Exhibit 1</u>**.

Parks sent his letter to OSAA as a private citizen to express his opinion, based on his decades-long experience as a track and field coach, on a matter of public concern and importance: whether transgender athletes born as biological males should compete against athletes born as biological females in athletic competitions. Parks Decl. at ¶ 6; Amend. Compl., **Exhibit 1**.

Coach Parks's official duties at Lake Oswego High School did not require him to communicate with OSAA officials to recommend proposed changes in policies. Parks Decl. at ¶ 10. In addition to sending a letter to the OSAA, Parks also sent a letter as a private citizen to Oregon State Senator Rob Wagner. Parks Decl. at ¶ 9. A true and correct copy of that letter is attached to the First Amended Complaint as **Exhibit 7**. Parks Decl. at ¶ 9. That letter also expressed Coach Parks's opinion on transgender athletic eligibility. Parks Decl. at ¶ 9; Amend. Compl., **Exhibit 7**.

**Lake Oswego's Response to Coach Parks's Speech to the OSAA**

After Coach Parks sent his letter to OSAA, Marshall Haskins, representative for OSAA and the Portland Public Schools ("PPS"), filed a complaint with Lake Oswego against Parks complaining of his letter. Parks Decl. at ¶ 12. Attached to the First Amended Complaint as **Exhibit 3** is a copy of Haskins's letter. Parks Decl. at ¶ 12.

On June 12, 2024, Kristen Colyer, Principal of Lake Oswego High School, sent a letter to Parks stating that, following an investigation from Marshall Haskins's complaint, there was a preponderance of the evidence that Parks violated the Board's AC-Nondiscrimination and "JFCF—Hazing, Harassment, Intimidation,

Bullying, Menacing, Cyberbullying, Teen Dating Violence or Domestic Violence" policies. Parks Decl. at ¶ 11. Attached as **<u>Exhibit 4</u>** to the First Amended Complaint is a true and correct copy of Principal Colyer's letter. Parks Decl. at ¶ 11.

It is Coach Parks's understanding that there is no "JFCF" policy listed in the Lake Oswego School District policy page, only a "GBNA" policy with the same name. Parks Decl. at ¶ 13. Shortly after her first letter in June, Principal Colyer sent another letter to Parks terminating his employment at Lake Oswego High School. Parks Decl. at ¶ 14. A true and correct copy of Colyer's second letter is attached to the First Amended Complaint as **<u>Exhibit 5</u>**. Parks Decl. at ¶ 14. Principal Colyer also verbally advised Parks that "he had no right to send the letter to Senator Wagner," and it was "illegal" for him to do so. Parks Decl. at ¶ 15.

### Coach Parks's Speech Did Not Disrupt Lake Oswego Track Activities

Both before and after Coach Parks sent his letter of OSAA officials, many parents of student-athletes on the Lake Oswego High School track and field team have observed him displaying upstanding leadership and character and acting in a non-discriminatory manner while coaching their children on the track and field team at Lake Oswego High School. *See* Declaration of Anthony Donelson ("Donelson Decl.") at ¶¶ 4-5; Declaration of Arianna Tobin ("Tobin Decl.") at ¶¶ 4-5; Declaration of Brian Altman ("Altman Decl.") at ¶¶ 4-5; Declaration of Frank Ha ("F. Ha Decl.") at ¶¶ 5-6; Declaration of Katie Ha ("K. Ha Decl.") at ¶¶ 4-5; Declaration of Jennifer Cobb ("Cobb Decl.") at ¶¶ 4-5; Declaration of Kristin Binkley ("Binkley Decl.") at ¶¶ 4-5; Declaration of Rick Cross ("Cross Decl.") at ¶¶ 4-5; Declaration of Shelley Prael

("Prael Decl.") at ¶¶ 4-5; and Declaration of Veronica Bauman ("Bauman Decl.") at ¶¶ 4-5.

After Coach Parks sent his letter to OSAA officials, these parents observed no disruption or difference in the efficiency of practices or meets where John Parks was the coach and where their child and other athletes on the Lake Oswego track and field team participated. Donelson Decl. at ¶ 5; Tobin Decl. at ¶ 5; Altman Decl. at ¶ 5; F. Ha Decl. at ¶ 6; K. Ha Decl. at ¶ 5; Cobb Decl. at ¶ 5; Binkley Decl. at ¶ 5; Cross Decl. at ¶ 5; Prael Decl. at ¶ 5; and Bauman Decl. at ¶ 5.

And after Coach Parks sent his letter to OSAA officials, the parents have not observed John Parks behaving in a manner which would violate the Board of Lake Oswego School District's policy on, "Intimidation, Bullying, Menacing, Cyberbullying, Teen Dating Violence, or Domestic Violence." Donelson Decl. at ¶ 6; Tobin Decl. at ¶ 6; Altman Decl. at ¶ 6; F. Ha Decl. at ¶ 7; K. Ha Decl. at ¶ 6; Cobb Decl. at ¶ 6; Binkley Decl. at ¶ 6; Cross Decl. at ¶ 6; Prael Decl. at ¶ 6; and Bauman Decl. at ¶ 6.

Nor do the parents think that Coach Parks's letter to OSAA officials violated this Lake Oswego School District policy. Donelson Decl. at ¶ 6; Tobin Decl. at ¶ 6; Altman Decl. at ¶ 6; F. Ha Decl. at ¶ 7; K. Ha Decl. at ¶ 6; Cobb Decl. at ¶ 6; Binkley Decl. at ¶ 6; Cross Decl. at ¶ 6; Prael Decl. at ¶ 6; and Bauman Decl. at ¶ 6.

## LEGAL STANDARD

Under Fed. R. Civ. P. 65, a preliminary injunction is proper where the movant shows he "is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit has clarified that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). Two factors—balance of equities and public interest— merge when the government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

**A. This Court should issue a preliminary injunction and order Defendants to restore Coach Parks to his position as coach and teacher at Lake Oswego High School pending the outcome of trial.**

Plaintiff John Parks has made a clear showing that he is entitled to a preliminary injunction. And this Court should issue one ordering Lake Oswego officials to restore him to his position as coach and teacher at Lake Oswego High School pending the outcome of trial. Coach Parks is likely to succeed on the merits of his Section 1983 claim pursuant to the First Amendment, and he will be irreparably harmed absent an injunction. The balance of equities tips in his favor, and an injunction serves the public interest.

### 1. Coach Parks is likely to succeed on the merits of his First Amendment free speech claim.

Under the first preliminary injunction factor, Coach Parks is likely to succeed on the merits of his First Amendment free speech claim because Lake Oswego retaliated against him for expressing his personal views. *See Winter*, 555 U.S. at 20.

The First Amendment states, "Congress shall make no law . . . abridging the freedom of speech." U. S. Const. amend. I. This fundamental right means that the government may not "chill" citizens' constitutionally protected speech. *Virginia v. Hicks*, 539 U.S. 113, 119 (2003). Specifically, this further means that the "non-re-newal of a nontenured public school teacher's one-year contract may not be predi-cated on his exercise of First and Fourteenth Amendment rights." *Branti v. Finkel*, 445 U.S. 507, 515 (1980).

In a recent case analogous to this one, the U.S. Supreme Court reminded "that the First Amendment's protections extend to 'teachers and students,' neither of whom 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 527 (2023) (citing *Tinker* v. *Des Moines Independent Community School Dist.*, 393 U. S. 503, 506 (1969); *Lane* v. *Franks*, 573 U. S. 228, 231 (2014)).

Before *Tinker*, the Supreme Court held in *Pickering v. Board of Education* that, "absent proof of false statements knowingly or recklessly made by him, a teacher's exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment." 391 U.S. 563, 574 (1968); *see also*

*Garcetti v. Ceballos*, 547 U.S. 422 (2006). A government employer  may not "restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens." *Garcetti*, 547 U.S. at 422. And public employees "must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Id*.

To establish a prima facie First Amendment retaliation claim, the plaintiff must prove that "(1) []he engaged in protected speech; (2) the defendants took an 'adverse employment action' against h[im]; and (3) h[is] speech was a 'substantial or motivating' factor for the adverse employment action." *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 776 (9th Cir. 2022). Whether a public employee, like Coach Parks here, has engaged in speech protected by the First Amendment depends on whether he "spoke on a matter of public concern," and whether he "spoke as a private citizen or public employee." *Dodge*, 56 F.4th at 777 (citing *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 961 (9th Cir. 2011)).

If the plaintiff establishes a First Amendment retaliation prima facie case, "the burdens of evidence and persuasion . . . shift to the Defendants to show that the balance of interests justified their adverse employment decision." *Eng v. Cooley*, 552 F.3d 1062, 1074 (9th Cir. 2009). In that scenario, a defendant must come forward with proof that it had a legitimate administrative interest in suppressing the speech that outweighed the plaintiff's First Amendment rights. *Dodge*, 56 F.4th at 776-77 (citing *Pickering*, 391 U.S. at 568).

Here, Coach Parks's letter to the OSAA on its transgender athletic policies was protected speech under the First Amendment. His speech that he expressed to the OSAA did not occur within the scope of his official coaching or teaching duties and was made in his capacity as a private citizen. It was about a matter of public concern—OSAA's transgender policies. Lake Oswego High School's interest in the efficiency of its track and field program did not weigh against Coach Parks's free speech rights. Indeed, the record shows that his letter to the OSAA caused no disruption to the track and field program. And his protected speech was a motivating factor in Principal Colyer's adverse employment action removing Coach Parks as head track and field coach; Colyer would not have removed Coach Parks as track coach and opened his position up to new applicants but for his letter that he sent to the OSAA. *See Dodge*, 56 F.4th at 776.

### a. Coach Parks's letter to the OSAA about its policies on transgender athletes was protected speech.

Coach Parks sent his letter to OSAA as a private citizen to express his opinion based on his decades-long experience as a track and field coach. *See* Parks Decl. at ¶ 6; Amend. Compl., **Exhibit 1**. And Parks spoke out in his letter on a matter of public concern and importance: whether transgender athletes born as biological males should compete against athletes born as biological females in athletic competitions. Coach Parks's official duties at Lake Oswego High School did not require him to communicate with OSAA officials to recommend proposed changes in policies.

Therefore, Coach Parks has established the first prong of his First Amendment retaliation claim that his letter to the OSAA was protected speech because he spoke as a private citizen on matter of public concern, wholly separate from any official duties that he undertakes as a track and field coach at Lake Oswego High School. *See Dodge*, 56 F.4th at 776-77; *Garcetti*, 547 U.S. at 422.

### b. Lake Oswego took an adverse employment action against Coach Parks.

The second element of a prima facie First Amendment retaliation claim is an adverse employment action. *Dodge*, 56 F.4th at 778. To determine whether an adverse employment action occurred for purposes of a First Amendment retaliation claim, courts apply the "reasonably likely to deter" test. *Greisen v. Hanken*, 925 F.3d 1097, 1113 (9th Cir. 2019).

Under this test, the plaintiff must prove that the employer's action was "reasonably likely to deter [them] from engaging in constitutionally protected speech." *Id.* (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 970 (9th Cir. 2003)). The plaintiff need not have suffered a tangible loss. *See Brodheim v. Cry*, 584 F.3d 1262, 1269-70 (9th Cir. 2009). The purpose of protection against retaliation for engaging in protected speech is to stop "actions by a government employer that 'chill the exercise of protected' First Amendment rights." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1078 (9th Cir. 2013) (en banc) (quoting *Coszalter*, 320 F.3d at 974-75).

The key question is whether the retaliatory activity "would 'chill or silence a person of ordinary firmness' from continuing to speak out." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 n.1 (9th Cir. 2010) (quoting *Mendocino Env't Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999)). The "precise nature of the retaliation is not critical to the inquiry." *Coszalter*, 320 F.3d at 974.

Courts have recognized that "[v]arious kinds of employment actions may have an impermissible chilling effect," including "minor acts of retaliation," *Dahlia*, 735 F.3d at 1079 (citing *Coszalter*, 320 F.3d at 975), and "[i]nformal measures, such as 'the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation.'" *Mulligan v. Nichols*, 835 F.3d 983, 989 n.5 (9th Cir. 2016) (citation omitted). Courts also recognize that the insinuation or threat that "some form of punishment or adverse regulatory action" may follow can also chill a person from speaking and violate the First Amendment. *Greisen*, 925 F.3d at 1114 (quoting *Brodheim*, 584 F.3d at 1270); *Coszalter*, 320 F.3d at 976-77 (holding that even a "threat of disciplinary action" may constitute adverse employment action for purposes of First Amendment retaliation).

Here, Lake Oswego High School Principal Colyer's actions of commencing an investigation against Coach Parks, her two letters to him (**Exhibits 4 and 5**), and opening up his job to new track and field coach applicants would reasonably deter someone in Coach Parks's position from engaging in constitutionally protected speech as he did with his letter to OSAA. Principal Colyer's actions would chill or

silence a person of ordinary firmness in Coach Parks's situation from continuing to speak out to the OSAA. *See Blair*, 608 F.3d at 543 n.1.

Coach Parks has established the second prong of his First Amendment retaliation claim that Lake Oswego took an adverse employment action against him. *See Dodge*, 56 F.4th at 776.

### c. Coach Parks's protected speech to the OSAA was a motivating factor for Lake Oswego's adverse employment action against him.

In her **<u>Exhibit 4</u>** letter that she sent to Coach Parks regarding her findings, Principal Colyer expressly cited "evidence that John Parks sent an email to OSAA" that violated Lake Oswego Board policies. Thus, under the third prong it is undisputed that Parks's letter to the OSAA was a substantial motivating factor for Lake Oswego's adverse employment action against him. *See Dodge*, 56 F.4th at 776.

### d. Lake Oswego cannot carry its burden that it had a legitimate interest in workplace efficiency that outweighed Coach Parks's protected speech.

Having established a prima facie First Amendment retaliation claim, the burden shifts to Lake Oswego "to show that the balance of interests justified their adverse employment decision." *See Eng,* 552 F.3d at 1074 (9th Cir. 2009). But Lake Oswego cannot show that it had any interest that outweighs Coach Parks's First Amendment free speech rights.

To the contrary, several parents of student-athletes on the Lake Oswego High School track and field team as set forth above and in the attached Declarations

observed Coach Parks displaying upstanding leadership and character and acting in a non-discriminatory manner while coaching their children.

These same parents observed no disruption or difference in the efficiency of practices or meets where Parks was the coach and where their child and other athletes on the Lake Oswego track and field team participated, *before* Parks sent his letter to the OSAA. Nor did these parents observe John Parks behaving in a manner which would violate the Board of Lake Oswego School District's policy on, "Intimidation, Bullying, Menacing, Cyberbullying, Teen Dating Violence, or Domestic Violence," *after* Parks sent his letter to the OSAA.

And parents of student-athletes on the Lake Oswego track and field team under Parks's leadership do not think that his letter to OSAA officials violated this Lake Oswego School District policy.

**2. Coach Parks will be irreparably harmed absent a preliminary injunction because he has lost his First Amendment rights.**

Coach Parks suffered irreparable injury as a result of his removal as track and field coach from Lake Oswego High School following his letter to the OSAA, including the loss of his First Amendment rights. These harms are ongoing and continuous absent a preliminary injunction.

A "party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (cleaned up). "The loss of First Amendment

freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) (plurality opinion) (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971)).

Therefore, because Parks has established a prima facie First Amendment retaliation claim as set forth above, he has thus also shown that his injury is irreparable without an injunction.

### 3.  A preliminary injunction serves the public interest.

The third and fourth merged factors—balance of equities and the public interest—favor a preliminary injunction restoring Coach Parks as coach and teacher at Lake Oswego High School. *See Nken*, 556 U.S. at 435.

Speech about public policy—like OSAA's transgender policies—is at the core of the First Amendment's protection because there is "a strong interest in debate on public issues." *See Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966). "Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles." *Index Newspapers LLC v. City of Portland*, 474 F. Supp 3rd 1113, 1125 (D. Or. Jul. 23, 2020) (citing *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012)). And "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (cleaned up).

Therefore, the balancing of equities and the public interest tilt heavily toward the Court issuing a preliminary injunction in favor of Coach Parks "to prevent the violation of [his] constitutional rights." *See id.*

**B. It is appropriate to waive the bond requirement under Rule 65(c).**

Rule 65 requires that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant." Fed. R. Civ. P. 65(c). "The district court is afforded wide discretion," however,  regarding the bond requirement. *Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003). The district court may even "dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).

Here, Coach Parks seeks injunctive relief for the loss of his First Amendment rights, and Lake Oswego School District and Board have no realistic likelihood of harm if this Court issues a preliminary injunction restoring Parks as coach and teacher at Lake Oswego High School. Thus, the Court may waive Rule 65(c)'s bond requirement, and Coach Parks respectfully requests that the Court do so. *See Johnson,* 572 F.3d at 1086.

## **CONCLUSION**

For these reasons, Plaintiff John Parks respectfully requests that the Court issue a preliminary injunction ordering Lake Oswego School District and Board, and all parties acting in concert with them, to restore Parks as coach and teacher at Lake Oswego High School pending the outcome of trial.


Dated: October 7, 2024                    Respectfully submitted,

                                          *s/ Luke D. Miller*
                                          Luke D. Miller
                                          Miller Bradley Law, LLC.
                                          1567 Edgewater St. NW
                                          PMB 43
                                          Salem, OR 97304
                                          luke@millerbradleylaw.com

                                          M.E. Buck Dougherty III*
                                          LIBERTY JUSTICE CENTER
                                          7500 Rialto Blvd.
                                          Suite 1-250
                                          Austin, TX 78735
                                          (512) 481-4400 - telephone
                                          bdougherty@libertyjusticecenter.org

                                          * *Pro hac vice admission forthcoming*

                                          *Attorneys for Plaintiff John Parks*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the applicable word-count limitation under LR 7-2(b), because it contains 4,055 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated: October 7, 2024

_s/ Luke D. Miller_
Luke D. Miller

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing document and attachments were filed electronically with the Court's Case Management/Electronic Case Filing (CM/ECF) system. The Court and/or Clerk of Court may serve and give notice to counsel by CM/ECF electronic transmission. Moreover, I certify that the foregoing document was served via electronic mail upon counsel for the Lake Oswego Defendants:

> Taylor B. Lewis
> Hart Wagner LLP
> 1000 SW Broadway, 20th Floor
> Portland, Oregon 97205
> TBL@hartwagner.com
>
> *Counsel for Lake Oswego Defendants*

The 7th day of October 2024.

<u>*s/ Luke D. Miller*</u>
Luke D. Miller
