Karen O'Kasey, OSB No. 870696
E-mail: kok@hartwagner.com
Taylor B. Lewis, OSB No. 164263
E-mail: tbl@hartwagner.com
Zachariah H. Allen, OSB No. 122729
E-mail: zha@hartwagner.com
HART WAGNER LLP
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

     *Of Attorneys for Defendants*
     *Lake Oswego School District and*
     *Lake Oswego School Board*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JOHN PARKS**, | Case No. 3:24-cv-1198-JR |
| Plaintiff, | |
| v. | **LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO STRIKE** |
| **LAKE OSWEGO SCHOOL DISTRICT; LAKE OSWEGO SCHOOL BOARD; OREGON SCHOOL ACTIVITIES ASSOCIATION; PORTLAND PUBLIC SCHOOLS; and MARSHALL HASKINS, individually and *in his representative capacity for OREGON SCHOOL ACTIVITIES ASSOCIATION and PORTLAND PUBLIC SCHOOLS***, | |
| Defendants. | |

/ / /

/ / /

Page 1 -   **LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO STRIKE**

**LOCAL RULE 7 -1 CERTIFICATION**

Pursuant to Local Rule 7-1, the undersigned certifies conferring with plaintiff's counsel about the motion to strike. The parties were unable to reach a resolution and the Court's ruling is necessary.

**RESPONSE**

Defendants Lake Oswego School District and the Lake Oswego School Board (together, the "District"), oppose plaintiff's motion for a preliminary injunction. Plaintiff, who is seeking a mandatory injunction, has not met his heightened burdens of showing a clear likelihood of both success on the merits of his First Amendment retaliation claim and of irreparable injury, and the equities do not tip in his favor.

**MOTION TO STRIKE**

The District moves the Court to strike the declarations submitted by several Lake Oswego High School parents in support of plaintiff's motions. The assertions in those declarations are irrelevant. This Court has authority to strike declarations as part of its inherent power to manage its docket for the efficient resolution of cases. *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 403–04 (9th Cir. 2010).

The only issue for decision is whether plaintiff is entitled to a mandatory injunction requiring the District to give him a job in the middle of the current semester. That determination hinges on plaintiff's conduct at the 2024 OSAA Track and Field State Championship.

The assertions in the declarations—that plaintiff was a good coach, ran efficient practices, provided outstanding mentoring, etc.—have nothing to do with the issues presented by his First Amendment retaliation claim. In addition, the declarants are not qualified to offer conclusory legal assertions, *e.g.*, that plaintiff's letter to the OSAA did not violate school policy.

Page 2 -    **LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO STRIKE**

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

The Court should strike and disregard the declarations because they are irrelevant to the issues for decision.

## INTRODUCTION

Plaintiff's motion is based on two fundamental misrepresentations. First, he was never "terminated." He served out and was paid for the fixed terms of his temporary contracts as a special education assistant for the 2023–24 school year and coach of the Lake Oswego High School track team for the Spring 2024 season. Nothing required the District to offer plaintiff new contracts for the following school year. Plaintiff seeks an injunction requiring the District— in the middle of a school semester—to appoint him to positions for which he never had any legitimate contractual expectation.

Second, the District did not retaliate against plaintiff for sending his letter to the OSAA. The only thing the District did after learning about plaintiff's letter was to emphasize to him the importance of not raising those issues while coaching at the upcoming 2024 OSAA Track and Field State Championships. However, the District was required to open an investigation after receiving a third-party report that plaintiff acted unbecomingly, disrespectfully, and insubordinately at that state championship meet. During the course of that investigation, the District received information that plaintiff had, among other things, referred to a transgender female athlete from another school as a "fucking dude."

The District's response is supported by the legal authorities below, the pleadings on file, and the declarations of Chris Coleman ("Coleman Dec."), Kristen Colyer ("Colyer Dec."), Jennifer Schiele ("Schiele Dec."), and Donna Watson ("Watson Dec.").

/ / /

/ / /

Page 3 -   **LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO STRIKE**

## FACTS

The District hired plaintiff as a Special Education Assistant at Lake Oswego High School for ten months of the 2023-2024 school year.  (Colyer Dec. at Ex. 1.)  His contract stated this was a temporary position from August 30, 2023, to June 13, 2024.  (*Id.*)  Plaintiff acknowledged and accepted those terms.  (Colyer Dec. at Ex. 2.)

The District also hired plaintiff to be the head track and field coach at Lake Oswego High School for the 2024 Spring season.[1]  He signed a limited term contract for February 26, 2024 through May 11, 2024.  (Colyer Dec. at Ex. 3.)  Plaintiff initialed a provision stating: "I understand that the term for this assignment is limited to the dates listed above."  (*Id.*)

On May 15, 2024, plaintiff sent a letter to members of the Oregon School Activities Association ("OSAA"), the governing organization for Oregon high school athletics.  (Pl.'s First Amended Compl. "FAC" at Ex. 1 (ECF 7–1).)  The letter's focus was opposition to the participation of a "high level transgender athlete" from a competing high school, McDaniel, in the 2024 OSAA State Track and Field Championship, set to begin the following day in Eugene.  Explaining that he was writing "**first as the Lake Oswego HS head track coach**," the letter referenced the McDaniel athlete ten times, contending that the athlete's participation would be a "travesty" that would make a "complete mockery out of the meet this weekend."  (FAC at Ex. 1, p. 1 (Emphasis added).)

That same day, one of the recipients at the OSAA forwarded the letter to Chris Coleman, Lake Oswego High School's Athletic Director.  (Coleman Dec. at Ex. 1.)  Coleman met with plaintiff that day to tell him that while performing his duties coaching Lake Oswego High School's track team at the State Championships, he was not to discuss the participation of the

**LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO STRIKE**

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

competing transgender athlete.  (Coleman Dec. at ¶ 3.)  He reminded plaintiff that he would be representing the school at the State Championships and stressed that plaintiff's focus needed to be on Lake Oswego's athletes and their hard work, accomplishments, and successes, rather than on the (settled) rules for the competition and participation of transgender athletes from other schools.  (*Id.*)

Following that visit, plaintiff went to the office of Lake Oswego High School's principal, Kristen Colyer, where he reiterated his views that the McDaniel athlete should not be allowed to participate in the women's division at the State Championships.  (Colyer Dec. at ¶ 5.)  Colyer pointed out that the school was bound by the rules of the competition and again reminded plaintiff that his focus at the meet needed to be on making sure his student-athletes felt supported and that the meet was a celebration of their efforts and accomplishments.  (*Id.*)

Plaintiff was not reprimanded, sanctioned, or disciplined after the District learned about his letter to the OSAA.  The District did not open an investigation after receiving the OSAA letter.  Plaintiff represented Lake Oswego High School and coached its athletes at the 2024 OSAA Track and Field State Championships.  This is undisputed.

On the morning of Saturday, May 18, the third day of the competition, Coleman called plaintiff to reemphasize what they discussed earlier that week.  (Coleman Dec. at ¶ 4.)  Shortly after the call, he sent a follow-up text to plaintiff:

> "Just to follow up.  We need to remind our kids to remain classy and respectful.  They have transgender teammates and classmates. They are representing not just themselves, but our team and school. Nothing they do today in the heat of the moment is going to create the change they're wanting.  But it could create a lot of blowback and negative attention on them and the school.  Please encourage them not to be impulsive in their response, but be proud of their

---

[1] Plaintiff had previously been hired as the Fall 2023 Cross Country coach under a separate term contract that expired after the first school semester.

**LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO STRIKE**

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

accomplishments and all the hard work they put in to get where
they are.  Thank you."

(*Id.* at Ex. 2.)

On May 24, 2024, the District received a complaint from Marshall Haskins, the Athletic

Director for Portland Public Schools and a member of the OSAA Executive Board.  (Colyer Dec.

at Ex. 4.)  Mr. Haskins claimed he was "appalled, disappointed, and embarrassed" by plaintiff's

"behavior," alleging that he "went out of his way to make a PPS African American Transgender

track athlete feel unwelcome and discriminated against throughout the 23-24 track season and at

the OSAA 6A State Championship in Eugene."  (*Id.*)

The complaint then enumerated eight separate allegations about plaintiff:

"A.    Sent email to OSAA in an effort to stop our student from participating at
       the state track meet.

"B.    Contacted coaches from other schools prior to the state tournament asking
       them to submit letters, emails and call OSAA office to deny our student an
       opportunity to participate in the OSAA state tournament

"C.    Contacted coaches from other schools telling them to boycott medal
       presentation at state tournament

"D.    Coordinating phone calls with coaches to contact our families of student
       athletes related to state tournament participation

"E.    Harassing our student athletes and their families prior and during the state
       tournament forcing them to participate in his personal agenda though calls,
       email and on site inquires

"F.    Speaking negatively to our transgender student athlete on the podium at
       the medal presentation for the 200 M race.

"G.    Communicating with student athletes at the state tournament,
       recommending they not participate in medal presentation if our student
       won either the 200 M or 400 M race

/ / /

Page 6 -    **LAKE OSWEGO SCHOOL DISTRICT AND LAKE
            OSWEGO SCHOOL BOARD'S OPPOSITION TO
            PLAINTIFF'S MOTION FOR PRELIMINARY
            INJUNCTION AND MOTION TO STRIKE**

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

"H.     Riling up state tournament spectators in stands, including a large
contingent from the Lake Oswego community to "boo" our student athlete
during the medal presentation"

(*Id.*)

By that point, plaintiff's coaching contract for the Spring 2023 season was already

expired by its terms; there were three weeks remaining on his temporary educational-assistant

contract.  (Colyer Dec. at Ex. 2.)

The District investigated the complaint by interviewing potential witnesses about each of

the allegations enumerated by Mr. Haskins.  (Colyer Dec. at ¶ 7.)  The answers revealed that

plaintiff had, directly contrary to his instructions from Mr. Coleman, used his coaching position

at the State Championships to press his views on transgender participation in women's events.

One coach reported that plaintiff had wanted him to join him in stopping the McDaniel

athlete's participation and pressed the idea of boycotting the medal presentation at the State

Championships if the transgender athlete made the podium.  (Colyer Dec. at ¶ 8.)

Another coach reported that plaintiff had asked him whether that coach knew of other

athletes who might be interested in joining an effort to resist transgender participation.  (Colyer

Dec. at ¶ 9.)  That coach reported that plaintiff had reached out to him about contacting that

coach's athletes about boycotting an event if the transgender student was allowed to participate.

(*Id.*)

A third coach reported that plaintiff had contacted athletes directly while they were

warming up to talk about the possibility of a boycott.  (Colyer Dec. at ¶ 10.)

A fourth coach reported that plaintiff had reached out to a former coach who had worked

with the fourth coach, and that the former coach had, at plaintiff's behest, called two athlete's

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

families about the possibility of boycotting the race or having the parents contact the OSAA about boycotting the race.  (Colyer Dec at ¶ 11.)

One female athlete from another school submitted a statement about plaintiff approaching her after one of her preliminary heats at the State Championships.  (Colyer Dec. at ¶ 12.)  She reported that plaintiff told her that he had talked to parents of other 400-meter women's competitors about not standing on the podium after the next day's 400-meter final (an event the McDaniel transgender athlete competed in).  (*Id.*)  He told her she could just stand behind the podium, leaving the McDaniel athlete standing up there alone, and that she could go up to get her medal afterwards.  (*Id.*)

Another coach reported that after Lake Oswego's athlete beat the McDaniel athlete for first place in the women's 400-meter event, that coach heard plaintiff exclaim, she "beat the fucking dude!"  (Colyer Dec. at ¶ 13.)

An OSAA official who had escorted the top three finishers to the podium, including the McDaniel student, reported that plaintiff had "marched over" to him and said this "can't happen again," that "it has to change," that "he knew republicans," and that "there were going to be eight men up there."  (Colyer Dec. at ¶ 14.)  This official reported that another person on the scene had to tell plaintiff, "That's enough."  (*Id.*)

On Wednesday, June 12, 2024—two days before the end of the school year and the expiration of plaintiff's contractual term as a special education assistant—Principal Colyer sent plaintiff a copy of the investigative findings, which found both that plaintiff had been "insubordinate" and that he had "discriminated against the McDaniel High School transgender athlete."  (FAC at ¶ 52, Ex 4.)  It found no evidence of certain allegations against him, for instance, that he had spoken negatively to the McDaniel athlete on the podium, or that he had

Page 8 -   **LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO STRIKE**

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

riled up the crowd to boo the McDaniel athlete.  (*Id.*)  It did find evidence, however, that plaintiff had contacted other coaches, athletes, and families, about transgender athletic participation at the State Championships, in contravention of Athletic Director Coleman's express instructions.  (*Id.*)  Those findings indicated that follow-up with Coach Parks would take place, but did not purport to impose any discipline.  (*Id.*)

In a separate letter of the same date, June 12, 2024, Principal Colyer informed plaintiff that all District coaching contracts were only for the current season and that "we will open the cross country and track coach positions for Lake Oswego High School for the 2024-25 school year."  (FAC at Ex. 5.)  That letter did not purport to impose any discipline or sanction upon plaintiff.  (*Id.*)  It also did not address plaintiff's position as a special educational assistant.  (*Id.*)

Plaintiff was fully paid for both his educational and coaching contract terms.  On his June 2024 timesheet, plaintiff indicated that he worked 5.5 hours on June 12, 2024, and took two hours of sick leave.  (Colyer Dec. at Ex. 5.)  On June 13, 2024, he claimed 7.5 hours of sick leave.  (*Id.*)  On June 14, 2024, the last day of the semester and his term teaching assistant contract, he claimed 7.5 hours of "non-contract duty."  (*Id.*)  He was paid in full under both his contracts.  (*Id.* at ¶ 15.)  Plaintiff's repeated representations that he was "terminated" are false.

On June 28, 2024, after both contracts had expired, plaintiff wrote to District Superintendent Jennifer Schiele, asking for guidance about an appeal from the investigation. (Schiele Dec. at Ex 1.)  Ms. Schiele replied by pointing out that plaintiff had signed two temporary contacts that had expired and wrote: "You are welcome to apply for any 2024-25 positions."  (*Id.*)  The District had posted a job opening for the Fall 2024 cross-country and Spring 2025 track and field head coaching positions on June 17, 2024, and these positions

Page 9 -    **LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO STRIKE**

**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

remained open.  (Watson Dec. at ¶¶ 2–3.)  Plaintiff never submitted an application for either coaching position.  (*Id.*)

## LEGAL STANDARDS

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 22 (2008).  Plaintiff generally must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) that an injunction is in the public interest.  *Id.* at 20.  The grant or denial of a motion for a preliminary injunction lies within the discretion of the district court.  *Chalk v. U.S. Dist. Ct. Cent. Dist. of California*, 840 F.2d 701, 704 (9th Cir. 1988).

Plaintiff ignores that seeking a mandatory injunction requires him to meet a "doubly demanding" burden.  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).  A prohibitory injunction—restricting the enjoined party from acting—merely preserves the status quo pending determination of the action on the merits.  *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014).  On the other hand, a mandatory injunction requiring the District to take affirmative action goes "well beyond" simply maintaining the status quo and is "particularly disfavored."  *Garcia*, 786 F.3d at 740.

In general, mandatory injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages."  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009).  It is not enough for plaintiff to show that this is a doubtful case; instead, he must meet a higher burden to show that the "facts and law *clearly* favor the

HART WAGNER LLP
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

moving party." *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979) (Emphasis added).

The relevant status quo is the "legally relevant" relationship between the parties before the controversy arose. *Arizona Dream*, 757 F.3d at 1061. The status quo on June 12, 2024, when the District issued its investigative findings, was that plaintiff's temporary coaching contract was already expired and his temporary educational assistant contract was expiring the following day. The "legally relevant" relationship was the one between the employer and the employee, whose employment contracts were expired. *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1320 (9th Cir. 1994) (coach whose contract expired seeking mandatory injunction for reinstatement "subject to a higher degree of scrutiny because such relief is particularly disfavored under the law of this circuit.").

Plaintiff's motion misstates the applicable standard: he is seeking a "particularly disfavored" mandatory injunction. He therefore must meet the "doubly demanding" burden of showing that both the law and facts "clearly" favor his position, not merely that he is "likely to succeed." *Garcia*, 786 F.3d at 740.

## LEGAL ARGUMENT

### I.    Plaintiff is Not Clearly Likely to Succeed on the Merits of his First Amendment Claim.

Plaintiff's First Amendment retaliation claim requires him to prove the following elements as his *prima facie* case: (1) that he engaged in protected speech; (2) that defendants took an "adverse employment action" against him; and (3) that the speech was a "substantial or motivating" factor for the adverse employment action. *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 776 (9th Cir. 2022).

**LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO STRIKE**

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

A.    *Protected Speech.*

The question of whether plaintiff engaged in protected speech involves two inquiries: (1) did plaintiff speak on a matter of public concern, and (2) did he speak as a private citizen or a public employee? *Id.* at 777.  "Statements are made in the speaker's capacity as citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform." *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009).

Plaintiff offers no argument supporting the conclusion that his speech and conduct at the State Championships—where he unquestionably was working in his capacity as a coach and representing the school when he was heard referring to a transgender competitor from another school as a "fucking dude"—qualified for First Amendment protection.

Contrary to his efforts to characterize the OSAA letter as expressing views on transgender athletic participation generally, that letter—written in his capacity "first as the Lake Oswego HS head track coach"—was obviously a targeted effort to prevent the participation of one, specific "high-level transgender athlete for McDaniel HS." (FAC at Ex. 1, p. 1).  The fact that the letter touched on matters of public concern does not negate the fact that its primary purpose was job-related.  *Eng*, 552 F.3d at 1070 (whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record).

B.    *There Was No Adverse Employment Action.*

Plaintiff's motion for preliminary injunction cites (1) commencing an investigation, (2) sending him the two letters on June 12, 2024, and (3) "opening up his job to new track and

**LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO STRIKE**

**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

field coach applicants" as the alleged adverse employment actions.[2]  (Pl.'s Mot. for Prelim. Inj. at 12.)  None of these constitute sufficient "adverse employment actions" for purposes of a First Amendment retaliation claim.

Plaintiff's burden is to show that the above actions would chill or silence a person of ordinary firmness from future First Amendment activities.  *White v. Lee*, 227 F.3d 1214, 1241 (9th Cir. 2000).  The inquiry is whether the alleged government actions are "reasonably likely to deter" an individual from engaging in protected speech.  *Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir. 2003).  Generally, a defendant must "make a decision or take a state action affecting the plaintiff's rights, benefits, relationship or status with the state" or the plaintiff must show "the loss of a valuable governmental benefit or privilege."  *Addison v. City of Baker City*, 258 F. Supp. 3d 1207, 1221 (D. Or. 2017), *aff'd*, 758 F. App'x 582 (9th Cir. 2018) (cleaned up). In some cases, the would-be retaliatory action is so insignificant that it does not deter the exercise of First Amendment rights, and thus does not constitute an adverse employment action within the meaning of the First Amendment retaliation cases.  *Coszalter*, 320 F.3d at 975.

Plaintiff contends the investigation itself would chill a person of ordinary firmness.  The District learned about the OSAA letter the day plaintiff sent it.  Plaintiff did not receive so much

---

[2] Plaintiff's motion for a preliminary injunction asks that the Court appoint him to *both* his former positions at Lake Oswego High School (coach and educational assistant) (Pl.'s Mot. for Prelim. Inj. at 17.)  However, plaintiff does not present any separate argument or evidence that the non-renewal of plaintiff's educational-assistant contract was an "adverse employment action" that was substantially motivated by his protected speech.  To the contrary, plaintiff only argues that his protected speech "was a motivating factor in Principal Colyer's adverse employment action removing Coach Parks as head track and field coach; Colyer would not have removed Coach Parks as track coach and opened his position up to new applicants but for his letter that he sent to the OSAA."  (Pl.'s Mot. for Prelim. Inj. at 10.)  The Court's role is not to make or develop a party's arguments, and plaintiff's failure to do so is sufficient reason to deny his request to be injunctively appointed as an educational assistant.  *In re Intel Corp. CPU Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 3:18-MD-2828-SI, 2020 WL 1495304, at *25 (D. Or. Mar. 27, 2020), *aff'd,* 2023 WL 7211394 (9th Cir. Nov. 2, 2023).

Page 13   **LAKE OSWEGO SCHOOL DISTRICT AND LAKE**
     -  **OSWEGO SCHOOL BOARD'S OPPOSITION TO**
      **PLAINTIFF'S MOTION FOR PRELIMINARY**
      **INJUNCTION AND MOTION TO STRIKE**

**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

as a rebuke and was permitted to coach the track team at the State Championships.  In those circumstances, any reasonable person of ordinary firmness would understand that the District was required to open an investigation after receiving a third-party complaint like the one submitted by Mr. Haskins.

The two letters plaintiff received on June 12, 2024, did not impose any discipline or burden of any sort on plaintiff.  He was not fired, suspended, or penalized.  Plaintiff's coaching contract had already expired by its terms, and he was paid in full for the ensuing final days of the school year under his temporary educational-assistant contract.  (Colyer Dec. at ¶ 15, Exs. 2, 5.)

C.    *Plaintiff Cannot Show His Letter to the OSAA Was a Substantial Motivating Factor*.

To show that retaliation was a substantial or motivating factor behind an alleged adverse employment action, a plaintiff can: (1) introduce evidence that the speech and adverse action were proximate in time, such that a jury could infer that the action took place in retaliation for the speech; (2) introduce evidence that the employer expressed opposition to the speech; or (3) introduce evidence that the proffered explanations for the adverse action were false and pretextual.  *Anthoine v. N. Cent. Ctys. Consortium*, 605 F.3d 740, 750 (9th Cir. 2010).

The District, despite knowing about plaintiff's OSAA letter on the day it was sent, did not reprimand him or open an investigation.  The District permitted him to coach the track team at the State Championships and to go on serving as an educational assistant.  It was not until after the District received a complaint about plaintiff's conduct at the State Championships that it opened an investigation, which it was required to do by its policies.  (Colyer Dec. at Ex. 7.) Adherence to pre-established policies weighs against a finding of retaliatory intent.  *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 781 n 4 (9th Cir. 2022).  Plaintiff offers no evidence that

**LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO STRIKE**

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

the District's reliance on the substantiated accusations about his unprotected speech and conduct at the State Championships was false or pretextual.

D.      *The District Had a Legitimate Interest in Controlling the Speech of its Employee in the Workplace; Plaintiff's OSAA Letter Was Not a But-For Cause of the Decision to Consider Applications From Other Coaching Candidates.*

Even if plaintiff could demonstrate a *prima facie* case of a First Amendment retaliation claim, the District can defeat such a claim by demonstrating either that it had "an adequate justification for treating [plaintiff] differently from any other member of the general public," or that it would have reached the same "adverse employment decision even in the absence of [plaintiff's] conduct." *Anthoine v. N. Cent. Ctys. Consortium*, 605 F.3d 740, 752 (9th Cir. 2010). The government has an interest in preventing speech that it reasonably believes will disrupt the workplace. *Barone v. City of Springfield, Oregon*, 902 F.3d 1091, 1106 (9th Cir. 2018). The last question relates to, but is distinct from, the plaintiff's burden to show the protected conduct was a substantial or motivating factor and asks whether the protected speech was a "but-for" cause of the adverse employment action. *Id.*

The District was justified because of what it learned about plaintiff's insubordinate conduct at the State Championships. It found that he defied the explicit instructions of his athletic director to avoid discussing transgender athletic issues at the State Championships and to keep attention focused on the athletes. (FAC at Ex 4; Coleman Dec at ¶ 3.) It also found that he contacted other coaches, student-athletes, and their families to discuss possibilities for what would happen on the medal stand if a transgender athlete won a spot on the podium, and loudly exclaimed that his athlete "beat the fucking dude." (FAC at Ex. 4.) The District would have invited other applicants to apply for the head track-and-field coaching position for that last finding alone. (Colyer Dec. at ¶ 18; Schiele Dec. at ¶ 4.)

HART WAGNER LLP
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

## II.  Plaintiff Cannot Establish the Likelihood of an Irreparable Injury.

Plaintiff's burden is to demonstrate "that irreparable injury is likely in the absence of an injunction."  *Winter*, 555 U.S. at 22.  A moving party must demonstrate a significant threat of *impending* irreparable injury, irrespective of the magnitude of the injury.  *Hernandez v. Oregon Legislature*, 521 F. Supp. 3d 1025, 1038 (D. Or. 2021).  "To satisfy this factor, 'Plaintiffs must show real or immediate threat that plaintiffs *will be wronged again*.'"  *Wise v. City of Portland*, 483 F. Supp. 3d 956, 970 (D. Or. 2020) (quoting *Lyons*, 461 U.S. 95, 111, 103 S. Ct. 1660 (1983) (Emphasis added; cleaned up)).

Plaintiff's only argument about irreparable injury assumes that by showing a likelihood of success on the merits of his First Amendment Retaliation claim, he automatically demonstrates an irreparable injury.  (Pl.'s Mot. for Prelim. Inj. at 14–15.)  This is incorrect. Even where a plaintiff has demonstrated a likelihood of success on the merits of a First Amendment claim, "he must also demonstrate that he is likely to suffer irreparable injury in the absence of a preliminary injunction, and that the balance of equities and the public interest tip in his favor."  *Doe v. Harris*, 772 F.3d 563, 582 (9th Cir. 2014).  "We do not simply assume that these elements collapse into the merits of the First Amendment claim."  *Id.*  Plaintiff must still separately demonstrate that he is likely to suffer irreparable injury in the absence of a preliminary injunction.

The two cases cited by plaintiff on the irreparable injury issue involved instances where the claimed First Amendment violation was resulting in an *ongoing* restriction or impairment of First Amendment rights.  *Warsoldier v. Woodford*, 418 F.3d 989 (9th Cit. 2005), in fact, was not a First Amendment case at all, but instead involved the Religious Land Use and Institutionalized Persons Act of 2000.  There, the Court found the possibility of irreparable injury absent a

**LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO STRIKE**

**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

prohibitory injunction against enforcement of a "grooming policy" that would, if enforced, require a prisoner to cut his hair in violation of his religious beliefs. *Id.* at 1001.

In the other, *Elrod v. Burns*, 427 U.S. 347, 373 (1976), a plurality of the Court found the threatened prospective possibility of future discharge in violation of the First Amendment to be an irreparable injury:

> "At the time a preliminary injunction was sought in the District Court, one of the respondents was only threatened with discharge. In addition, many of the members of the class respondents were seeking to have certified prior to the dismissal of their complaint were threatened with discharge or had agreed to provide support for the Democratic Party in order to avoid discharge."

*Id.* at 373. Accordingly, it was "clear therefore that First Amendment interests were either threatened or in fact being impaired at the time relief was sought." *Id.*

Although a probability of success on the merits of a First Amendment claim is often held to satisfy the irreparable injury element, that is consistently only so where the violation is ongoing or there is some concrete threat of a future violation. *Cuviello v. City of Vallejo*, 944 F.3d 816, 832 (9th Cir. 2019) (issuing prohibitory injunction in First Amendment case where "the City's permit requirement violated and continues to infringe on [plaintiff's] free speech rights"); *Montana Pub. Int. Rsch. Grp. v. Jacobsen*, No. 24-2811, 2024 WL 4023781, at *2 (9th Cir. Sept. 3, 2024) (memorandum opinion) (finding irreparable injury element satisfied "because HB 892 would discourage individuals from registering to vote in Montana by threatening criminal penalties for doing so, HB 892 carries the risk of irreparable harm to Plaintiffs."); *Index Newspapers LLC v. City of Portland*, 474 F. Supp. 3d 1113, 1122 (D. Or. 2020) (finding irreparable injury element satisfied in case involving press members asserting infringement of First Amendment right to cover ongoing protests where "the conduct and declared intentions of Plaintiffs and the Federal Defendants make future injury all but inevitable"); *Black Lives Matter*

HART WAGNER LLP
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

*Seattle-King Cnty. v. City of Seattle, Seattle Police Dep't*, 466 F. Supp. 3d 1206, 1215 (W.D. Wash. 2020) (issuing temporary restraining order where "[p]laintiffs may face the same constitutional deprivation that they experienced in days past" without injunctive relief)

Plaintiff is in a much different position. He may no longer be employed by the District, but he has fully retained his *First Amendment rights*, and he does not argue that he is suffering under any restriction upon, or impending threat to, his private speech.

Far from "irreparably" harming plaintiff's rights to voice his opinions as a private citizen, plaintiff leveraged his false claim that he was "terminated" to give multiple media interviews amplifying his views about transgender participation in high school athletics. Five days after receiving the District's June 12 letter, plaintiff began giving interviews to local TV broadcast outlets.[3] Interviews with popular podcasts followed, and plaintiff's views have since been amplified in national outlets like the New York Post and Fox News.[4] The record shows that plaintiff has not been reticent about expressing his views, and there is no basis to conclude that there is any current threat to plaintiff's First Amendment rights.

Plaintiff also cannot "clearly" establish irreparable injury to support a mandatory injunction because any damages based on his claimed "loss" of employment will be easily calculable. "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of

---

[3] https://katu.com/news/local/lake-oswego-coach-says-district-ousted-him-after-pushed-change-in-transgender-athlete-law-osaa-track-field-peter-weber-john-parks-rob-wagner-mary-kay-larson

https://www.kgw.com/article/news/local/the-story/lake-oswego-track-coach-suing-school-district-transgender-athletes/283-095ffa25-86c3-40da-ad2a-d1f086e4a1c4

[4] https://video.outkick.com/m/uzaAy6XH/fired-for-calling-for-fairness-gaines-for-girls?list=OLiPmOuQ

https://www.foxnews.com/sports/former-high-school-track-field-coach-john-parks-talks-firing-amid-push-transgender-athlete-law-change

https://nypost.com/2024/06/19/us-news/oregon-high-school-track-amp-field-coach-john-parks-claims-he-was-fired-for-proposing-open-division-for-transgender-athletes/

**LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO STRIKE**

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). "In the employment context, discharge and its associated consequences do not ordinarily constitute irreparable harm, no matter how "severely they may affect a particular individual.'" *O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F. Supp. 3d 1294, 1302 (D. Haw. 2022). "[T]he teacher who is the victim of a breach of contract by a school board can always recover money damages. Money damages are relatively simply determined in the case of a contract of limited duration as distinguished from one covering a great span of years." *George v. Sch. Dist. No. 8R of Umatilla Cnty.*, 7 Or. App. 183, 199, 490 P.2d 1009 (1971). If plaintiff eventually demonstrates that the First Amendment required the District to enter into new contracts with him for the 2024-25 school year, his economic damages will be easily calculable; there is no irreparable injury.

### III.    The Equities Do Not Favor Plaintiff.

When the government is a party, the last two prongs of the injunction analysis—the balance of equities and the public interest—merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

Plaintiff cites *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) for the proposition that it is always in the public interest to "prevent" the violation of a party's constitutional rights, but he has not identified any *impending* threat to his constitutional rights to prevent. Plaintiff can continue to voice his opinions about transgender athletic participation just as he has been.

The District meanwhile has an interest in predictability and stability in its employment practices, and plaintiff's lengthy delay in seeking injunctive relief threatens to undermine those interests. *Branti v. Finkel*, 445 U.S. 507, 517 (1980) (referencing the State's vital interest in maintaining governmental effectiveness and efficiency); *Lydo Enters., Inc. v. City of Las Vegas*,

HART WAGNER LLP
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief.").

Plaintiff received notice on June 12, 2024, that the coaching positions would be opened to other applicants. He did not seek injunctive relief, but instead began giving media interviews on June 17, 2024, expressing his views on transgender athletic competition. Plaintiff filed his original complaint on July 24, 2024, but never served the District, and never submitted an application for a 2024-25 head coaching position with the District.

Meanwhile, the 2024-25 school year started on September 3, 2024. (Colyer Dec. at ¶ 19.) The cross-country team for which plaintiff seeks a judicial appointment has already competed in seven of their nine scheduled events for the season under their new coaching staff. (Coleman Dec at. ¶ 5.) A head coach has already been retained for the Spring 2025 track-and-field season. (Coleman Dec. at ¶ 6.) Plaintiff waited until October 7, 2024, to move this Court for an order appointing him to positions that have been filled and to which he could lay no legitimate contractual claim in the first place. The public interest would not be served by a mandatory injunction.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Page 20**
**-**

**LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO STRIKE**

## CONCLUSION

The District respectfully asks that the Court deny plaintiff's motion for mandatory preliminary injunctive relief.

DATED this 21st day of October, 2024.

HART WAGNER, LLP

By:    */s/ Taylor B. Lewis*
Karen O'Kasey, OSB No. 870696
kok@hartwagner.com
Taylor B. Lewis, OSB No. 164263
tbl@hartwagner.com
Zachariah H. Allen, OSB No. 122729
zha@hartwagner.com

*Of Attorneys for Defendants*
*Lake Oswego School District and*
*Lake Oswego School Board*

HART WAGNER LLP
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of October, 2024, I served the foregoing **LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO STRIKE** on the following parties at the following addresses:

> Luke D. Miller
> Miller Bradley Law LLC
> 1567 Edgewater St NW PMB 43
> Salem OR  97304
> office@millerbradleylaw.com
>
> M.E. Buck Dougherty III
> Liberty Justice Center
> Building 2
> 13341 W. U.S. Highway 290
> Austin, TX  78737
> bdougherty@libertyjusticecenter.org
> *Of Attorneys for Plaintiff*

by electronic means through the Court's Case Management/Electronic Case File system.

*/s/ Taylor B. Lewis*
Taylor B. Lewis

Page 1 - **CERTIFICATE OF SERVICE**