**Jonathan M. Radmacher**, OSB No. 924314
E-Mail: jonathanr@mcewengisvold.com
**Jason E. Bowman,** OSB No. 223584
E-Mail: jasonB@mcewengisvold.com
McEwen Gisvold  LLP
1100 SW 6th Avenue, Suite 1600
Portland, OR 97204
Phone: (503) 226-7321
Fax: (503)243-2687

Of Attorneys for Defendant
Oregon School Activities Association

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JOHN PARKS**, <br><br> Plaintiff, <br><br> v. <br><br> **LAKE OSWEGO SCHOOL DISTRICT; LAKE OSWEGO SCHOOL BOARD; OREGON SCHOOL ACTIVITIES ASSOCIATION; PORTLAND PUBLIC SCHOOLS; and MARSHALL HASKINS,** individually and *in his representative capacity for OREGON SCHOOL ACTIVITIES ASSOCIATION and PORTLAND PUBLIC SCHOOLS*, <br><br> Defendants. | Case No. 3:24-cv-1198-JR <br><br> **DEFENDANT OREGON SCHOOL ACTIVITIES ASSOCIATION'S SPECIAL MOTION TO STRIKE** <br><br> **(ORS 31.150)** |

/ / /

/ / /

/ / /

## Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        Statutes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1.     Certificate of Conferral . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

2.     Special Motion to Strike . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

3.     Standard for Special Motions to Strike . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

4.     Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        a.     Events leading up to and during the 2024 OSAA Track and Field
              Championship. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        b.     Mr. Haskins' complaint and Lake Oswego School District's
              investigation into John Parks. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

5.     Points and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        a.     Mr. Haskins' speech is protected in at least two of the circumstances
              recognized by the Oregon Anti-SLAPP law. . . . . . . . . . . . . . . . . . . . 16

        b.     Mr. Haskins' speech was not made with actual malice with regards
              to Mr. Parks. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

              1.     There has been and is a public controversy involving
                     transgender participation in athletics. . . . . . . . . . . . . . . . . . . 18

              2.     Mr. Haskins' complaint is related to Mr. Parks's participation
                     in this controversy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

              3.     Mr. Parks voluntarily injected himself into the controversy
                     for purposes of influencing an ultimate resolution of the
                     controversy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

              4.     Mr. Parks has failed to adequately plead that Mr. Haskins
                     made his complaint with actual malice. . . . . . . . . . . . . . . . . . . 21

DEFENDANT OREGON SCHOOL ACTIVITIES
ASSOCIATION'S SPECIAL MOTION TO STRIKE
Page 2 of 30
Case No. 6:22-CV-01228-MC

**McEWEN GISVOLD LLP**
**1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204**
**Telephone: (503) 226-7321; Facsimile (503) 243-2687**
**Email: jonathanr@mcewengisvold.com**

c.     The OSAA is not a "public body" for purposes of imposing liability under ORS 30.265. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

d.     Mr. Haskins was not speaking on behalf of OSAA. . . . . . . . . . . . . . . 24

        1.     Mr. Haskins was not purporting to act on behalf of the OSAA.   25

        2.     Mr. Haskins was not motivated by a purpose to serve OSAA.   . 26

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**McEWEN GISVOLD LLP**
**1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204**
**Telephone: (503) 226-7321; Facsimile (503) 243-2687**
**Email: jonathanr@mcewengisvold.com**

**Table of Authorities**

### Cases

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)  . . . . . . 9, 10, 11, 21

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed 2d 929 (2007) . . . . . 9, 21

*Bingham v. Oregon School Activities Ass'n,* 37 F Supp 2d 1189, 1193-94 (D. Or. 1999 . . . . . 24

*Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n.,* 531 US 288, 121 S Ct 924,

   148 L Ed 2d 807 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Bryant v. Recall for Lowell's Future Comm.,* 286 Or. App. 691, 693, 400 P.3d 980 (2017) . . . 8

*C.R. v. Eugene Sch. Dist. 4J,* 308 Or. App. 773, 481 P.3d 334 (2021)  . . . . . . . . . . . . . . . . . . 16

*Chesterman v. Barmon,* 305 Or. 439, 442 753 P.2d 404 (1988) . . . . . . . . . . . . . . . . . . . . . . . 24

*Corp. v. Bruns,* 250 Or. App. 50, 279 P.3d 278 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*DeHart v. Tofte,* 326 Or. App. 720, 533 P.3d 829 (2023)  . . . . . . . . . . . . . . . . . . . . . . . . . 8, 17

*Doe v. Gangland Prods.,* 730 F.3d 946, 955 (9th Cir. 2013)  . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Harte-Hanks Commc'ns, Inc. v. Connaughton,* 491 U.S. 657, 667, 109 S. Ct. 2678,

   105 L. Ed. 2d 562 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 56, 108 S. Ct. 876, 99 L. Ed. 2d 41 (1988) . . 10

*Lovell v. School Dist.,* 172 Or. 500, 507, 143 P.2d 236 (1943)  . . . . . . . . . . . . . . . . . . . . . . . . 16

*Miller v. Watson,* 2019 U.S. Dist. LEXIS 70930, *5-6 (D. Or. 2019)  . . . . . . . . . . . . . . . . . 7-9

*Maloney v. T3Media, Inc.,* 94 F Supp 3d 1128, 1134 (CD Cal 2015) . . . . . . . . . . . . . . . . . . . 8

*Neumann v. Liles,* 295 Or App 340, 345, 434 P3d 438 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Planet Aid, Inc. v. Reveal,* 44 F.4th, 918, 924 (9th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . 9, 16, 18

**McEWEN GISVOLD LLP**
**1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204**
**Telephone: (503) 226-7321; Facsimile (503) 243-2687**
**Email: jonathanr@mcewengisvold.com**

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,* 890 F.3d 828

    (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*School Dist. v. United States Nat'l Bank,* 187 Or. 360, 383, 211 P.2d 723 (1949) . . . . . . . . 17

*Stanfield v. Laccoarce,* 284 Or. 651, 655, 588 P.2d 1271 (1978) . . . . . . . . . . . . . . . . . . . . . . 25

*State v. Walker,* 19 Or. App. 420, 423, 528 P2d 113 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Wingard v. Or. Family Council, Inc.,* 290 Or. App. 518, 521, 417 P.3d 545 (2018) . . . . . . . . 7

**Statutes**

2011 Or Laws Ch. 270, § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

2011 Or Laws Ch. 313, § 25 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

OAR 581-022-2370 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ORS 30.265 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

ORS 31.150 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 16

ORS 339.430 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

DEFENDANT OREGON SCHOOL ACTIVITIES
ASSOCIATION'S SPECIAL MOTION TO STRIKE
Page 5 of 30
Case No. 6:22-CV-01228-MC

**McEWEN GISVOLD LLP**
**1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204**
**Telephone: (503) 226-7321; Facsimile (503) 243-2687**
**Email: jonathanr@mcewengisvold.com**

1.      **Certificate of Conferral**

Pursuant to LR 7-1, Defendant's counsel certifies that he has conferred in good faith about this motion with counsel for Plaintiff, but the parties have been unable to resolve this dispute without court assistance.

*2.*      **Special Motion to Strike**

Pursuant to ORS 31.150 *et seq* ("Oregon's Anti-SLAPP"), Defendant Oregon School Activities Association ("the OSAA") requests that this Court grant its Special Motion to Strike Plaintiff's claim against the OSAA.  In his Amended Complaint, Plaintiff asserts a defamation claim against Marshall Haskins ("Mr. Haskins"), Portland Public Schools ("PPS") and the OSAA, for Mr. Haskins' alleged defamation, claiming that both PPS and the OSAA are public bodies.  Those claims fail on their face because (1) Mr. Haskins did not defame Mr. Parks, as his remarks were on a matter of public concern and were not made negligently; (2) no facts have been set forth from which one could believe that Mr. Haskins made his statements with actual malice; (3) the OSAA is not a public body; and (4) on the face of his communication, Mr. Haskins was not speaking on behalf of the OSAA. Therefore, this Court should grant OSAA's special motion to strike and, pursuant to ORS 31.152(3), the OSAA should be awarded its reasonable attorney fees and costs incurred herein.

3.      **Standard for Special Motions to Strike**

Oregon's Anti-SLAPP law allows a defendant to make a special motion to strike against claims in a civil action.  ORS 31.150(1). The entry point of such a motion is to demonstrate that the "the claim against which the motion is made arises out of" one of four circumstances. *Miller v. Watson,* 2019 U.S. Dist. LEXIS 70930, *5-6 (D. Or. 2019) (*citing Wingard v. Or. Family*

**McEWEN GISVOLD LLP**
1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204
Telephone: (503) 226-7321; Facsimile (503) 243-2687
Email: jonathanr@mcewengisvold.com

*Council, Inc.,* 290 Or. App. 518, 521, 417 P.3d 545 (2018); ORS 31.150). They are

> (a)    Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law;
>
> (b)    <u>Any oral statement made, or written statement or other documented submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;</u>
>
> (c)    Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or
>
> (d)    <u>Any other conduct in furtherance of the exercise of the</u> constitutional right of assembly, petition or association or <u>the constitutional right of free speech</u> or freedom of the press <u>in connection with a public issue or an issue of public interest.</u>

ORS 31.150(2) (emphasis added). Once the movant-defendant meets its initial burden, the

burden then shifts to the plaintiff to "establish that there is a probability that [he] will prevail on

the claim by presenting substantial evidence to support a *prima facie* case." *Miller v. Watson,* at

*6 (*citing* ORS 31.150(3))  This second step is not constrained to the pleadings. *Id.*, at *6-7

(*citing Bryant v. Recall for Lowell's Future Comm.,* 286 Or. App. 691, 693, 400 P.3d 980

(2017); ORS 31.150(4)).

In *DeHart v. Tofte,* 326 Or. App. 720, 533 P.3d 829 (2023) the court described the

breadth of its evaluation of a "public issue," describing that

> [r]egarding what it means for conduct <u>to be "in connection with a</u> <u>public issue or an issue of public interset," we have interpreted</u> <u>"issue of public interest" to have its "common-sense</u> <u>meaning"–namely, an issue that is of interest to the public.</u> [*Neumann v. Liles,* 295 Or App 340, 345, 434 P3d 438 (2018)]; *see also Maloney v. T3Media, Inc.,* 94 F Supp 3d 1128, 1134 (CD

Cal 2015), *aff'd,* 853 F3d 1004 (9th Cir 2017) (noting that courts
in California have interpreted "an issue of public interest" to
mean "any issue in which the public is interested" (internal
quotation marks omitted)).

*Id.* at 742 (emphasis added). "'[A] topic of widespread, public interest' satisfies this

requirement." *Doe v. Gangland Prods.,* 730 F.3d 946, 955 (9th Cir. 2013) (citation omitted).

The Ninth Circuit has adopted a tiered approach to anti-SLAPP motions, as recognized

by *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,* 890 F.3d 828 (9th Cir.

2018), which generally adopted the standard of a motion to dismiss:

> [W]hen an anti-SLAPP motion to strike challenges only the legal
> sufficiency of a claim, a district court should apply the Federal
> Rule of Civil Procedure 12(b)(6) standard and consider whether a
> claim is properly stated.

*Planned Parenthood Fed'n of Am., Inc.,* 890 F.3d at 834. However, "when an anti-SLAPP

motion to strike challenges the factual sufficiency of a claim, * * * the Federal rule of Civil

Producre 56 standard will apply." *Id.*; *see also Miller v. Watson,* 2019 U.S. Dist. LEXIS 70930

(D. Or. 2019) (citing to *Planned Parenthood Fed'n of Am., Inc., supra*).

As such, when evaluating motions to dismiss under FRCP 12(b)(6), in *Ashcroft v. Iqbal,*

556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the court elaborated that

> [t]o survive a motion to dismiss, a complaint must contain
> sufficient factual matter, accepted as true, to "state a claim to
> relief that is plausible on its face." [*Bell Atl. Corp. v. Twombly,*
> 550 US 544, 570, 127 Ct 1955, 167 L Ed 2d 929 (2007)]. A claim
> has facial plausibility when the plaintiff pleads factual content
> that allows the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged. *Id.,* at 556, 127 S
> Ct 1955, 167 L Ed 2d 929.

*Id.* at 678. Plausibility is not the same as probability; "it asks for more than a sheer possibility

that a defendant has acted unlawfully." *Id.*

**McEWEN GISVOLD LLP**
**1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204**
**Telephone: (503) 226-7321; Facsimile (503) 243-2687**
**Email: jonathanr@mcewengisvold.com**

At the core of Oregon's Anti-SLAPP law, as well as every other anti-SLAPP law, is balancing free speech against defamation. Where a public figure or a limited purpose public figure is involved, a plaintiff must allege actual malice along-side other requirements for pleading defamation.

> [T]he Supreme Court established that public officials and public figures claiming defamation must prove that the allegedly defamatory statement was made with "actual malice"–that is, "with knowledge that it was false or with reckless disregard of whether it was false or not." The Court recognized that actual malice standard would bar some plaintiffs from recovering damages for erroneous and injurious statements. Nevertheless, the Court concluded that the law of defamation must provide a degree of "breathing space" to avoid chilling constitutionally valuable speech.

*Planet Aid, Inc. v. Reveal,* 44 F.4th, 918, 924 (9th Cir. 2022) (internal citations omitted).  As for the possibility of "reckless disregard," in *Harte-Hanks Commc'ns, Inc. v. Connaughton,* 491 U.S. 657, 667, 109 S. Ct. 2678, 105 L. Ed. 2d 562 (1989), the court explained that it presents a higher bar:

> although the concept * * * cannot be fully encompassed in one infallible definition, [we have] made clear that the defendant must have made the false publication with a high degree of awareness [as to its probably falsity, or] entertained serious doubts as to the truth [of the matter].

(*quoting Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 56, 108 S. Ct. 876, 99 L. Ed. 2d 41 (1988)). An important policy justification for this heightened requirement is that "[p]ublic figures, who have thrust themselves into the public eye, 'must accept certain necessary consequences' of that conduct, including 'the risk of closer public scrutiny than might otherwise be the case.'" *Id.* (Internal citation omitted).

With regard to measuring plaintiff's allegations against these standards, conclusory

**McEWEN GISVOLD LLP**
**1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204**
**Telephone: (503) 226-7321; Facsimile (503) 243-2687**
**Email: jonathanr@mcewengisvold.com**

allegations are not adequate to allege actual malice. *Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Allegations are also not plausible where there is an "obvious alternative explanation[.]" *See Iqbal,* 556 U.S. at 682 ("As between the 'obvious alternative explanation' for the arrests * * * and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion.").  In that context, it is clear that Plaintiff's claim(s) against the OSAA are an attempt to infringe on Marshall Haskins' free speech rights, and his efforts to protect a Portland Public School student from harassment and disparagement by Plaintiff, a very public and important exercise of rights.

### 4.    Statement of Facts

The OSAA is a private association whose members are public and private high schools. [Radmacher Dec. at ¶ 2] Plaintiff's claims herein arose from circumstances surrounding an OSAA-sponsored state track and field championship in 2024.

### a.    Events leading up to and during the 2024 OSAA Track and Field Championship.

As he alleges it, Mr. Parks is an experienced and distinguished track and field coach with a history of participating at the high school, college, professional, and Olympic levels of competition and was most recently the head track and field coach at Lake Oswego High School ("LOHS"). [ECF 7, ¶¶ 1 & 2; ECF 7-8].  On May 15, 2024 – the day prior to the OSAA Track and Field Championship, May 16-18, 2024 (the "State Championship")– Mr. Parks wrote to OSAA "first as the Lake Oswego HS head track coach but secondarily as coach in the sport at Olympic, NCAA and professional ranks * * * prior to my current position[,]" to express numerous concerns. [ECF 7-1] (emphasis added). These concerns specifically related to the

**McEWEN GISVOLD LLP**
1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204
Telephone: (503) 226-7321; Facsimile (503) 243-2687
Email: jonathanr@mcewengisvold.com

"high level transgender athlete from McDaniels HS[,]" the OSAA's policy "in national and world eyes" serving as a distraction to student-athletes, and how the OSAA's policy and this transgender athlete from McDaniels HS "<u>will impact my athletes </u>in the 400 meters directly and play a role in who qualified for finals and is awarded team trophies." [ECF 7-1] (emphasis added).

The OSAA forwarded Mr. Parks's May 15th email to Chris Coleman ("Mr. Coleman"), the Athletic Director at LOHS, first thing in the morning that same day. [ECF 15-1]. Mr. Coleman instructed Mr. Parks <u>not</u> to discuss transgender student participation with anyone, and was reminded that he would be representing LOHS while at the State Championship. [ECF 15, ¶ 3]. In short, by that point in time, everyone knew that the upcoming sporting event, and Mr. Parks' interest and involvement in it, was on the public stage.  At or around that same time, Ms. Kristen Colyer also discussed participation of the McDaniels transgender athlete at the State Championship because Mr. Parks "was worried that this athlete would beat our school's top 400m women's runner." [ECF 16, ¶ 5].

Mr. Coleman called Mr. Parks on the morning of May 18th, the final day of the State Championship, to remind Mr. Parks not to discuss transgender student participation with anyone while coaching. [ECF 15, ¶ 4]. Mr. Coleman also sent Mr. Parks a text to follow up on that phone call shortly thereafter. [ECF 15-2].

> ### b.     Mr. Haskins' complaint and Lake Oswego School District's investigation into John Parks.

Shortly after conclusion of the State Championship, Mr. Haskins lodged a formal complaint against Mr. Parks in connection to his conduct at the State Championship. [ECF 7-3;

**McEWEN GISVOLD LLP**
**1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204**
**Telephone: (503) 226-7321; Facsimile (503) 243-2687**
**Email: jonathanr@mcewengisvold.com**

16-4].[1]  In that communication, Mr. Haskins first enunciated that he was "appalled, disappointed and embarrassed" for the LOSD and the Salem-Keizer School District.  His expression of distaste included the context of his background giving rise to that distaste – he was speaking as a person who was both a professional with the Portland Public School District and a board member of the OSAA. Mr. Haskins signed his communication as the Senior Director of Athletics for Portland Public Schools, not as a board member of the OSAA.  With regard to his specific reflections on Mr. Parks's behavior at the State Championship, Mr. Haskins identified examples of Mr. Parks's conduct that he construed as being hostile and inappropriate. Following Mr. Haskins' complaint, Ms. Colyer conducted an investigation, pursuant to LOSD's Discrimination Complaint Procedure, on behalf of LOSD. [ECF 16, ¶ 7]. During Ms. Colyer's investigation she reached conclusions about the very public nature of Mr. Parks' misconduct:

1.  Mr. Parks had requested a coach at another school to join Mr. Parks to stop participation of the transgender athlete, pressing that coach to boycott the medal presentation if the transgender athlete made the podium;

2.  Mr. Parks had asked a second coach whether that second coach knew of other athletes who may be interested in joining an effort to resist the transgender athlete's participation and whether the second coach would contact that coach's athletes about boycotting an event if the transgender athlete competed;

3.  According to a third coach, Mr. Parks contacted student-athletes directly, during

---

[1]ECF 7-3 is only the first half of the two-page email that Mr. Haskins sent. ECF 16-4 is a true and complete copy of that email.

McEWEN GISVOLD LLP
1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204
Telephone: (503) 226-7321; Facsimile (503) 243-2687
Email: jonathanr@mcewengisvold.com

warm up, to talk about a possible boycott;

4.    A fourth coach reported that Mr. Parks had reached out to a former coach that had worked with the fourth coach and who, at the behest of Mr. Parks, contacted the fourth coach's athletes' families about boycotting a race or to contact OSAA about a boycott;

5.    A female student-athlete from another school, in a written statement, recalled that Mr. Parks approached her and said that he'd contacted other parents about not standing on the podium after the 400-meter competition that the transgender athlete was to participate in;

6.    A fifth coach, about 50 meters away from Mr. Parks at the time, reported that Mr. Parks exclaimed, after the Lake Oswego athlete took first place in the 400-meter competition, that "she beat the fucking dude!"; and

7.    An OSAA official reported that, after escorting the top three finishers of the 400-meter competition to the podium, that Mr. Parks said "this can't happen again," that, "he knew Republicans," and that there "were going to be eight men up there[,]" and that a separate individual told Mr. Parks "That's enough."

[ECF 16, ¶¶ 8-14].

While Ms. Colyer's investigation was ongoing, Mr. Parks wrote to Oregon Senator Rob Wagner "to address a big concern of mine" regarding "allowing transgender athletes to compete in girl's varsity sports[.]  In particular in the 6A state track meet [where] the issue became an unfortunate controversy[.]" [ECF 7-7].  Mr. Parks' statement highlighted the very public nature of his complaint, reciting that "[t]he result on May 18 in Eugene was a loud crowd booing when

DEFENDANT OREGON SCHOOL ACTIVITIES
ASSOCIATION'S SPECIAL MOTION TO STRIKE
Page 13 of 30
Case No. 6:22-CV-01228-MC

McEWEN GISVOLD LLP
1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204
Telephone: (503) 226-7321; Facsimile (503) 243-2687
Email: jonathanr@mcewengisvold.com

the trans athlete was awarded the winning medal in the 200." [*Id.*]. Mr. Parks further noted that he is "far from the only coach concerned with the [OSAA] policy [on transgender participation]." [*Id.*]. The purpose for Mr. Parks's letter to Senator Wagner was to "mostly urge you to take leadership on this issue * * * and get the current law properly interpreted or * * * changed[.]" [*Id.*].

On June 12, 2024, after Ms. Colyer's investigation had concluded, Ms. Colyer presented her findings and summary to Mr. Parks and others involved. Those findings, based on interviews with Mr. Parks, student-athletes, and other coaches included:

1.    That Mr. Coleman directed Mr. Parks not to discuss issues related to transgender participation at the State Championship;

2.    That Mr. Parks sent his email to OSAA in an effort to stop participation of the McDaniels High School transgender athlete at the State Championship;

3.    That Mr. Parks contacted other coaches from other schools, in his capacity as the LOHS track coach prior to the State Championship, asking them to seek denial of the McDaniels High School transgender athlete's participation;

4.    That Mr. Parks communicated with student-athletes at the State Championship about not participating in medal presentation if the McDaniels High School transgender athlete won either the 200M OR 400M race;

5.    That Mr. Parks spoke to coaches, student-athletes, and their families before and during the State Championship regarding plans if the transgender athlete won an event on be placed on the podium;

6.    That Mr. Parks spoke to the McDaniels High School transgender athlete while

DEFENDANT OREGON SCHOOL ACTIVITIES
ASSOCIATION'S SPECIAL MOTION TO STRIKE
Page 14 of 30
Case No. 6:22-CV-01228-MC

McEWEN GISVOLD LLP
1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204
Telephone: (503) 226-7321; Facsimile (503) 243-2687
Email: jonathanr@mcewengisvold.com

the athlete was on the podium during medal presentation for the 400M race; and

7.      That Mr. Parks was insubordinate to the directive given to him not to discuss

transgender participation issues, specifically while at the State Championship.

[ECF 7-4].

In that context, of Mr. Parks' very public engagement in an issue of public interest, and

in response to Mr. Haskins' public calling out of Mr. Parks' behavior, Mr. Parks sues.

**5.      Points and Authorities**

   **a.      Mr. Haskins' speech is protected in at least two of the circumstances recognized by the Oregon Anti-SLAPP law.**

Bearing the initial burden under the Oregon Anti-SLAPP law, it is evident that Mr.

Haskins' speech – his May 24, 2024, complaint – concerns at least two of the four

circumstances enumerated under ORS 31.150(2). That is, Mr. Haskins' complaint was a

"written statement * * * in connection with an issue under consideration or review by a * * *

proceeding authorized by law[,]" and was "conduct in furtherance of the exercise of the

constitutional right * * * of free speech * * * in connection with a public issue or an issue of

public interest." ORS 31.150(2)(b),(d).

First, it is apparent that public proceedings by a school district are "proceeding[s]

authorized by law[.]" *See C.R. v. Eugene Sch. Dist. 4J,* 308 Or. App. 773, 481 P.3d 334 (2021)

(where there was no dispute that the district's disciplinary proceedings were ones authorized by

law); *see also* OAR 581-022-2370 (outlining the complaint procedures for public elementary

and secondary schools); *State v. Walker,* 19 Or. App. 420, 423, 528 P2d 113 (1974) ("School

districts are governmental agencies."); *Lovell v. School Dist.,* 172 Or. 500, 507, 143 P.2d 236

(1943) ("[S]chool districts, as agencies of the State, have been created by statute for the sole

**McEWEN GISVOLD LLP**
1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204
Telephone: (503) 226-7321; Facsimile (503) 243-2687
Email: jonathanr@mcewengisvold.com

purpose of maintaining a public school system and, to this end, have been delegated certain powers."); *School Dist. v. United States Nat'l Bank,* 187 Or. 360, 383, 211 P.2d 723 (1949) ("A school district is an agency of the state. It derives all its powers from statute, including the manner in which its funds can be disbursed.").

Second, even if a particular school district's public decisions about issue s of public interest might not be considered "other proceedings authorized by law," Mr. Haskins' speech was in furtherance of his constitutional right to free speech and it was in connection with "a public issue or an issue of public interest."

Oregon courts and the Ninth Circuit have generally set a low bar as to what is a public issue or an issue of public interest. *DeHarte v. Tofte,, supra* (describing the broad standard used for determining an issue that is of interest to the public). The Ninth Circuit has also given a broad interpretation to what it means to be a public controversy – "[a] public controversy must be 'a real dispute, the outcome of which affects the general public or some segment of it.'" *Planet Aid, Inc., supra* at 925.

One only needs to read or listen to the news to know that transgender participation in athletics is, indeed, a public controversy with very broad public interest.  Indeed, the very athlete that was the subject of Mr. Parks' scorn and derision has been attacked in national news media.[2]  Based upon the foregoing, the OSAA clearly satisfies its initial burden in demonstrating that Mr. Haskins' speech falls into a category recognized for purposes of bringing a special motion to strike under Oregon's Anti-SLAPP law.

---

[2]     https://nypost.com/2024/04/15/us-news/trans-runner-sparks-outrage-at-high-school-competition/

McEWEN GISVOLD LLP
1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204
Telephone: (503) 226-7321; Facsimile (503) 243-2687
Email: jonathanr@mcewengisvold.com

### b. Mr. Haskins' speech was not made with actual malice with regards to Mr. Parks.

An important distinction is made in the common law of defamation, between public figures and nonpublic figures. Even where a statement may be considered defamatory, if the target of that statement is an all-purpose or a limited-purpose public figure, then the plaintiff must show that the otherwise defamatory statement was made with actual malice.[3]

A view of Mr. Parks's pleading, his exhibits, the Declaration of Ms. Colyer in Support of LOSB and LOSD's Opposition to Plaintiff's Motion for Preliminary Injunction, and a plain Google search show that Mr. Parks is now – and has been – in the position of a limited-purpose public figure, inserting himself publicly into the public debate about transgender athletes.

### 1. There has been and is a public controversy involving transgender participation in athletics.

The controversy surrounding transgender participation in athletics is much larger than the circumstances presented in regards to Mr. Parks' conduct. This controversy has become national, and even international. The University of Wyoming recently forfeited matches amid a transgender athlete controversy.[4] The University System of Georgia Board of Regents has been actively involved in seeking collegiate sports to ban transgender women from participation in

---

[3] Mr. Parks incorrectly states in his Amended Complaint, ¶ 125, that in cases among private individuals, a plaintiff must show that the defendant acted negligently with regard to whether the defamatory statement was true or false, citing *Bank of Oregon v. Independent News,* 65 Or. App. 29 (1983). He provides no pin cite for his incorrect citation. A more precise citation to *Bank of Oregon v. Independent News,* at page 34, makes it clear that this negligence requirement applies "in a libel action by a private individual against a media defendant[.]" (Emphasis added).

[4] https://cowboystatedaily.com/2024/11/08/uw-forfeits-second-volleyball-match-against-team-with-transgender-player/

DEFENDANT OREGON SCHOOL ACTIVITIES
ASSOCIATION'S SPECIAL MOTION TO STRIKE
Page 17 of 30
Case No. 6:22-CV-01228-MC

McEWEN GISVOLD LLP
1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204
Telephone: (503) 226-7321; Facsimile (503) 243-2687
Email: jonathanr@mcewengisvold.com

women's sports.[5] Four college volleyball teams have recently forfeited against San Jose State (including the University of Wyoming) over speculation about an alleged transgender athlete.[6] Over this summer, there was a fiery controversy over a possible transgender female boxer's participation in the 2024 Olympics in Paris, that is still ongoing.[7]  It is beyond dispute that transgender participation in athletics is a very public controversy, that is alive and well.

Of course, under the applicable statute, generalized public interest is not necessarily enough; there must be "a real dispute, the outcome of which affects the general public or some segment of it." *Planet Aid, Inc.,* at 925 (citation omitted). To determine whether there is a real dispute that affects at least some segment of the population, the Court need look no further than Mr. Parks's pleadings. A segment of the population that is clearly affected by the outcome of this dispute, is athletics in Oregon, and more granularly for athletes who identify with a gender different than the gender they were assigned at birth.

> ### 2.    Mr. Haskins' complaint is related to Mr. Parks's participation in this controversy.

The simple text of Mr. Haskins' communication resolves the question about the very public nature of his speech.  Mr. Haskins' complaint was concerned solely with Mr. Parks's participation in this controversy. Mr. Haskins' complaint zeroed in on Mr. Parks who, as Mr.

---

[5] https://www.onlineathens.com/story/sports/2024/10/09/georgia-regents-seeking-to-ban-transgender-women-from-college-sports/75588315007/

[6] https://www.nbcnews.com/nbc-out/out-news/four-college-volleyball-teams-forfeit-san-jose-state-possible-trans-pl-rcna174118

[7] https://www.npr.org/2024/08/05/nx-s1-5064358/olympics-womens-boxing-imane-khelif-lin-yu-ting;  https://www.theguardian.com/sport/2024/nov/06/olympic-boxer-imane-khelif-takes-legal-action-over-male-chromosomes-claims

McEWEN GISVOLD LLP
1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204
Telephone: (503) 226-7321; Facsimile (503) 243-2687
Email: jonathanr@mcewengisvold.com

Haskins said, "went out of his way to make a PPS African American Transgender track athlete

feel unwelcome and discriminated against" throughout the season and at the State

Championship. [ECF 7-3].  All of the behaviors Mr. Haskins detailed in his complaint were

about Mr. Parks's participation in this public controversy. Whether it was Mr. Parks's email, his

communications with other coaches and student-athletes, or recommending boycotting or

otherwise not participating in medal presentations, this is all related to the controversy of

transgender participation in athletics.

> **3.    Mr. Parks voluntarily injected himself into the controversy for purposes of influencing an ultimate resolution of the controversy.**

Mr. Parks did not just participate in this public controversy – he dove headfirst into it

with an aim towards amplifying and affecting the outcome. Mr. Parks sent his email to the

OSAA in an effort to keep the transgender athlete in question from participating in the State

Championship.[8] [ECF 7-3]. Mr. Parks tried to get other coaches involved by submitting letters,

emails, and calls to OSAA seeking to deny the transgender athlete participation in the State

Championship. [ECF 7-4]. Mr. Parks went as far as to write Senator Rob Wagner to "urge you

to take leadership on this issue this summer and get the current law properly interpreted or get

the law changed[.]" [ECF 7-7] (emphasis added). Mr. Parks has since been involved with

several media interviews, including with KATU[9] and Riley Gaines – who has been involved in

---

[8]Mr. Parks even notes "Yes" in the margin next to this portion of Mr. Haskins' complaint.
[ECF 7-3].

[9] https://katu.com/news/local/lake-oswego-coach-says-district-ousted-
him-after-pushed-change-in-transgender-athlete-law-osaa-track-field-peter-weber-
john-parks-rob-wagner-mary-kay-larson

McEWEN GISVOLD LLP
1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204
Telephone: (503) 226-7321; Facsimile (503) 243-2687
Email: jonathanr@mcewengisvold.com

campaigning against participation of transgender women in women's sports – on the "Gaines for Girls" podcast.[10]

### 4.    Mr. Parks has failed to adequately plead that Mr. Haskins made his complaint with actual malice.

It is an elementary principle of law that claims and defenses must be pleaded by "a short and plain statement * * * showing that the pleader is entitled to relief[.]" FRCP 8(a)(2).  As was made clear in [*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed 2d 929 (2007)], the basics of pleading under FRCP 8 does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* at 678 (*citing Twombly,* at 555). A claim must be plausible on its face, such that the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* at 678. The Court in *Iqbal* explained two working principles:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. * * * Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. * * * [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not "show[n]" – "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

Mr. Parks's third claim for relief contains nothing but threadbare assertions, and does

---

[10] https://www.foxnews.com/sports/former-high-school-track-field-coach-john-parks-talks-firing-amid-push-transgender-athlete-law-change

DEFENDANT OREGON SCHOOL ACTIVITIES
ASSOCIATION'S SPECIAL MOTION TO STRIKE
Page 20 of 30
Case No. 6:22-CV-01228-MC

McEWEN GISVOLD LLP
1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204
Telephone: (503) 226-7321; Facsimile (503) 243-2687
Email: jonathanr@mcewengisvold.com

not allow this Court to do more than merely infer the possibility of misconduct, much less infer

that Mr. Haskins' complaint was made with actual malice. Mr. Parks' assertions speak to actual

malice a single time in his Amended Complaint, with no factual basis:

> In writing a letter to OSAA Executive Directors and filing a
> complaint with Lake Oswego School District containing several
> false allegations made with actual malice, Marshall Haskins
> defamed John Parks.

[ECF 7, ¶ 17]. That is the entirety that Mr. Parks alleges about actual malice.

Furthermore, to the extent that they might be incorporated into his allegations, Mr.

Parks's exhibits to his Amended Complaint are of no further assistance to him. The exhibits

make clear that Mr. Parks: (1) did send his email to OSAA in an effort to stop the transgender

athlete from participation; and (2) contacted coaches, students, and the parents of students to

discuss efforts to prevent the transgender athlete from participating, boycotting medal

presentations, and to discuss other plans related to the transgender student's participation. [ECF

7-3; 7-4].  Essentially, Mr. Parks admits to his public campaign to denigrate a high school

student, a denigration that originates with the student's gender identity.  Any objective observer

should consider whether Mr. Parks' actions should alert any mandatory reporter about mental

injury to a child due to statements made to the child.  ORS 419B.005(1)(a)(B).

Whether or not Mr. Parks confronted the athlete on the podium at the medal presentation

for the 200M race, or that Mr. Parks riled up spectators to "boo" the transgender athlete, does

not transmute Mr. Haskins' complaint into one made with actual malice. There is clearly

evidence that Mr. Parks spoke to the high school athlete after the 400M race. [ECF 7-4]. And

there is clearly evidence that Mr. Parks was contacting those who may have been spectating

(e.g., the parents of athletes), who may have been responsible for the booing. [ECF 7-4].  Mr.

**McEWEN GISVOLD LLP**
**1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204**
**Telephone: (503) 226-7321; Facsimile (503) 243-2687**
**Email: jonathanr@mcewengisvold.com**

Haskins' reporting that contact is not sufficient to suggest any "actual malice."

> **c.    The OSAA is not a "public body" for purposes of imposing liability under ORS 30.265.**

In no event can the OSAA be held liable under ORS 30.265. While ORS 30.260(4)(b) provides that private associations can be a "public body," that is only true if its members are all political subdivisions of the state or public corporation.  The OSAA is not a "public body," because its members are both public and private high schools. [Radmacher Dec. at ¶ 2]

While Mr. Parks also asserts a <u>different</u> basis for liability, as a state actor, that's not a basis for liability under ORS 30.265.  Moreover, the OSAA is not a state actor under *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n.,* 531 U.S. 288, 121 S. Ct. 924, 148 L. Ed. 2d 807 (2001), he is incorrect.

In *Brentwood Acad.* the court was concerned with

> whether a statewide association incorporated to regulate interscholastic athletic competition among public and private secondary schools may be regarded as engaging in state action when it enforces a rule against a member school.

*Brentwood Acad., supra*, 531 U.S. at 290. The action which the Court was concerned with in *Brentwood* was a regulatory enforcement proceeding against a private parochial high school. By contrast, in this case, because OSAA took no action with regard to Mr. Parks' inappropriate actions, there was no action taken by OSAA that may be considered "state action" under the analysis presented in *Brentwood Acad.* Therefore, *Brentwood Acad.* is inapplicable to the matter before this Court.

Furthermore, to the extent that there are old judicial decisions related to whether the OSAA is a state actor, those decisions have been supplanted by statutory and regulatory

McEWEN GISVOLD LLP
1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204
Telephone: (503) 226-7321; Facsimile (503) 243-2687
Email: jonathanr@mcewengisvold.com

changes. Prior to 2011, whether the OSAA was an instrumentality of the State was a completely

different question than it is today. In a federal case, the court found that the OSAA was a public

entity after elaborating on the statutory and regulatory structure wherein rules had to be

approved by the State Board of Education, and its decisions could be appealed to the Oregon

Department of Education. *Bingham v. Oregon School Activities Ass'n,* 37 F. Supp. 2d 1189,

1193-94 (D. Or. 1999). At the time, *former* ORS 339.430 provided that voluntary associations

had to be approved by the Oregon Department of Education, which also reviewed association

rules and bylaws, and changes in rules; the agency had the power to suspend or revoke its

approval of any organization, and any appeal of a decision of such an association was treated as

an administrative, contested case hearing before the Department of Education. But in 2011, the

State of Oregon repealed *former* ORS 339.430 in its entirety, removing the prior State

administrative and regulatory authority over the rules and decisions of such voluntary

associations. 2011 Or Laws Ch. 313, § 25.

 Therefore, whether Plaintiff is alleging that the OSAA is a public body under ORS

30.265, or that the OSAA is a state actor, he is incorrect.

   **d. Mr. Haskins was not speaking on behalf of OSAA.**

 Under the doctrine of *respondeat superior*, an employer may be held liable for the

tortious conduct of an employee. *Chesterman v. Barmon,* 305 Or. 439, 442 753 P.2d 404

(1988). A plaintiff must satisfy three requirements to show that an employee acted within the

scope of his or her employment:

   (1) whether the action complained of occurred substantially
     within the time and space limits authorized by the
     employment;
   (2) whether the employee was motivated, at least partially, by

**McEWEN GISVOLD LLP**
**1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204**
**Telephone: (503) 226-7321; Facsimile (503) 243-2687**
**Email: jonathanr@mcewengisvold.com**

> a purpose to serve the employer; and
>
> (3)     whether the act complained of is of a kind which the
> employee was hired to perform.

*Id* (*citing Stanfield v. Laccoarce,* 284 Or. 651, 655, 588 P.2d 1271 (1978)); *accord Mannex*

*Corp. v. Bruns,* 250 Or. App. 50, 279 P.3d 278 (2012).

For the facts and reasoning that follow, Mr. Parks cannot show that Mr. Haskins was

acting on behalf of OSAA. Clear evidence to the contrary leaves no genuine issue of material

fact to be resolved on the issue – Mr. Haskins was not acting on behalf of OSAA when he filed

his complaint against Mr. Parks.

**1.     Mr. Haskins was not purporting to act on behalf of the OSAA.**

As part of his Amended Complaint, Mr. Parks alleges that Mr. Haskins

> represented in his letter that he was writing "as a representative of
> Senior leadership for Portland Public Schools and as a member of
> the OSAA Executive Board."

[ECF 7-1, ¶ 143]. Without more, Mr. Parks simply concludes that Mr. Haskins was working

within the scope of his duties for OSAA when he wrote his complaint. [ECF 7-1, ¶ 144].

While the OSAA is not distancing itself from Mr. Haskins' complaint, on the face of it,

Mr. Haskins' statement of disgust is described as coming from his position as an employee at

PPS and a board member at the OSAA; in other words, he knows from whence he speaks.  He

might just of well have said that "as a father, I am disgusted."  At no level does he suggest that

he is writing in his capacity as a member of the OSAA Executive Board. Mr. Haskins wrote

> As a representative of Senior leadership for Portland Public
> Schools and as a member of the OSAA Executive Board, who has
> been appointed as the state representative for Equity, Diversity
> and Inclusion, I was appalled, disappointed and embarrassed for
> Lake Oswego and Salem Keizer School districts because of the
> behavior of one of your employees.

DEFENDANT OREGON SCHOOL ACTIVITIES
ASSOCIATION'S SPECIAL MOTION TO STRIKE
Page 24 of 30
Case No. 6:22-CV-01228-MC

**McEWEN GISVOLD LLP**
**1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204**
**Telephone: (503) 226-7321; Facsimile (503) 243-2687**
**Email: jonathanr@mcewengisvold.com**

[ECF 7-3; ECF 16-4]. As a complete reading of the passage which Mr. Parks purports to cite to makes clear, this identification with PPS and OSAA is to provide a background for Mr. Haskins' disappointment and embarrassment for LOSD. Mr. Haskins is not purporting to write his complaint in his capacity as a board member of OSAA.

Mr. Parks seems to understand this distinction well. In Mr. Parks's appeal of his termination, Mr. Parks referred to Mr. Haskins as "the PPS Athletic Director[.]" [ECF 7-6] (emphasis added). Mr. Parks later opined that the basis of findings against him by Ms. Colyer "was a complaint filed by PPS Athletic Director Marshall Haskins." [*Id.*] (emphasis added). Similarly, Mr. Parks acknowledges that Mr. Haskins was not acting on behalf of OSAA in filing his complaint in Mr. Parks's letter to Senator Rob Wagner: "I was accused of discrimination in a letter by the Portland Public Schools athletic director[.]" [ECF 7-7] (emphasis added).

It would appear that despite his present lawyers' assertions (only one of whom is licensed to practice law in Oregon) Mr. Parks knew that Mr. Haskins was not acting on behalf of OSAA when Mr. Haskins filed his complaint. In addition to everything already described, perhaps that conclusion arises because Mr. Haskins' complaint was sent from mhaskins@pps.net – his PPS email address. [ECF 16-4].

## 2. **Mr. Haskins was not motivated by a purpose to serve OSAA**.

There is no evidence in the record to support that Mr. Haskins was motivated in any way to serve OSAA. As shown above, Mr. Parks acknowledged that Mr. Haskins filed his complaint as the PPS athletic director; Mr. Parks says just as much in his appeal of his termination and in his letter to Senator Wagner. [ECF 7-6, 7-7]. Mr. Haskins' complaint was sent from his PPS email. [ECF 16-4]. Furthermore, Mr. Haskins' complaint evidences that his motivation stems

McEWEN GISVOLD LLP
1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204
Telephone: (503) 226-7321; Facsimile (503) 243-2687
Email: jonathanr@mcewengisvold.com

from the treatment of "a PPS African American Transgender track athlete" by Mr. Parks and that Mr. Parks's efforts were to "deny our student's participation" in the State Championship. [*Id.*] (emphasis added). Mr. Haskins refers to "our student" no less than seven times in his complaint. [*Id.*]. Mr. Haskins even closes his email as "Senior Director - PIL Athletics/PPS[.]" [*Id.*].

At no point does Mr. Haskins aver that he is acting on behalf of OSAA. Furthermore, Mr. Parks provides zero evidence to the contrary, instead choosing to rely on an out-of-context statement from Mr. Haskins' complaint.

**Conclusion**

Mr. Parks alleged in his Amended Complaint that Mr. Haskins defamed him by filing his May 24, 2024, complaint, and that OSAA is liable for that defamation. However, being a public or limited-purpose public figure, Mr. Parks has failed to adequately plead that Mr. Haskins acted with actual malice by filing his May 24, 2024, complaint. Mr. Parks also alleges that OSAA is liable for Mr. Haskins' defamatory complaint because OSAA is a "public body" and that Mr. Haskins was acting on behalf of OSAA. However, Mr. Parks's assertion that OSAA is a public body for such purposes is erroneous under the statute and under the analysis provided by his case law; furthermore, OSAA's status as a private entity has already been determined by the legislature and by case law in this District Court. Therefore, Mr. Parks has failed to state a claim for relief which may be granted by failing to adequately plead his claims OSAA. For that reason, OSAA's special motion to strike Mr. Parks's claims should be granted.

Furthermore, the evidence in the record leaves no genuine issue of material fact as to whether Mr. Haskins was acting on behalf of OSAA when he filed his complaint against Mr.

**McEWEN GISVOLD LLP**
**1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204**
**Telephone: (503) 226-7321; Facsimile (503) 243-2687**
**Email: jonathanr@mcewengisvold.com**

Parks. Mr. Parks's exhibits and a complete copy of Mr. Haskins' complaint show that Mr.

Haskins was not acting within his scope of authority as a member of OSAA's Executive Board,

was not motivated by his employment with OSAA, and was not hired by OSAA to take part in

such activities. Therefore, there is no genuine issue of material fact that Mr. Haskins was not

acting on behalf of OSAA and OSAA's special motion to strike should be granted.

Dated this 22nd day of November 2024.

MCEWEN GISVOLD LLP

By: *s/Jonathan M. Radmacher*
Jonathan M. Radmacher, OSB No. 924314
Jason E. Bowman, OSB No. 223584
*Of Attorneys for Defendant*
*Oregon School Activities Association*

DEFENDANT OREGON SCHOOL ACTIVITIES
ASSOCIATION'S SPECIAL MOTION TO STRIKE
Page 27 of 30
Case No. 6:22-CV-01228-MC

**McEWEN GISVOLD LLP**
**1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204**
**Telephone: (503) 226-7321; Facsimile (503) 243-2687**
**Email: jonathanr@mcewengisvold.com**

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of November, 2024, served the within DEFENDANT

OREGON SCHOOL ACTIVITIES ASSOCIATION'S SPECIAL MOTION TO STRIKE on the

persons listed below by the methods indicated below.

| | | |
|---|---|---|
| Buck Dougherty<br>Liberty Justice Center<br>7500 Rialto Boulevard<br>Suite 1-250<br>Austin, TX 78735<br>Telephone: (512) 481-4400<br>Email: bdougherty@libertyjusticecenter.org | __X__<br>___<br>___ | U.S. Mail<br>E-file/E-serve<br>Facsimile<br>E-mail |

*Of Attorneys for Plaintiff John Parks*

| | | |
|---|---|---|
| Luke D. Miller<br>Miller Bradley Law, LLC<br>1567 Edgwater Street NW<br>Pmb 43<br>Salem, OR 97304<br>Telephone: (800) 392-5682<br>Email: luke@millerbradleylaw.com | __X__<br>___<br>___ | U.S. Mail<br>E-file/E-serve<br>Facsimile<br>E-mail |

*Of Attorneys for Plaintiff John Parks*

| | | |
|---|---|---|
| Zachariah H. Allen<br>Taylor B. Lewis<br>Karen M. O'Kasey<br>Hart Wagner, LLP<br>1000 SW Broadway<br>Suite 2000<br>Portland, OR 97205<br>Telephone: (503) 222-4499<br>Email: zha@hartwagner.com<br>        tbl@hartwagner.com<br>        kok@hartwagner.com | __X__<br>___<br>___ | U.S. Mail<br>E-file/E-serve<br>Facsimile<br>E-mail |

*Of Attorneys for Defendants Lake Oswego*
*School Board and Lake Oswego School District*

Dated: November 22, 2024        McEWEN GISVOLD LLP

        By: _s/Jonathan M. Radmacher_____
            Jonathan M. Radmacher, OSB No. 924314
            Jason E. Bowman, OSB No. 223584
            *Of Attorneys for Defendant*
            *Oregon School Activities Association*

CERTIFICATE OF SERVICE
Page 30 of 30

U:\U\90085\90085-087 Parks, John\Pleadings\Special Motion to Strike.wpd