## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| JOHN PARKS,<br><br>*Plaintiff*,<br><br>v.<br><br><br><br>LAKE OSWEGO SCHOOL DISTRICT; LAKE OSWEGO SCHOOL BOARD; OREGON SCHOOL ACTIVITIES ASSOCIATION; PORTLAND PUBLIC SCHOOLS; and MARSHALL HASKINS, individually and *in his representative capacity for OREGON SCHOOL ACTIVITIES ASSOCIATION and PORTLAND PUBLIC SCHOOLS*<br><br><br>*Defendants.* | Case No. 3:24-cv-1198<br><br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO OREGON SCHOOL ACTIVITIES ASSOCIATION'S SPECIAL MOTION TO STRIKE** |

Plaintiff Coach John Parks files this response in opposition to the Special Motion to Strike [ECF No. 30] under Oregon's anti-SLAPP statute, ORS § 31.150, filed by defendant Oregon School Activities Association ("OSAA"). As set forth in this opposition response, the Court should deny OSAA's Special Motion to Strike Coach Parks's First Amended Complaint [ECF No. 7].

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................ii

TABLE OF AUTHORITIES ..........................................................................................iii

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 3

    Coach Parks's Protected Speech Under The First Amendment............................... 3

    Haskins's Letter to Parks's Employer Prompted an Investigation......................... 3

LEGAL STANDARD....................................................................................................... 5

ARGUMENT .................................................................................................................... 6

    I.    Oregon's Anti-SLAPP statute is inapplicable because, pursuant to the
Rules Enabling  Act, Congress did not authorize States to prescribe rules of
practice and procedure in federal courts. ................................................................ 6

    II.  Oregon's anti-SLAPP statute is inapplicable because Coach Parks's
claim of defamation does not fall under any of the relevant circumstances.......... 10

    III.  There is a genuine dispute as to material facts, and discovery must be
allowed prior to a decision issued by this Court. .................................................. 14

    IV.  If necessary, Parks must be allowed to amend. .............................................. 18

CONCLUSION............................................................................................................... 19

CERTIFICATE OF SERVICE....................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Abbas v. Foreign Policy Grp., LLC*, 783 F. 3d 1328 (D.C. Cir. 2015)..........................8

*Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n.*, 531 U.S. 288 (2001).............17

*C.R. v. Eugene Sch. Dist. 4J*, 481 P.3d 334 (Or. Ct. App. 2021) ..........................11, 12

*Carbone v. Cable News Network, Inc.*, 910 F. 3d 1345 (11th Cir. 2018).....................8

*CoreCivic, Inc. v. Candide Grp., LLC*, 45 F.4th 1136 (9th Cir. 2022) ......................10

*DeHart v. Tofte,* 533 P.3d 829 (2023) ........................................................................13

*Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010) ...........................................................8

*Klocke v. Watson*, 936 F. 3d 240 (5th Cir. 2019) .........................................................8

*La Liberte v. Reid*, 966 F. 3d 79 (2d Cir. 2020)...........................................................8

*Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881 (9th Cir. 2016)....................16

*Mogan v. Airbnb, Inc.*, 2024 U.S. App. LEXIS 20052, *1 (9th Cir. 2024)..................9

*Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708
    (9th Cir. 2001) .................................................................................................2, 19

*Planned Parenthood Fed'n of Am. V. Ctr. For Med. Progress*, 890 F.3d 82
    (9th Cir. 2018) ..........................................................................................2, 14, 18

*Schwern v. Plunkett*, 845. F.3d 1241 (9th Cir. 2017).....................................................8

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)... 7, 10

*Swint v. Chambers County Commission,* 514 U.S. 35 (1995) ..................................6, 7

*Wahab v. Wahab*, No. 3:23-cv-00098-SB, 2023 U.S. Dist. LEXIS 137683
    (D. Or. Aug. 8, 2023) .............................................................................................8

*Zeizig v. Northwest Direct Teleservices, Inc.*, No. 3:15-cv-02401-HZ, 2016
   U.S. Dist. LEXIS 131313 (D. Or. Sept. 24, 2016) ...................................................... 8

**Statutes**

28 U.S.C. §§ 2071-2077 .................................................................................... 1, 6

Cal Code Civ Proc § 425.16(b)(1). .......................................................................... 9

ORS § 30.265 ....................................................................................................... 16

ORS § 31.150 ........................................................................................................ i, 10

ORS § 31.150(1). .................................................................................................... 5

ORS § 31.150(2) ................................................................................................. 5, 11

ORS § 31.150(2)(b) ............................................................................................... 11

ORS § 31.150(2)(d) ............................................................................................... 11

ORS § 31.150(4). .................................................................................................... 5

U.S.C. §§ 2071-2077 ............................................................................................. 1

**Rules**

Fed. R. Civ. P. 12 .................................................................................................. 7

Fed. R. Civ. P. 15(a) ......................................................................................... 2, 18

Fed. R. Civ. P. 56 ........................................................................................... 7, 15

## INTRODUCTION

The Court should deny Defendant OSAA's Special Motion to Strike Coach Parks's First Amended Complaint for at least six reasons.

*First*, OSAA asks this Court—a United States federal Court of limited jurisdiction—to apply Oregon's anti-SLAPP statute to strike Coach Parks's claims. But a state's anti-SLAPP statute—such as Oregon's here—is inapplicable in federal court because it violates the Rules Enabling Act, 28 U.S.C. §§ 2071-2077. The Rules Enabling Act authorizes *only* the U.S. Supreme Court to prescribe general rules of practice and procedure and rules of evidence for the federal courts. Not a state such as Oregon. Currently there is a circuit split as to whether state anti-SLAPP statutes may be applied in federal courts, with the Second, Fifth, Eleventh, and D.C. Circuits holding them inapplicable, and the First and Ninth applying them with certain modifications to coexist with the Federal Rules.

*Second*, even if this Court determines that Oregon's anti-SLAPP statute applies in federal court, Coach Parks's claim of defamation against OSAA is not based on the areas covered by Oregon's anti-SLAPP statute. Specifically, his defamation claim against defendant OSAA—based on its representative and co-defendant Marshall Haskins's false statement to Parks's public school employer, the Lake Oswego defendants—does not arise in connection with an ongoing proceeding authorized by law, nor is Haskins's statement protected speech. In other words, Haskins's false and defamatory statement to Coach Parks's employer was *voluntary* and *initiated* an investigation against Parks resulting in his eventual termination.

1

*Third*, Haskins was speaking on behalf of OSAA in his defamatory written communication to Parks's public school employer. He was speaking on behalf of OSAA because in the first sentence of his letter to Coach Parks's employer he held himself out to be "a representative of Senior leadership" and "a member of the OSAA Executive Board." First Amended Complaint, ECF No. 7-3.

*Fourth*, Haskins's letter to Coach Parks's employer was negligent and sent with actual malice. This is because, as a representative of Senior leadership and member of the OSAA Executive Board, Haskins knew that Coach Parks's email-letter to the OSAA did not violate its Gender Identity Participation policy or Rule 3 in OSAA's Handbook, which was later confirmed by OSAA Executive Director Peter Weber. First Amended Complaint, ECF No. 7-2.

*Fifth*, discovery must be conducted before this Court can rule on OSAA's Special Motion to Strike under *Planned Parenthood Fed'n of Am. V. Ctr. For Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), since OSAA seeks to challenge the factual sufficiency of Coach Parks's defamation claim.

*Sixth*, to the extent the Court determines that OSAA has met its burden to support its Special Motion to Strike—which Parks denies it has—then Parks must be allowed to amend. Fed. R. Civ. P. 15(a); *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (cleaned up). Indeed, the Ninth Circuit has held that leave to amend is freely given to a party unless the opposing party can establish "bad faith, undue delay, prejudice to the opposing party, and/or futility," which OSAA does not argue in its Special Motion to Strike. *See id*.

## STATEMENT OF FACTS

### Coach Parks's Protected Speech Under The First Amendment

On May 15, 2024, on his own time away from his duties at Lake Oswego High School as track and field coach, Coach John Parks sent an email-letter to Peter Weber, Executive Director of the OSAA, the non-profit organization that regulates high school athletics in Oregon, and Kelly Foster, OSAA's Assistant Executive Director. ECF 8-1 ¶ 6; ECF 7-1 at 2. In his letter, Coach Parks expressed his personal opinion supporting the idea of creating a separate track league or "open" division for transgender high-school athletes. *Id*.

In his letter, Coach Parks opined that OSAA's policies allowing certain transgender women born as biological males, such as a specific athlete attending a high school within the Portland Public Schools, to compete against biological women contravened the International Olympic Committee standards and other athletic organizations' standards and rules. *Id*. He further stated that the OSAA's "asserted gender" policy placed too much national media attention on transgender athletes, and overall he expressed concern for all track athletes, transgender and non-transgender alike. *Id*.

### Haskins's Letter to Parks's Employer Prompted an Investigation

After Coach Parks sent his letter to OSAA, on May 24, 2024, Marshall Haskins, representative for OSAA and the Portland Public Schools, sent a letter to Larry Ramirez, Director of High School Education in the Salem-Keizer School District, and Louis Bailey, Executive Director of Secondary Programs at Lake Oswego School

District regarding Coach Parks's letter and alleged certain actions committed by Parks at the 2024 OSAA Track and Field State Championships. ECF No. 16-4.

On the same day Haskins sent the letter to Ramirez and Bailey, Haskins also filed a complaint with Lake Oswego School District alleging that Parks violated the Lake Oswego School District Policy "AC-Nondiscrimination" by discriminating against a McDaniel High School transgender athlete. ECF No. 7-4; 7-3.

Haskins stated in his complaint that he was writing "[a]s a representative of Senior leadership for Portland Public Schools and as a member of the OSAA Executive board, who has been appointed as the state representative for Equity, Diversity, and Inclusion." ECF No. 7-3.

The letter and complaint contained myriad malicious and untrue accusations against Coach Parks. *Id.* For example, Haskins described Coach Parks's email to OSAA and his actions "throughout the 23-24 track season and at the OSAA 6A State Championships" as "premeditated, calculated and discriminatory in an effort to deny our [transgender] student's participation at the state tournament and to create a hostile environment to shame our student." ECF No. 7-3; 16-4. And Haskins's letter precipitated Lake Oswego's investigation into Coach Parks, commenced by Parks's employer after Haskins filed his complaint. ECF No. 16, ¶ 7. Eventually, Coach Parks's employer terminated his employment. ECF No. 7-4.

Later, OSAA Executive Director Weber confirmed that, "The email that John Parks sent our office didn't violate either the Gender Identity Participation policy or Rule 3 in our Handbook." ECF No. 7-2.

## LEGAL STANDARD

A defendant who properly carries its burden may make a special motion to strike claims in a civil action pursuant to Oregon's anti-SLAPP statute. ORS § 31.150(1). A special motion to strike may be made against any claim in a civil action which arises out of one of four instances:

(a) Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law;

(b) Any oral statement made, or written statement or other documented submitted, *in connection with an issue under consideration or review by a legislative*, executive or judicial body or other proceeding authorized by law;

(c) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or

(d) Any other conduct in furtherance of the exercise of the constitutional right of assembly, petition or association or the constitutional right of free speech or freedom of the press in connection with a public issue or an issue of public interest.

ORS § 31.150(2) (emphasis added).

Once the movant-defendant meets its initial burden, "the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a *prima facie* case. If the plaintiff meets this burden, the court shall deny the motion." ORS § 31.150(4).

# ARGUMENT

**I.     Oregon's Anti-SLAPP statute is inapplicable because, pursuant to the Rules Enabling Act, Congress did not authorize States to prescribe rules of practice and procedure in federal courts.**

Oregon's Anti-SLAPP statute, ORS § 31.150, is a state rule of practice and procedure and is therefore inapplicable here because Congress did not authorize Oregon, or any other state legislatures, to implement such rules in federal courts. The Rules Enabling Act, 28 U.S.C. §§ 2071-2077, authorizes only the U.S. Supreme Court, and the Supreme Court alone, to prescribe general rules of practice and procedure for the federal courts.

Pursuant to Section 2073 of the Rules Enabling Act, the Judicial Conference established procedures governing the Standing Committee and its advisory rule committees.[1]

The United State Supreme Court examined the Rules Enabling Act and the federal rulemaking process in *Swint v. Chambers County Commission,* 514 U.S. 35 (1995). There, the Court analyzed an issue with a rule implicating its, "power to prescribe general rules of practice and procedure…for cases in the United States district courts." *Id*. at 48. (citing 28 U.S.C. § 2072(a)). The Court determined that the procedure Congress ordered for rule changes is not expansion by court decision, but rather by rulemaking under § 2072. *Id*. The Supreme Court stated that its,

---

[1] *See* https://www.uscourts.gov/rules-policies/about-rulemaking-process/laws-andprocedures-governing-work-rulescommittees#:~:text=The%20Rules%20Enabling%20Act%2C%2028,evidence%20fo r%20the%20federal%20courts.

"rulemaking authority is constrained by §§ 2073 and 2074, which require, among other things, that meetings of bench-bar committees established to recommend rules ordinarily be open to the public, § 2073(c)(1), and that any proposed rule be submitted to Congress before the rule takes effect, § 2074(a)." *Id.* Put simply, the Supreme Court and Congress are the only authorized bodies which can implement rules of practice and procedure in federal courts, not a state legislature such as Oregon. And while the state of Oregon may certainly enact its state anti-SLAPP statute to be utilized in its state courts, it may not supersede the Supreme Court and Congress's legal authority to prescribe rules of practice and procedure for the federal courts, which OSAA is attempting here with its Special Motion.

Further, Oregon's anti-SLAPP statute is inapplicable in federal district court under the text outlined in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Under *Shady Grove*, if a federal rule of civil procedure, "answers the question in dispute," then it governs, regardless of a state-law procedure to the contrary. *Id*. Here, the issue is whether OSAA may make a motion to dismiss or strike Coach Parks's claim of defamation by *special* motion. Since the Federal Rules of Civil Procedure 12 and 56 provide the conditions under which OSAA may make a motion to dismiss or strike Coach Park's claim and OSAA has not challenged the applicability or validity of Rule 12 or 56, those Federal Rules are applicable if OSAA wants to attempt to defeat Parks's claims.

Moreover, currently there is a federal circuit split on the issue of whether state anti-SLAPP statues are applicable in federal courts. For example, the Second

Circuit has already held California's anti-SLAPP statute, "is inapplicable in federal court because it increases a plaintiff's burden to overcome pretrial dismissal, and thus conflicts with Federal Rules of Civil Procedure 12 and 56." *La Liberte v. Reid*, 966 F. 3d 79, 83 (2d Cir. 2020). The Second Circuit acknowledged a circuit split as to whether anti-SLAPP statutes apply in federal courts, with the Fifth, Eleventh, and D.C. Circuits holding them inapplicable, *id*. at 86 (citing *Klocke v. Watson*, 936 F. 3d 240, 242 (5th Cir. 2019) (Texas statute); *Carbone v. Cable News Network, Inc.*, 910 F. 3d 1345, 1350 (11th Cir. 2018) (Georgia statute); *Abbas v. Foreign Policy Grp.*, LLC, 783 F. 3d 1328, 1335 (D.C. Cir. 2015) (D.C. statute); and the First Circuit applying them. *Id*. (citing *Godin v. Schencks*, 629 F.3d 79, 86-7 (1st Cir. 2010) (Maine statute)).

And several decisions have already held that Oregon's anti-SLAPP statute is analogous to California's statute. *See Wahab v. Wahab*, No. 3:23-cv-00098-SB, 2023 U.S. Dist. LEXIS 137683, *7-8 (D. Or. Aug. 8, 2023); *Schwern v. Plunkett*, 845. F.3d 1241, 1243-1244 (9th Cir. 2017); *Zeizig v. Northwest Direct Teleservices, Inc.*, No. 3:15-cv-02401-HZ, 2016 U.S. Dist. LEXIS 131313, *6 (D. Or. Sept. 24, 2016). Although Oregon's anti-SLAPP statute is similar to California's anti-SLAPP statute, it cannot be upheld under the *Shady Grove* test due to a key difference. The California statute states that a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court

determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal Code Civ Proc § 425.16(b)(1).

By contrast, the Oregon anti-SLAPP statute states, "A defendant may make a special motion to strike against a claim in a civil action described in subsection (2) of this section. The court shall grant the motion unless the plaintiff establishes in the manner provided by subsection (4) of this section that there is a probability that the plaintiff will prevail on the claim...a special motion to strike may be made under this section against any claim in a civil action that arises out of...any other conduct in furtherance of the exercise of the constitutional right of assembly, petition or association or the constitutional right of free speech or freedom of the press in connection with a public issue or an issue of public interest." ORS § 31.150. Specifically, after a defendant makes a prima facie showing that the claim against which the motion is made arises out of a statement covered by the statute, "the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting *substantial* evidence to support a prima facie case." ORS § 31.150 (emphasis added).

To be sure, recent Ninth Circuit decisions found that, "California's anti-SLAPP statute plainly applies in federal court under Ninth Circuit precedent." *Mogan v. Airbnb, Inc.*, 2024 U.S. App. LEXIS 20052, *1, *6 (9th Cir. 2024). To allow state anti-SLAPP statutes to coexist in federal courts with applicable Federal Rules, the Ninth Circuit explained that California's anti-SLAPP statute is, "analyzed under the same standard as Rule 12(b)(6) motions to dismiss, and challenges to factual

sufficiency under the same standard as Rule 56 motions for summary judgment." *CoreCivic, Inc. v. Candide Grp., LLC*, 45 F.4th 1136, 1143 (9th Cir. 2022). This is because, the Ninth Circuit reasoned, California's anti-SLAPP statute puts the same burden on the plaintiff as Rules 12 and 56 would.

While Defendant OSAA would like to claim that Oregon's anti-SLAPP statute does not conflict with the Federal Rules of Civil Procedure like California's anti-SLAPP statute, the fact that Oregon's statute places a heightened burden on the plaintiff at stage two of the inquiry requiring "substantial evidence" (in contrast to California's requirement of a probability of success on the merits) is in direct conflict with Rules 12 and Rule 56 of the Federal Rules, which do not require such a heightened standard.

Thus, because Oregon's anti-SLAPP statute raises Coach Parks's burden beyond that described in Rule 12 and Rule 56 of the Federal Rules of Civil Procedure, Oregon's anti-SLAPP statute is in direct conflict with the Federal Rules and therefore inapplicable in federal court. *See Shady Grove*, 559 U.S. at 398.

## II. Oregon's anti-SLAPP statute is inapplicable because Coach Parks's claim of defamation does not fall under any of the relevant circumstances.

Even if this Court determines that Oregon's anti-SLAPP statute applies in federal courts, it's inapplicable here because it does not encompass circumstances related to Coach Parks's specific defamation claim against OSAA and Haskins.

ORS § 31.150(1) provides that a defendant's special motion to strike a claim in a civil action may be defeated if "the plaintiff establishes in the manner provided in

subsection (4) of this section that there is a probability that the plaintiff will prevail on the claim." A special motion to strike may be made under ORS § 31.150 for a claim in a civil action arising from one of four circumstances. ORS § 31.150(2). Defendant OSAA claims that its special motion to strike arises under ORS § 31.150(2)(b) and ORS § 31.150(2)(d). [ECF 30-15, 16].

ORS § 31.150(2)(b) allows the special motion to strike for a claim in a civil action that arises out of, "any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law."

And ORS § 31.150(2)(d) also allows the special motion to strike for a claim in a civil action that arises out of, "any other conduct in furtherance of the exercises of the constitutional right of assembly, petition or association or the constitutional right of free speech or freedom of the press in connection with a public issue or an issue of public interest."

But neither of these statutory vehicles identified by OSAA apply. OSAA first argues that Coach Parks's claim of defamation against OSAA for Haskins's complaint to Principal Colyer at Lake Oswego High School arose out of a written statement "in connection with an issue under consideration or review by a proceeding authorized by law." [ECF 30-15, 16].

OSAA cites *C.R. v. Eugene Sch. Dist. 4J*, 481 P.3d 334 (Or. Ct. App. 2021), to demonstrate that there is no dispute that a school district's disciplinary proceedings were authorized by law. [ECF 30-15, 16]. But none of the other cases cited in this

section of OSAA's Motion involve a special motion to strike. Most importantly, in *Eugene Sch. Dist. 4J*, the defamatory statements at issue arose during and outside of the disciplinary proceedings of the student *after* the proceedings commenced. 481 P.3d at 339-40.

The Court there found that the trial court erred in granting the defendant's special motion to strike because, "Viewing the declarations and depositions submitted by plaintiff in the light most favorable to plaintiff, they describe conduct or statements made outside of or after the disciplinary proceedings, or to persons who were not involved in the investigation or proceedings." *Id*. at 781.

Here, Haskins' defamatory letter to Parks's public school employer was not made as part of an "issue under consideration or review." Rather, Haskins' letter was the *cause* of the investigation itself that the Lake Oswego defendants initiated against Coach Parks and arose *prior* to Principal Colyer's investigation. Therefore, OSAA's Special Motion to Strike on the grounds that Coach Parks's claim of defamation against OSAA arose in connection with an issue already under consideration by Lake Oswego officials is plainly false in accordance with the record before the Court.

Defendant OSAA then claims that Parks's claim of defamation against Haskins and OSAA arose out of "conduct in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest." To satisfy this standard, "a defendant must demonstrate *both* that their conduct (1) was "in furtherance of the constitutional right of free speech'" and (2) was in

connection with a public issue or an issue of public interest." *DeHart v. Tofte,* 533 P.3d 829, 843 (2023).

The Ninth Circuit has held that, "if activity is protected by the First Amendment to the United States Constitution, then that activity is 'in furtherance of the constitutional right of free speech' under ORS § 31.150(2)(d)." *Id.* at 742. OSAA conclusory asserts in its Motion that, "Mr. Haskins' speech was in furtherance of his constitutional right to free speech." [ECF 30-16]. But defamation does not fall under speech protected by the First Amendment. And therefore the mere conclusory assertion that Haskins's speech was in furtherance of his constitutional right is insufficient.

OSAA also fails to meet its burden because it did not show that Haskins's letter was made, "in connection with a public issue or an issue of public interest." The Ninth Circuit has defined a "public issue or issue of public interest" as existing when (1) a statement concerns a person or entity in the public eye; (2) that could directly affect a large number of people beyond the direct participants; and (3) that involves a topic of widespread public interest. *DeHarte*, P.3d at 744.

Despite OSAA's protestations, at the time of Haskins complaint, Coach Parks was not in, "the public eye." Coach Parks had not given any interview, or spoken publicly about the issue outside of his letter to OSAA prior to Haskins sending his complaint, and OSAA failed to submit evidence stating otherwise. Rather, the record reflects that Parks's communications on the issue of transgender participation in sports were done in private to the OSAA, away from his duties and

13

obligations as coach of Lake Oswego High School's track and field team. To the extent Coach Parks's letter was ever made public, *Haskins himself* made it so.

Haskins's letter to Principal Colyer was not a statement which, "could directly affect a large number of people beyond the direct participants." Instead, Haskins' letter concerned Coach Parks, and Coach Parks alone. Even if Haskins' false statements are deemed truthful, the topic of Haskins letter did not concern transgender participation generally, rather it was an attack on Coach Parks. Because of Haskins filing his complaint, only Coach Parks would be affected, not, "a large number of people beyond the direct participants."

Therefore, none of the scenarios identified by OSAA are directly applicable, and this Court should deny OSAA's Special Motion to Strike.

### III.  There is a genuine dispute as to material facts, and discovery must be allowed prior to a decision issued by this Court.

This Court must allow discovery before any decision on the merits because there is a genuine dispute as to material facts.

Under *Planned Parenthood Fed'n of Am. V. Ctr. For Med. Progress*, the Ninth Circuit held that "when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply." 890 F.3d 828, 834 (9th Cir. 2018). Further, "in such a case, discovery must be allowed, with opportunities to supplement evidence based on factual challenges, before any decision is made by the court." *Id*.

14

Here, Rule 56 of the Federal Rules of Civil Procedure applies because OSAA challenges the factual sufficiency of Coach Parks's defamation claim on several grounds.

OSAA claims that Parks is a, "limited purpose public figure" because he, "insert[ed] himself publicly into the public debate about transgender athletics." ECF No. 30 at 17. Thus, OSAA claims, "Mr. Parks is now – and has been – in the position of a limited-purpose public figure, inserting himself publicly into the public debate about transgender athletics." And OSAA argues that "Mr. Parks has failed to adequately plead that Mr. Haskins made his complaint with actual malice." ECF No. 30 at 20. OSAA argues that Coach Parks's sent his email to two OSAA directors in an effort to keep the transgender athlete in question from participating in the State Championship. ECF No. 30 at 21. But this is untrue and in dispute.

Indeed, Coach Parks disputes that he was publicly or privately attempting to prevent the participation of the transgender athlete. Coach Parks denies the allegations that he spoke to the transgender athlete after the 400M race and that Parks was, "contacting those who may have been spectating, who may have been responsible for the booing." ECF No. 7-6. Further, Coach Parks's communication with OSAA did not transform him into a limited purpose public figure, as his speech was done via his private email and not broadcast to the general public. In fact, this Court in its Memorandum Opinion has already ruled that Coach Parks has made out a *prima facie* case that his speech was made as a private citizen. [ECF No. 33 at 19]. Therefore, OSAA's claim that Parks is a limited purpose public figure is

15

ultimately an attack on the factual sufficiency of Parks's claim of defamation against OSAA, which the Court has ruled otherwise based on its findings and creates a factual dispute.

Even if the Court determines that Parks must show actual malice because he is a limited public figure, Haskins's letter to Lake Oswego High School was sent with actual malice because he knew that Coach Parks's email-letter to the OSAA did not violate its Gender Identity Participation policy or Rule 3 in OSAA's Handbook. This was later confirmed by OSAA Executive Director Peter Weber. ECF No. 7-2. *See generally Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881 (9th Cir. 2016). And because Haskins was on the OSAA Board at the time he communicated with Lake Oswego and knew that Parks's letter was not in violation of OSAA's policies, or harbored serious doubts that it was, he acted with actual malice in his letter to Lake Oswego officials.

OSAA further claims that it is not a public body for purposes of imposing liability under ORS § 30.265. OSAA submitted a declaration by Jonathan Radmacher, a person who has, "performed legal work for the [OSAA] for over 30 years" and claims, "For at least the last 30 years, OSAA has been a private association of both public and private high schools." [ECF No. 31 at 3].

But OSAA contradicts its own supporting Declaration and argues that in a prior federal case, "the court found that the OSAA was a public entity after elaborating on the statutory and regulatory structure wherein rules had to be approved by the

16

State Board of Education, and its decisions could be appealed to the Oregon Department of Education." ECF No. 30 at 23.

More importantly, whether OSAA is a public body is a factual matter which has yet to be resolved. OSAA argues that in 2011 "the State of Oregon repealed former ORS 339.430 in its entirety, removing the prior State administrative and regulatory authority over the rules and decisions of such voluntary associations." ECF No. 30 at 23. Coach Parks disputes this fact in his amended complaint instead arguing that OSAA is a public body subject to ORS § 30.265 and a state actor under the standard elaborated in *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n.*, 531 U.S. 288 (2001). Because Radmacher's Declaration attempts to set forth a statement of fact which both OSAA and Coach Parks either contradict or refute, a factual dispute exists on this issue.

Finally, OSAA claims that Haskins was not speaking on behalf of OSAA, and he was not motivated by a purpose to serve OSAA, therefore leaving no genuine issue of material fact to be resolved on the issue. But such genuine issues do indeed exist.

OSAA argues that Haskins was not working within the scope of his duties for OSAA when he filed his complaint because, "At no level does [Haskins] suggest that he is writing in his capacity as a member of the OSAA Executive Board." The record shows otherwise. In Haskins's complaint to Parks's public school employer, he contradicts this point by writing, "As a representative of Senior leadership for Portland Public Schools and as a member of the OSAA Executive Board, who has been appointed as the state representative for Equity, Diversity and Inclusion, I

17

was appalled, disappointed and embarrassed for Lake Oswego and Salem Keizer School districts because of the behavior of one of your employees." [ECF No. 7-3; ECF No. 16-4.]. His letter further shows that Haskins was clearly motivated by a purpose to serve OSAA given that he specifically outlines his OSAA role as, "representative for Equity, Diversity and Inclusion."

Because OSAA's Motion to Strike contains factual disputes as to the sufficiency of Coach Parks's claim of defamation, it cannot also demonstrate that there is no genuine dispute as to material facts, which this Court has already acknowledged in its recent Memorandum Opinion. ECF No. 33 at 23.

And because OSAA challenges the factual sufficiency of Coach Parks's claim, discovery must be allowed before this Court can rule on the special motion. *Planned Parenthood*, 890 F.3d at 828-34. OSAA's Special Motion to Strike based on challenges of the factual sufficiency of Coach Parks's claims cannot be ruled upon until this Court allows for further discovery as to the truth of the matters surrounding the events prior to and during the State Championship, the status of OSAA as a public body or state actor, and whether Haskins was writing explicitly as a member of the OSAA Board as he represented to Lake Oswego officials.

### IV.    If necessary, Parks must be allowed to amend.

Coach Parks must be allowed to amend his First Amended Complaint if the Court determines that OSAA has met its burden.

Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). This policy is "to be applied with extreme liberality." *Owens v. Kaiser*

*Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (cleaned up). Thus, leave to amend is freely given to a party unless the opposing party can establish "bad faith, undue delay, prejudice to the opposing party, and/or futility." *Id.*

Here, as set forth in its Special Motion to Strike, OSAA does not claim that allowing Parks to amend should be disallowed because of bad faith, undue delay, prejudice to OSAA, and/or futility. Therefore, the Court should freely allow Parks to amend his First Amended Complaint to the extent it determines that OSAA has met its burden under Oregon's anti-SLAPP statute.

## CONCLUSION

For these reasons, Coach Parks respectfully requests that the Court deny OSAA's anti-SLAPP Special Motion to Strike.

Oregon's anti-SLAPP statute is inapplicable in federal court because it violates the Federal Rules Enabling Act and impermissibly imposes a heightened standard upon Coach Parks in violation of Supreme Court precedent.

Even if Oregon's anti-SLAPP law is deemed to apply in federal court, Coach Parks's claim of defamation against OSAA is sufficient.

OSAA raises a number of factual disputes which directly conflict with the factual statements in the record, as well as this Court's findings in its recent Memorandum Opinion, requiring factual discovery.

Finally, should the Court determine that OSAA has met its burden, Coach Parks should be allowed to freely amend his First Amended Complaint because OSAA did

not establish bad faith, undue delay, prejudice to it, and/or futility by allowing

amendment.

Dated: December 13, 2024                    Respectfully submitted,

                                            /s/ M.E. Buck Dougherty III
                                            M.E. Buck Dougherty III*
                                            LIBERTY JUSTICE CENTER
                                            7500 Rialto Blvd.
                                            Suite 1-250
                                            Austin, TX 78735
                                            (512) 481-4400 - telephone
                                            bdougherty@libertyjusticecenter.org

                                            *Admitted pro hac vice*

                                            Luke D. Miller
                                            Miller Bradley Law, LLC.
                                            1567 Edgewater St. NW
                                            PMB 43
                                            Salem, OR 97304
                                            luke@millerbradleylaw.com

                                            *Attorneys for Plaintiff John Parks*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically with the Court's Case Management/Electronic Case Filing (CM/ECF) system. The Court and/or Clerk of Court may serve and give notice to counsel by CM/ECF electronic transmission.

The 13th day of December 2024.

/s/ M.E. Buck Dougherty III
M.E. Buck Dougherty III*
LIBERTY JUSTICE CENTER
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
(512) 481-4400 - telephone
bdougherty@libertyjusticecenter.org


*Attorneys for Plaintiff John Parks*

21