IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JOHN PARKS, | 3:24-cv-01198-JR |
| Plaintiff, | |
| v. | FINDINGS & RECOMMENDATION and ORDER |
| LAKE OSWEGO SCHOOL DISTRICT; LAKE OSWEGO SCHOOL BOARD; OREGON SCHOOL ACTIVITIES ASSOCIATION; PORTLAND PUBLIC SCHOOLS; and MARSHALL HASKINS, individually and in his representative capacity for OREGON SCHOOL ACTIVITIES ASSOCIATION and PORTLAND PUBLIC SCHOOLS, | |
| Defendant. | |

RUSSO, Magistrate Judge:

Plaintiff, John Parks, former Lake Oswego High track and field coach, brings this action against Defendants Lake Oswego School District ("LOSD"), Lake Oswego School Board ("Board"), Marshall Haskins, Oregon School Activities Association ("OSAA"), and Portland Public Schools ("PPS"). Against the LOSD and its Board, Parks asserts two claims under 42 U.S.C. § 1983, alleging they committed First Amendment retaliation and deprived him of procedural due process, in violation of his rights under the First and Fourteenth Amendments.

Page 1 – FINDINGS & RECOMMENDATION and ORDER

Against Haskins, OSAA, and PPS, Parks alleges they are liable for common law defamation under Oregon law. The OSAA moves pursuant to Or. Rev. Stat. § 31.150 to strike the defamation claim against it. Additionally, defendants LSOD and its Board move to strike exhibits 1-9 attached to the First Amended Complaint. For the reasons stated below, the motions are denied

### ALLEGATIONS

Plaintiff alleges the Board's policy on discrimination states:

> The district prohibits discrimination and harassment on any basis protected by law, including but not limited to . . . sex, sexual orientation, gender identity . . ..

First Amended Complaint (ECF 7) at ¶ 30. Plaintiff further alleges the Board's policy on harassment states:

> Hazing, harassment, intimidation, bullying, menacing, and acts of cyberbullying of staff or third parties by staff, students, or third parties is strictly prohibited and shall not be tolerated in the district . . .. Staff whose behavior is found to be in violation of this policy will be subject to consequences and appropriate remedial action which may include discipline, up to and including dismissal.

Id. at ¶ 31.

Plaintiff argues that a staff member's expression of concern for the welfare of both transgender and non-transgender athletes in a letter to a third party and conversations with third parties does not constitute discrimination or harassment under the Board's policies. Id. at ¶¶ 33-34.

Plaintiff alleges OSAA policy allows students to participate in the athletic program of their consistently asserted gender identity while providing a fair and safe environment for all students. Id. at ¶ 36-37. In mid-May 2024, plaintiff asserts, on his own, as a private citizen, he sent an email-letter to Peter Weber, Executive Director of OSAA and Kelly Foster, OSAA Assistant Executive Director, expressing his personal opinion on the potential creation of a separate track league or "open" division for transgender athletes. Id. at ¶¶ 38, 43. Plaintiff referenced a specific PPS student

Page 2 – FINDINGS & RECOMMENDATION and ORDER

and opined about the inconsistencies of allowing biological males to compete against biological females that contravened the International Olympic Committee standards and other athletic organizations' standards and rules and placed too much media attention on transgender athletes. Id. at ¶¶ 39-40. Plaintiff asserts Peter Weber confirmed that plaintiff's email did not violate either the OSAA Gender Identity Participation policy or Rule 3 in its Handbook. Id. at ¶ 41. Plaintiff also asserts he informed the Lake Oswego principal and athletic director of his email to the OSAA, and they did not object.

Plaintiff asserts his coaching duties did not require him to communicate with OSAA officials and specifically alleged:

> spoke out in his letter on a matter of public concern and importance: whether transgender athletes born as biological males should compete against athletes born as biological females in athletic competitions.

Id. at ¶¶ 44, 45.

Plaintiff alleges that on May 24, 2024, defendant Marshal Haskins, the Senior Director of Athletics for Portland Public Schools and Diversity, Equity and Inclusion Committee Representative for the OSAA, wrote to Larry Ramirez, Director of High School Education in the Salem-Keizer School District, and Louis Bailey, Executive Director of Secondary Programs at Lake Oswego School District. Plaintiff alleges Haskins wrote:

> As a representative of Senior leadership for Portland Public Schools and as a member of the OSAA Executive Board, who has been appointed as the state representative for Equity, Diversity and Inclusion, I was appalled, disappointed and embarrassed for Lake Oswego and Salem Keizer School districts because of the behavior of one of your employees.
>
> All students deserve the ability to compete in interscholastic events without feeling discriminated against or fearful of how they will be treated at an event. Unfortunately, one of your educators, John Parks, went out of his way to make a PPS African American Transgender track athlete feel unwelcome and discriminated against throughout the 23-24 track season and at the OSAA 6A State Championships in Eugene.

Page 3 – FINDINGS & RECOMMENDATION and ORDER

> Park's behaviors were premeditated, calculated and discriminatory in an effort to deny our student's participation at the state tournament and to create a hostile environment to shame our student. Here are specific examples of the harassing discriminatory behavior:
>
> A. Sent email to OSAA in an effort to stop our student from participating at the state track meet.
> B. Contacted coaches from other schools prior to the state tournament asking them to submit letters, emails and call OSAA office to deny our student an opportunity to participate in the OSAA state tournament.
> C. Contacted coaches from other schools telling them to boycott medal presentation at state tournament.
> D. Coordinating phone calls with coaches to contact our families of student athletes related to state tournament participation.
> E. Harassing our student athletes and their families prior and during the state tournament forcing them to participate in his personal agenda though calls, email and on site inquiries.
> F. Speaking negatively to our transgender student athlete on the podium at the medal presentation for the 200 M race.
> G. Communicating with student athletes at the state tournament, recommending they not participate in medal presentation if our student won either the 200 M or 400 M race.
> H. Riling up state tournament spectators in stands, including a large contingent from the Lake Oswego community to "boo" our student athlete during the medal presentation.
>
> As a TSPC licensed educator Mr. Parks behaviors (which are highlighted) are in direct contradiction to TSPC Standards of both an Component Educator and Ethical Educator.
>     ….
> (1) Recognize the worth and dignity of all persons and respect for each individual;
> (2) Encourage scholarship;
> (3) Promote democratic and inclusive citizenship;
> ….
> (5) Use professional judgment; and
> (6) Promote equitable learning opportunities
> ….
> (c) Maintain an appropriate professional student-educator relationship by:
> (A) Not demonstrating or expressing professionally inappropriate interest in a student's personal life;
> ….
> (D) Honoring appropriate adult boundaries with students in conduct and conversations at all times.
> ….
> (3) The ethical educator, in fulfilling obligations to the profession, will:

Page 4 – FINDINGS & RECOMMENDATION and ORDER

> (a) Maintain the dignity of the profession by respecting and obeying the law, exemplifying personal integrity and honesty;
> (b) Extend equal treatment to all members of the profession in the exercise of their professional rights and responsibilities;
> ….
>
> Mr. Parks' behavior surrounding the participation of an african american transgender student athlete from our district was alarming, unprofessional and violated both of these standards.
>
> In addition, in the NFHS coach handbook it states that "Coaches must constantly uphold the honor and dignity of the profession. In all personal contact with the student athlete, officials, athletic directors, school administrators, the state high school association, the media and the public, the coach shall strive to set an example of the highest ethical and moral conduct."
>
> It is the responsibility of Mr. Parks because of his immense influence with Lake Oswego student athletes and parents to teach and model sportsmanship. Mr. Parks did the opposite by harassing PPS students and families, and creating an environment that promotes hate and intolerance while advocating for the crowd to discriminate against a 15 year old African American transgender student who has done nothing wrong is unacceptable.
>
> Mr. Parks should not be pushing his personal agenda. He should be following state law, OSAA policy while adhering to his responsibilities as a licensed educator and role model for student athletes teaching sportsmanship.
>
> In closing, I hope Salem-Keizer and Lake Oswego school districts do what is necessary to make sure this behavior is dealt with in a way that is student centered and ensures that hate and intolerance is not what teachers and coaches in your district model.

This email shall serve as a Formal Complaint under
1. Lake Oswego
a. Non Discrimination Policy (AC-AR)
b. KL-AR(1)
2. Salem Kaiser
a. Hazing, Harassment and Bullying Student INS-A003
b. Bias Incidents and Symbols of Hate ADM-A012

ECF 16-4[1].

---

[1] Plaintiff's complaint incorporates by reference the letter (First amended Complaint (ECF 7) at ¶ 49 and Ex. 3) but only contains a portion of the letter. The Court takes judicial notice of the entire letter provided by the Lake Oswego defendants in response to plaintiff's motion for a preliminary injunction.

Page 5 – FINDINGS & RECOMMENDATION and ORDER

Plaintiff asserts the allegations in the letter outlining purported harassing and discriminatory conduct were false. First Amended Complaint (ECF 7) at ¶ 50.

Plaintiff further alleges defendant Haskins also filed a complaint with LOSD alleging plaintiff violated the District's "AC-Nondiscrimination" policy by discriminating against a McDaniel High transgender athlete. Id. at ¶ 51. Plaintiff asserts on June 12, 2024, LOSD principle Colyer sent a letter to plaintiff, following an investigation into Haskin's complaint, stating plaintiff violated the Board's AC-Nondiscrimination and "JFCF—Hazing, Harassment, Intimidation, Bullying, Menacing, Cyberbullying, Teen Dating Violence or Domestic Violence" policies. Id. at ¶ 52 and Ex. 4. On that same day, plaintiff alleges Colyer also sent a letter reiterating the finding of violation of nondiscriminatory policies and stated:

> As an educational institution, we are committed to providing a safe and inclusive environment for all students. In light of these findings, {LOSD} has decided that the District cannot support your actions and behaviors. The length of any coaching contract is for the current season only. Consequently, we will open the cross country and track coach positions for … the 2024-25 school year.

Id. at ¶ 54 and Ex. 5.

Plaintiff alleges a reasonable person in his position would refrain from speaking out in the future regarding transgender athletic participation as a result of the investigation, termination, and nonrenewal of plaintiff's contract.

Not only did plaintiff appeal his "termination," he also sent a letter to Oregon State Senator Rob Wagner expressing his opinion regarding transgender athletes competing in girls' varsity sports. Id. at ¶¶ 56-57 and Ex. 7. In that letter plaintiff closed with:

> I am happy to meet with you in person to discuss this further, but I mostly urge you to take leadership on this issue this summer and get the current law properly interpreted or get the law changed so all can be winners and we don't have booing of our state champions in track and field. The law should be titled "We Cheer For All Athletes."

Page 6 – FINDINGS & RECOMMENDATION and ORDER

ECF 7-7 at p. 4.

Among other claims, plaintiff asserts defendants Marshal Haskins defamed him via his letter and complaint and that defendant OSAA is liable for Haskins' actions.

As noted above, the OSAA moves to dismiss the defamation claim against it and LOSD moves to strike exhibits to the complaint.

DISCUSSION

A.     Defamation Claims against Haskins and OSAA

Defendant OSAA asserts defendant Haskins' speech is protected under Oregon's Anti-SLAPP law, Or. Rev. Stat. § 31.150. Accordingly, defendant OSAA moves to dismiss the defamation claim against it which are based on Haskins' letters purportedly on behalf of the OSAA.

Oregon's anti-SLAPP statute, Or. Rev. Stat. § 31.150, "creates an expedited procedure for dismissal of certain non-meritorious civil cases without prejudice at the pleading stage." Neumann v. Liles, 358 Or. 706, 723 (2016). Application of Oregon's anti-SLAPP statute is a "two-step burden-shifting process." Wingard v. Or. Family Council, Inc., 290 Or. App. 518, 521 (2018). The moving defendant must first demonstrate that "the claim against which the motion is made arises out of statements or conduct protected by Or. Rev. Stat. § 31.150(2). This statute protects, in relevant part, "any … written statement submitted … in a … proceeding authorized by law," "[a]ny oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law," and "[a]ny other conduct in furtherance of the exercise of the ... constitutional right of free speech in connection with a public issue or an issue of public interest." Or. Rev. Stat. § 31.150(2)(a)(b)(d).

Page 7 – FINDINGS & RECOMMENDATION and ORDER

If defendant meets this burden, plaintiff must "establish that there is a probability that [he] will prevail on the claim by presenting substantial evidence to support a prima facie case." Or. Rev. Stat. § 31.150(3). Substantial evidence means enough evidence from which a reasonable trier of fact could find that the plaintiff has met his burden of production. See Handy v. Lane Cty., 360 Or. 605, 623 (2016) ("In using terms like 'probability' and 'substantial evidence,' the legislature did not intend to require a plaintiff to do more than meet its burden of production.").

The second step of the analysis is not constrained to the pleadings. See Bryant v. Recall for Lowell's Future Comm., 286 Or. App. 691, 693 (2017) (considering "facts as provided in the pleadings and the supporting and opposing declarations and exhibits submitted"); see also Or. Rev. Stat. § 31.150(4) ("[T]he court shall consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based."). When presented with conflicting evidence, courts "adopt the version that is most favorable to plaintiff, so long as it is supported by substantial evidence." Plotkin v. State Accident Ins. Fund, 280 Or. App. 812, 816 (2016) (citation omitted). Courts consider a defendant's opposing evidence "only to determine if it defeats plaintiff's showing as a matter of law." Bryant, 286 Or. App. at 693 (citation omitted).

Plaintiff argues Oregon's Anti-SLAPP statute is an inapplicable state rule of practice in federal court. There is a circuit split on whether federal courts may entertain the various state iterations of the anti-SLAPP special motion. La Liberte v. Reid, 966 F.3d 79, 86 (2d Cir. 2020):

> The Fifth, Eleventh, and D.C. Circuits hold that they are inapplicable in federal court on the ground that they conflict with Federal Rules of Civil Procedure 12 and 56. See Klocke v. Watson, 936 F.3d 240, 242 (5th Cir. 2019) (Texas); Carbone v. Cable News Network, Inc., 910 F.3d 1345, 1350 (11th Cir. 2018) (Georgia); Abbas v. Foreign Policy Grp., LLC, 783 F.3d 1328, 1335 (D.C. Cir. 2015) (D.C.).1 The First and **Ninth Circuits see no such conflict with the statutes of Maine and California, respectively**. See Godin v. Schencks, 629 F.3d 79, 86-87 (1st Cir. 2010); United States ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 972 (9th Cir. 1999).

Page 8 – FINDINGS & RECOMMENDATION and ORDER

Id. (emphasis added).

Plaintiff asserts while the Ninth Circuit may find California's Anti-SLAPP statute applicable, it differs from Oregon's in that it requires the non-moving party, at stage two of the inquiry, to present "substantial evidence" in contrast to California's probability of success on the merits. Plaintiff contends Oregon's statute thus directly conflicts with Rule 12 and 56 due to its increased burden. However, the Oregon statute only requires substantial evidence to support a "prima facie" case.

Federal courts generally apply state substantive law and federal procedural law. Hanna v. Plumer, 380 U.S. 460, 465 (1965). Although anti-SLAPP motions appear to be a procedural mechanism to vindicate existing substantive rights, they are generally allowed in federal court. See U.S. ex rel. Newsham 190 F.3d at 970-73 (9th Cir. 1999) (holding that some of California's anti-SLAPP provisions do not "directly interfere with the operation" of the Federal Rules of Civil Procedure); see also Gardner v. Martino, 563 F.3d 981, 991 (9th Cir. 2009) (applying Oregon's anti-SLAPP statute). However, the Ninth Circuit has held that not all provisions of a state anti-SLAPP statute apply in federal court. See Metabolife Intern., Inc. v. Wornick, 264 F.3d 832, 846 (9th Cir. 2001) (holding that "the discovery-limiting aspects of [anti-SLAPP motions] collide with the discovery-allowing aspects of Rule 56"); see also AR Pillow Inc., v. Maxwell Payton, LLC, 2012 WL 6024765, at *3 (W.D. Wash. Dec. 4, 2012) ("[T]he Ninth Circuit's holding that the automatic stay of discovery in California's statute does not apply in federal court applies equally to [Washington's anti-SLAPP statute].").

To eliminate any lingering conflict, the Ninth Circuit adopted a tiered approach to anti-SLAPP motions. See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress, 890 F.3d 828 (9th Cir. 2018). "[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency

Page 9 – FINDINGS & RECOMMENDATION and ORDER

of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." Planned Parenthood, 890 F.3d at 834. By contrast, "when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, ... the Federal Rule of Civil Procedure 56 standard will apply." Id. If the defendant's motion challenges the factual sufficiency of a claim, "discovery must be allowed ... before any decision is made by the court." Id. This is because "[r]equiring a presentation of evidence without accompanying discovery would improperly transform the motion to strike under the anti-SLAPP law into a motion for summary judgment without any of the procedural safeguards that have been firmly established by the Federal Rules of Civil Procedure."

Here, defendant argues in its reply that plaintiff has not presented any evidence to support his prima facie case and thus it need not rebut plaintiff's case in step two of the inquiry. However, to the extent defendant seeks to go beyond the pleadings to challenge the allegations in the complaint, the Court declines to engage in such an analysis preferring instead to allow discovery to take place. The Court only reviews the pleadings including attachments to determine whether plaintiff pleads a prima facie case to the extent Oregon's Ant-SLAPP statute applies on its face. Accordingly, the Court does not undertake to determine the truth or falsity of the statements made in Haskin's letters as those are matters of factual dispute for which discovery is necessary.

    1.    Haskins' Letters Involve Protected Speech

Courts have consistently recognized that anti-SLAPP statutes protect internal investigations into alleged misconduct conducted or directed by a governmental body.[2] See Okorie v. L.A. Unified Sch. Dist., 14 Cal. App. 5th 574, 594 (2d Dist. 2017) (noting that "[i]t is well

---

[2] "Oregon courts look to California case law in construing Oregon's anti-SLAPP statute because Oregon's law was modeled on California statutes, and it was intended that California case law would inform Oregon courts regarding the application of [Or. Rev. Stat. § 31.150.]" Zweizig v. Nw. Direct Teleservs., Inc., 2016 WL 5402935, at *2 (D. Or. Sept. 24, 2016) (citation and quotation marks omitted).

Page 10 – FINDINGS & RECOMMENDATION and ORDER

established that internal investigations constitute" protected activity under an anti-SLAPP statute). Here, defendant Haskins' letter sparked LOSD's disciplinary proceeding. There is no dispute that School disciplinary proceedings are authorized by law. Cf. C. R. v. Eugene Sch. Dist. 4J, 308 Or. App. 773, 779–80, 481 P.3d 334, 339 (2021) (school disciplinary proceeding and its investigation fall within the scope of Or. Rev. Stat. § 31.150(2)). In addition, statements reporting alleged wrongdoing are also encompassed by the statute. Cf. Van Per Valk v. AU Energy, LLC, 2014 WL 6632930, at *4 (Cal. Ct. App. Nov. 24, 2014) (holding that anti–SLAPP statute encompasses statements made to police in response to perceived wrongdoing for the purpose of garnering police assistance); Siam v. Kizilbash, 130 Cal.App.4th 1563, 31 Cal. Rptr. 3d 368, 374 (Cal. Ct. App. 2005) ("[C]ommunications that are preparatory to or in anticipation of commencing official proceedings.").

In addition, Haskins' speech was in furtherance of his constitutional right to free speech and was in connection with an issue of public interest. A public controversy must be a real dispute, the outcome of which affects the general public or some segment of it. Planet Aid, Inc. v. Reveal, 44 F.4th 918, 925 (9th Cir. 2022). Here, transgender participation in public and private school sanctioned athletic events is a public controversy and Haskins' statements related to this controversy and was not solely an idiosyncratic attack on plaintiff. Accordingly, Haskins' speech falls under the protection of Oregon's Anti-SLAPP statute.

    2.    Malice

Defendant OSAA asserts plaintiff must plausibly plead facts demonstrating Haskins' statements were made with malice. Thus, it must be determined whether the pleadings establish that plaintiff is a limited purpose public figure. Those who have thrust themselves into the public eye, must accept certain necessary consequences of that conduct, including the risk of closer public

Page 11 – FINDINGS & RECOMMENDATION and ORDER

scrutiny than might otherwise be the case. Id. at 924. The Ninth Circuit has established a three-part test to determine whether an individual is a limited public figure:

> whether (i) a public controversy existed when the statements were made, (ii) whether the alleged defamation is related to the plaintiff's participation in the controversy, and (iii) whether the plaintiff voluntarily injected itself into the controversy for the purpose of influencing the controversy's ultimate resolution.

Makaeff v. Trump Univ., LLC, 715 F.3d 254, 266 (9th Cir. 2013).

Plaintiff himself alleges the public laws must be changed in light of the controversy regarding transgender participation in sports and offered his assistance by proposing "an open division" in a letter to a State Senator. ECF 7-7. Haskin's letter related to purported efforts by plaintiff to inject himself in this controversy at public track meets, written statements to the OSAA, attempts to establish a boycott, etc. ECF 7-3. In addition, the allegations plausibly allege plaintiff voluntarily injected himself in the controversy to influence its resolution. Accordingly, in order to plead a prima facie case of defamation against Haskins, plaintiff must plausibly plead facts demonstrating Haskins' statement were made with malice.

In his complaint, plaintiff merely concludes Haskins made false allegations against him with actual malice. First Amended Complaint (ECF 7) at ¶ 17. Under the burden shifting analysis of the anti-SLAPP statute, plaintiff must establish there is a probability that [he] will prevail on the claim by presenting substantial evidence to support the element of actual malice. Plaintiff relies on a letter from OSAA executive director Peter Weber to a Fox News personality stating:

> The email that John Parks sent our office didn't violate either the Gender Identity Participation policy or Rule 3 in our Handbook. The OSAA shared his email with the school's athletic department shortly after it had been received in mid-May, as we typically loop in a school's athletic director when a coach reaches out to our office directly. We became aware of an investigation when contacted by Lake Oswego HS in late May/early June.

ECF 7-2.

Page 12 – FINDINGS & RECOMMENDATION and ORDER

While Haskins' letter did not specifically reference the policy noted above, he did state plaintiff should follow OSAA policy while adhering to his responsibilities as a licensed educator and role model for student athletes teaching sportsmanship. ECF 16-4 at p. 5.

The Ninth Circuit has previously held that a plaintiff need only allege "the required state of mind generally" because "the issue of actual malice ... cannot be properly disposed of by a motion to dismiss, where the plaintiff has had no opportunity to present evidence in support of his allegations." Flowers v. Carville, 310 F.3d 1118, 1131 (9th Cir. 2002) (citation and quotations marks omitted). Flowers, however, is contradicted by the Supreme Court's subsequent decision in Iqbal, which held that malice is subject to the plausibility pleading standard. Ashcroft v. Iqbal, 556 U.S. 662, 686-87 (2009) (holding that "malice, intent, knowledge, and other conditions of a person's mind" must be pled under the "strictures of Rule 8" and noting that "Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss"). Although the Ninth Circuit has not yet addressed whether Flowers remains good law, "the circuits that have considered the question have uniformly held that a claim may be dismissed for failing plausibly to allege actual malice without permitting discovery." Resolute Forest Prod., Inc. v. Greenpeace Int'l, 302 F. Supp. 3d 1005, 1027-28 (N.D. Cal. 2017); see also Michel v. NYP Holdings, Inc., 816 F.3d 686, 702 (11th Cir. 2016) (noting that "every circuit that has considered the matter has ... held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice"). Nonetheless, with the additional evidence plaintiff has put forth, as required to meet his burden in responding to the special motion to strike, plaintiff has presented sufficient factual matter to support a prima facie case. To support the element of malice based on a reckless disregard of the truth in the face of an anti-SLAPP

Page 13 – FINDINGS & RECOMMENDATION and ORDER

motion, the law requires only minimal merit. Manzari v. Associated Newspapers Ltd., 830 F.3d 881, 892 (9th Cir. 2016).[3] Considering the complaint and its attachments, the motion to strike the defamation claim for failure to present a prima facie case of the elements is denied.

### 3.    OSAA Liability

Defendant OSAA asserts it is not a public body for purposes of liability under OR, Rev. Stat. § 30.265. OSAA also argues that regardless Haskins was not speaking on behalf of OSAA.

#### a.    Public Body

Plaintiff alleges defendant OSAA is liable for Haskins' action under OR, Rev. Stat. § 30.265 which imposes liability on every public body for the torts of its officers, employees, and agents acting with the scope of their employment duties.

In 2011, Oregon repealed Or. Rev. Stat. § 339.430 (Or. Laws Ch. 313, § 25 (effective January 1, 2012)) which required voluntary interscholastic activities organizations to apply to the State Board of Education for approval and permitted appeal of their decisions to the Board. See, e.g., Bingham v. Oregon Sch. Activities Ass'n, 37 F. Supp. 2d 1189, 1193 (D. Or. 1999), vacated in part sub nom. Bingham v. Ediger, 20 F. App'x 720 (9th Cir. 2001). The OSAA is no longer subject to State Board of education oversight.  OSAA argues that because it is comprised of both public and private school members, it cannot be considered a public body under Or. Rev. Stat. § 30.265.  However, plaintiff goes beyond the pleadings and relies on the declaration of its counsel

---

[3] To establish actual malice, plaintiff must allege that Haskins published the letter either "with knowledge that the statements [were] false or with reckless disregard as to whether or not [they] [were] true." Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 667 (1989) (quoting Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 56 (1988)). "[A]lthough the concept of 'reckless disregard' cannot be fully encompassed in one infallible definition," the Supreme Court has "made clear that the defendant must have made the false publication with a high degree of awareness" of its probable falsity or have "entertained serious doubts as to the truth" of the publication. Harte-Hanks, 491 U.S. at 667 (citations omitted). Here, Haskins as a member of the OSAA executive board, is arguably in the same position as the executive director to know whether plaintiff's email violated OSAA policy and the letter, for purpose of the motion to strike, is sufficient evidence to support this element.

Page 14 – FINDINGS & RECOMMENDATION and ORDER

to support its assertion that it is not a public body. See ECF 31 at p. 2 ("For at least the last 30 years, the OSAA has been a private association of both public and private high schools"). This presents an issue of fact that is not appropriately determined on a motion to dismiss and requires discovery in order to be determined, if appropriate, on a motion pursuant to Fed. R. Civ. P. 56.

        b.     OSAA Liability for Haskins' Conduct

Defendant OSAA asserts it cannot be liable for the purportedly defamatory statements made by Haskins because he was not acting on behalf of the OSAA.

Under the doctrine of respondeat superior, an employer is liable for an employee's torts when the employee acts within the scope of employment. Stanfield v. Laccoarce, 284 Or. 651, 654, 588 P.2d 1271 (1978). Three requirements must be met to conclude that an employee was acting within the scope of employment: (1) whether the act occurred substantially within the time and space limits authorized by the employment; (2) whether the employee was motivated, at least partially, by a purpose to serve the employer; and (3) whether the act is of a kind which the employee was hired to perform. Id. at 284 Or. at 655, 588 P.2d at 1274.

As noted above, plaintiff alleges, and defendant LOSD submissions demonstrate, Haskins wrote his May 24, 2024, letter "as a member of the OSAA executive Board." ECF 16-4 at p. 1. This evidence is enough to show the probability that plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case that Haskins acted within the course and scope of his employment with OSAA. Defendant OSAA's argument presents questions of fact to which discovery is necessary to determine the sufficiency of the evidence on a Rule 56 motion, if appropriate. Accordingly, defendant OSAA's motion to strike is denied at this stage of the proceedings.

B.     LOSD Motion to Strike

Page 15 – FINDINGS & RECOMMENDATION and ORDER

Defendant LOSD moves to strike exhibits 1-9 attached to the First Amended Complaint pursuant to Fed. R. Civ. P. 12(f). However, defendant does not assert the materials are redundant, immaterial, impertinent, or scandalous as prohibited by Rule 12(f) but, rather, asserts they do not qualify as "written instruments" under Fed. R. Civ. P. 10(c).

Defendant argues the documents have not been authenticated. However, at this stage of the proceedings the attachments form part of the basis of facts in support of plaintiff's claims. While testing the evidentiary sufficiency of the documents may be an issue when the Court turns to weighing the evidence for purpose of a Rule 56 motion or for purposes of presenting the documents to a jury, for now, the Court takes the allegation in the complaint as true and views the attachments as an extension of the allegations and not admissible evidence. It may be appropriate under certain circumstances to strike the documents as unauthenticated or hearsay at the pleading stage. In this case, however, one of the defendants has already challenged the sufficiency of the allegations to support a prime facie case and it became necessary for the Court to review the documents for purposes of testing the merits of plaintiff's evidence before discovery could take place and authenticating evidence and testimony could be obtained. The Court makes no finding as to whether the documents qualify as legally operable written instruments or are more appropriately categorized as witness affidavits containing evidentiary material. Accordingly, the motion to strike is denied without prejudice at this time.

## CONCLUSION

Defendant OSAA's special motion to strike plaintiff's claim against it (ECF 30) should be denied. In addition, defendant LOSD's motion to strike (ECF 22) is denied.

Page 16 – FINDINGS & RECOMMENDATION and ORDER

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 18th day of February, 2025.

          /s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge