Karen O'Kasey, OSB No. 870696
E-mail: kok@hartwagner.com
Taylor B. Lewis, OSB No. 164263
E-mail: tbl@hartwagner.com
Zachariah H. Allen, OSB No. 122729
E-mail: zha@hartwagner.com
HART WAGNER LLP
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301
    *Of Attorneys for Defendants*
    *Lake Oswego School District and*
    *Lake Oswego School Board*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JOHN PARKS**, | Case No. 3:24-cv-1198-JR |
| Plaintiff, | **LAKE OSWEGO SCHOOL DISTRICT'S AND LAKE OSWEGO SCHOOL BOARD'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **LAKE OSWEGO SCHOOL DISTRICT; LAKE OSWEGO SCHOOL BOARD; OREGON SCHOOL ACTIVITIES ASSOCIATION; PORTLAND PUBLIC SCHOOLS; and MARSHALL HASKINS,** individually and *in his representative capacity for OREGON SCHOOL ACTIVITIES ASSOCIATION and PORTLAND PUBLIC SCHOOLS*, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

## LR 7-1 CERTIFICATION

Pursuant to Local Rule 7-1, the undersigned certifies conferring with plaintiff's counsel

about this motion. The parties were unable to reach a resolution and the Court's ruling is

Page 1 -  **LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S MOTION FOR SUMMARY JUDGMENT**

necessary.

## MOTION

Plaintiff is a former Lake Oswego High School track coach.  Plaintiff brings a First Amendment retaliation claim, claiming that his temporary track coaching contract was not renewed after the 2024 season because he sent an email to co-defendant OSAA about its transgender athlete policies.  Plaintiff also alleges procedural due process and liberty interest violations in connection with the non-renewal.

The District and the Board ("District") move for summary judgment under Fed. R. Civ. P. 56.  As a matter of law, even if plaintiff engaged in constitutionally protected speech and suffered an adverse employment action, there is no genuine issue of material fact that plaintiff's contract would not have been renewed anyway.

The due process claims fail because: (1) plaintiff did not have a property interest in his temporary coaching job, and (2) no liberty interest was implicated, as the District made no public statements about the non-renewal.

This motion is supported by the memorandum of law below, the deposition testimony of plaintiff, Christopher Coleman, and Kristen Colyer, the Declaration of Christopher Coleman, the Declaration of David Heslam, the Declaration of Wayne McCall, the Declaration of Kristen Colyer, the Declaration of Jennifer Schiele, the Declaration of Donna Watson, and the Declaration of Karen O'Kasey with attached exhibits, and the pleadings on file.

## FACTS

Plaintiff was hired to be the head coach of the track and field team at Lake Oswego High School (LOHS) for the 2024 Spring season.  (Parks Depo., p. 23:1-24, Ex. 103).  Plaintiff previously signed similar track coach contracts to coach for the 2023 Spring season and the

Page 2 -   **LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S MOTION FOR SUMMARY JUDGMENT**

**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

cross-country team in the 2024 Fall season. (Parks Depo., p. 21:15-25, Ex. 102).

Plaintiff signed the Spring 2024 contract which was for a limited term, February 26, 2024, through May 11, 2024, initialing a provision stating: "I understand that the term for this assignment is limited to the dates listed above." (Parks Depo., p. 23:1-24, Ex. 103). Plaintiff also had a temporary contract for a Special Education Assistant for the 2023-2024 school year. (Parks Depo., p. 24:1-20, Ex. 104, 105).

## I. Plaintiff's OSAA Letter and the 2024 State Championship.

While coaching during the Spring 2024 track season, plaintiff saw a transgender athlete from McDaniel High School (male to female) competing at a track meet. (Parks Depo., p. 45:6-9). He became "worried" that the McDaniel athlete would beat one of his athletes in the women's 400-meter event at the upcoming 2024 State Track and Field Championship. (Parks Depo., p. 45:21-23).

According to plaintiff, around May 10, 2024, he told LOHS Athletic Director Chris Coleman that he was going to write to the Oregon School Activities Association ("OSAA") and express his views on transgender athletes. (Parks Depo., p. 39:2-15, p. 50:12–18). Plaintiff told Coleman what the main points of the letter were and asked for Coleman's permission to write it. (Parks Depo., p. 39:2-6.) Coleman did not object to or tell him not to write the letter. (Parks Depo. p 50:12-18). Coleman did, however, tell plaintiff that the focus at the upcoming State Championships needed to be on Lake Oswego's athletes, and, for that reason, told plaintiff not to talk about transgender athletic issues with anyone at the meet. (Coleman Depo., p. 26:8-25, p. 27:1-17).

On May 15, 2024, the day before the championships started, plaintiff sent an email to the OSAA expressing opposition to the participation of a "high level transgender athlete" at the

Page 3 -    **LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S MOTION FOR SUMMARY JUDGMENT**

**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

State Championships.   (Pl.'s First Amended Compl. 'FAC" at Ex. 1).

The OSAA forwarded the email to the school on May 15, 2024.  (Coleman Depo., p. 28:19-25, p. 29:1-9).  Coleman and plaintiff met later that day.  Coleman did not reprimand plaintiff or tell him he should not have sent it.  (Parks Depo., p. 49:14-50:24).

Coleman reminded plaintiff not to discuss the issue of transgender competition in athletics while coaching at the State Championships.  (Coleman Depo., p. 29:14-25, p. 30:1; Parks Depo., p. 50:5-10).  Coleman also reminded plaintiff that as a school representative the focus needed to be on Lake Oswego's athletes (Coleman Depo., p. 29:14-25, p. 30:1).

Plaintiff also spoke with Principal Colyer later that same day, telling her, "Hey, I wanted to let you know I wrote a letter that Chris had signed off on."  (Parks Depo., p. 112:11-113:25). According to plaintiff, Colyer responded by telling him that Coleman already told her about the email and saying, "That's fine." (Parks Depo., p. 112:19, 113:14-20).  Colyer did not reprimand him or object to the fact that he sent it.  (Parks Depo., p. 113:14 -25).  She "reiterated" what Coleman stated, telling plaintiff (in plaintiff's words): "'At the state meet, don't – you know, "don't say anything to the media and don't, you know, make us look bad."  (Parks Depo., p. 112:20-22).  There is no dispute that after sending the email, plaintiff coached the track team at the championships.

Plaintiff was not investigated, disciplined, or reprimanded after sending the email. Instead, he was allowed to coach the LOHS track team at the State Championship with instructions to keep the focus on LOHS athletes and not discuss transgender issues while coaching at the meet.

On the morning of Saturday, May 18, 2024, the third and final day of competition, an OSAA representative called Coleman to report that she was hearing "some rumblings" that

Page 4 -   **LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S MOTION FOR SUMMARY JUDGMENT**

**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

plaintiff was having conversations with people at the State Championships.  (Coleman Depo., p. 36:18-25, p. 37:1-3).  She also relayed that plaintiff was contacting athletes and encouraging them not to stand on the podium with the transgender athlete.  (Coleman Depo., p. 39:4-21).

Coleman called plaintiff and instructed him (in plaintiff's words) "not be talking to other coaches and athletes, you know, for the rest of the meet about this.'"  (Parks Depo., p. 54:9-20).  Plaintiff also recounted Coleman telling him "'we just want to keep things positive and have good reflection on [Lake Oswego].'"  (Parks Depo., p. 54:21-25).

## II.      The Haskins Complaint.

On May 24, 2024, after the state championships, the District received a complaint from co-defendant Marshall Haskins, a member of the OSAA Executive Board.  (Colyer Dec., Dkt 16-4).  Mr. Haskins raised numerous issues about plaintiff's behavior at the championships, including "speaking negatively to our transgender student athlete on the podium at the medal presentation for the 200 M race" and "communicating with student athletes at the state tournament, recommending they not participate in medal presentation if our student won either the 200 M or 400 M race."

He also raised concerns about plaintiff contacting coaches from other schools asking them to support denying the McDaniel athlete the chance to participate at the school tournament, to boycott the medal presentation, and harassing student athletes and their families both before and during the state tournament about his views.  *Id.*

## III.     Colyer's Investigation.

District policy required an investigation of "any" report of discrimination or harassment.  At step one of that process, the policy required the principal, Colyer, to investigate the complaint and "determine the action to be taken, if any."  (Colyer Depo., p. 15:19-25, p. 16:1-5, 10-11, 15-

Page 5 -   **LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S MOTION FOR SUMMARY JUDGMENT**

22, p. 17:10-17, Dkt. 16-6). Colyer interviewed plaintiff and several other coaches, athletic directors and OSAA personnel about Haskins' allegations. (Colyer Depo. p. 27:24-25, p. 28:1-2).

One female athlete from another school submitted a statement indicating that plaintiff approached her after she ran a preliminary heat at the State Championships. (Colyer Depo. p. 55:9-15, Ex. 9, p. 90:20-23). She reported plaintiff telling her he talked to parents of other 400-meter women's competitors about not standing on the podium after the next day's 400-meter final (an event the McDaniel transgender athlete competed in). (*Id.*) That athlete also reported plaintiff telling her she could just stand behind the podium, leaving the McDaniel athlete standing up there alone, and that she could go up to get her medal afterwards. (*Id.*)

David Heslam, the father of a female 400-meter competitor from another school, who was seated in the bleachers near plaintiff during the 400-meter finals heard plaintiff yelling during the 400-meter race. (Heslam Dec., ¶¶ 5-7). Heslam recorded the race. (Heslam Dec., ¶ 6). During the recording, plaintiff can be heard excitedly screaming at one of his athletes during the race, "How bad do you fucking want it!" (*Id.*) Shortly after the race was over, and he had stopped filming, Heslam heard plaintiff yell out, "She beat a fucking dude!" (*Id.* at ¶ 7).

Wayne McCall, another Lake Oswego track coach that attended the 400-meter women's final, also heard plaintiff yell out "She beat the fucking dude" shortly after the race was over (McCall Dec. ¶ 3).

## IV.    Plaintiff Informed of Findings.

On June 12, 2024, two days before the end of the school year and the end of plaintiff's contract term as a special education assistant, Colyer met with plaintiff, who was represented by his two union representatives. (Parks Depo., p. 96:1-9; 99:2-12.) Colyer presented plaintiff with

Page 6 - **LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S MOTION FOR SUMMARY JUDGMENT**

**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

her written findings. She determined that plaintiff violated District policies, including the discrimination and harassment policy. (Parks Depo., p. 99:1-21; Depo Ex. 115).

According to plaintiff, Colyer also expressed opposition to a letter he wrote to Oregon State Senator Rob Wagner, which plaintiff sent on May 31, 2024, *after* the investigation into Haskins' complaint had started. (ECF 7, ¶ 59; ECF 7-7).

Colyer left the room to allow plaintiff to discuss the decision with his union representatives. (Parks Depo., p. 99:13-21). Colyer then came back and asked plaintiff if he wished to give a "rebuttal or response." (Parks Depo., p. 100:6-20). Plaintiff offered his rebuttal. (Parks Depo., p. 99:17-18).

Colyer told plaintiff that due to the policy violations, his cross-country and track coach positions for Lake Oswego High School for the 2024–25 school year would not be automatically renewed and would be opened for others to apply. (Parks Depo., p. 102:3-5; Depo Ex. 116).

Colyer told plaintiff that the findings would not affect his ability to apply for another one-year special education assistant contract, stating he had done a fantastic job in that role, and would be given every opportunity to apply. (Parks Depo., p. 96:23-25, p. 97:1-6, 13-17).

Plaintiff sent an appeal letter on June 26, 2024. (Schiele Dec., Dkt. 17-1). In response, Schiele told plaintiff that because plaintiff had temporary contacts only that were already expired, there was no termination to appeal. She also told plaintiff he was welcome to apply for any 2024-2025 position.

The District posted job openings for both the Fall 2024 cross-country and Spring 2025 track head-coach positions on June 17, 2024, and these positions remained open. (Watson Dec., Dkt. 18). Plaintiff never applied for either coaching position. (Watson Dec., Dkt. 18).

Page 7 -    **LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S MOTION FOR SUMMARY JUDGMENT**

**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

### V.    Plaintiff's Claims.

Plaintiff asserts two 42 U.S.C. § 1983 claims against the District.  First, he asserts that his May 15, 2024, email to the OSAA was protected First Amendment speech, and that he was retaliated against for sending the email.  (FAC at ¶ 82–96.)   Second, plaintiff asserts the District violated a Fourteenth Amendment right to procedural due process and violated his liberty interest rights.  (FAC at ¶ 113.)

### LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011); Fed. R. Civ. P. 56(a).  The moving party must show the absence of a material fact dispute.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).

In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show that a dispute of material fact exists to be tried.  *Id.*  The non-moving party must show more than the mere existence of a scintilla of evidence or some "metaphysical doubt" as to the material facts at issue.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  The nonmoving party cannot defeat summary judgment with allegations in the complaint or with unsupported conjecture or conclusory statements.  *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

### LEGAL ARGUMENT

### I.    Plaintiff's First Amendment Claim Fails Because the District Would Have Taken the Same Action in The Absence of Any Protected Speech.

The controlling standard for plaintiff's First Amendment retaliation claim is set forth in *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977).  It is the default rule

Page 8 -    **LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S MOTION FOR SUMMARY JUDGMENT**

**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

for First Amendment retaliation claims. *Bello-Reyes v. Gaynor*, 985 F.3d 696, 702 (9th Cir. 2021). Plaintiff must show: (1) he engaged in constitutionally protected conduct; and (2) the protected conduct was a motivating factor for the adverse decision at issue.

If plaintiff establishes these two elements, the employer can avoid liability if it shows that same adverse action would have been taken in any event. *Mount Healthy, supra,* at 287.

### A. Plaintiff's Prima Facie Case.

The presumably actionable expressive conduct was plaintiff's May 15, 2024, OSAA email, and his May 31, 2024, letter to Senator Wagner. None of plaintiff's conduct at the track championships of which Haskins complained was protected speech. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1056 (9th Cir. 2013) (Constitution does not insulate statements made by public employees pursuant to their official duties from employer discipline).

Plaintiff asserts three specific adverse actions: (1) the investigation; (2) his "termination"; and (3) the "non-renewal of his contract." (FAC at ¶ 89). As a factual matter, plaintiff was not terminated. His temporary, limited term contract, which was explained, was simply not renewed automatically.

The only possible argument plaintiff has regarding "motivation" of the non-renewal is timing alone. *Keyser v. Sacramento Unified Sch. Dist.*, 265 F.3d 741, 751 (9th Cir. 2001). Plaintiff admitted that neither Coleman nor Colyer, once they knew about plaintiff's intent to send the OSAA email, and then saw the email itself, made any negative statements about it, and plaintiff coached at the state championships *after* he sent the email.

### B. Assuming a Prima Facie Case, the District Would Have Taken the Same Action Anyway.

There is no unconstitutional First Amendment retaliation if the same decision would have been reached absent the protected conduct, even if protected conduct played a part in motivating

Page 9 -   **LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S MOTION FOR SUMMARY JUDGMENT**

**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

the government's action. *Riley's Am. Heritage Farms*, 32 F.4th 707, 721 (9th Cir. 2022); *Mount Healthy, supra* at 287.  In other words, an employer avoids liability by showing that the employee's protected speech was not a but-for cause of the adverse employment action.  *Mount Healthy, supra* at 287.

Although whether the employee would have been subject to an adverse action in any event is generally a jury question, *Wagle v. Murray*, 560 F.2d 401, 402 (9th Cir. 1977), in the recent 9th Circuit decision of *Kissner v. Loma Prieta Joint Union Elem. Sch. Dist.*, 2025 U.S. App. LEXIS 1435 (9th Cir. 2025), the court affirmed summary judgment on this precise issue because the reasons offered by the employer "overwhelmingly" supported the plaintiff's discharge.  The same situation is presented here, as plaintiff has no evidence, aside from timing, to support discriminatory motive on the part of the District.

There would have been an investigation *regardless* of the OSAA email because both Oregon law and District policy *mandated* an investigation of Haskins' complaint.  ORS 339.356(2)(g) (requiring Oregon school districts to adopt a "uniform" procedure for "prompt investigation of a report of an act of harassment, intimidation or bullying[.]"); (Colyer Depo., p. 15:19-25, p. 16:1-5, 10-11, 15-22, p. 17:10-17).

Haskins alleged that plaintiff engaged in a "premediated, calculated, and discriminatory campaign to create a hostile environment."  It enumerated specific concerns about plaintiff, including that he riled up spectators at a prominent high-school sports event to "boo" a transgender athlete from a competing school while coaching for Lake Oswego among other things.  (Colyer Dec., Dkt. 16-4).  *Thomas v. Cty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014) (per curiam) (defendants established beyond dispute that they would have launched an investigation even absent claimed protected union activity, where the accusatory letter contained

Page 10 - **LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S MOTION FOR SUMMARY JUDGMENT**

**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

"serious" and "grave" accusations," even where claims were later proved "unfounded"); *Baker v. UPS*, No. 23-4364, 2024 U.S. App. LEXIS 30874, at *4 (9th Cir. Dec. 6, 2024) (employer met its "same-action" burden at summary judgment where it was undisputed that the adverse actions were taken pursuant to policies that applied to plaintiff's circumstances). The District was required to investigate Haskins' complaint, irrespective of any protected speech.

With respect to the non-renewal of the coaching contract, even if "opening up" the track coaching position (or anything else plaintiff alleges) could be deemed an actionable adverse action, the same decision would have been made based solely on the reports that plaintiff referred to a high-school transgender competitor as a "fucking dude" loudly enough to be heard from 50 meters away while representing LOHS at the State Championships as well as plaintiff's poor overall performance as a coach. (Schiele Dec., Dkt. 17, Coleman Dec., ¶ 3, Ex. 1). The parent of a 400m competitor from another school who filmed the event heard plaintiff yell "she beat the fucking dude." (Heslam Dec., ¶ 7). Another coach heard the same thing (McCall Dec., ¶ 3).

Plaintiff denied making the comment, but any factual dispute over whether plaintiff yelled the remark is irrelevant. The controlling fact is that Colyer had no reason to doubt these reports. As the Ninth Circuit explained in *Kissner, supra,* in assessing the "same action" analysis under *Mount Healthy*, it is not important whether the reasons underlying the employer's actions were false in the sense of whether the plaintiff "actually did what he was accused of doing." Instead, what matters is whether the employer "honestly believed" the reasons for its actions. The court held that it "only requires that an employer honestly believe its reasons for its actions," citing *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1063 (9th Cir. 2002).

The allegation also came against the backdrop of other witness reports confirming

Page 11 - **LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S MOTION FOR SUMMARY JUDGMENT**

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

plaintiff's unprofessional conduct at the meet. *Howard v. City of Coos Bay*, 871 F.3d 1032, 1047 (9th Cir. 2017) (at summary judgment, considering "broader… context" of a defendant's hiring decision in considering "same action" defense to First Amendment retaliation claim).

Plaintiff was specifically instructed by Coleman and Colyer not to address the issue of transgender athletic participation at the state meet. Multiple witnesses told Colyer that plaintiff defied those instructions and repeatedly raised the issue at the State Championships with athletes, coaches, and parents from other schools. (Colyer Depo., p. 90:6-14.) Kelly Foster, an OSAA official, reported that plaintiff marched over and said, "this can't happen again, this has to change," that he knew "some republicans" "and there's gonna be 8 men up here." *Id.*

Plaintiff concedes this, testifying that he told two OSAA officials at the State Championships, "this can't happen again," after the transgender athlete made the podium, and stating that he was referring "to hav[ing] girls compete against transgender athletes." (Parks Depo., p. 87:17-21; 88:3-7).

Additionally, A.D. Coleman would have opened the head track coach position to outside applicants in any event based on his overall review of plaintiff's performance as coach during 2024. (Coleman Dec., ¶ 3, Ex. 1).

Coleman reviews the performance of all coaches, based on input from athletes and other coaches, and his own observations of the coach. (Coleman Depo., p. 52:21-54:7). Coleman completed plaintiffs' evaluation by June 10, 2024. (Coleman Depo., p. 58:16-23). Coleman documented numerous areas where plaintiff's performance was deemed "unsatisfactory." (Coleman Dec., Ex 1).

Coleman noted an increase in "overuse/overtraining injuries"; that sportsmanship was not being emphasized enough as a program; "concerning" communications with athletes from other

Page 12 - **LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S MOTION FOR SUMMARY JUDGMENT**

**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

schools and lack of familiarity with OSAA rules re "transfers and undue influence"; budget planning concerns; that assistant coaches had quit mid-season and that two more assistants were not intending to return the following year; that plaintiff had embraced a "win-at-all-costs mentality," focusing too much emphasis on the most-skilled athletes, that left some athletes, parents, and coaches not feeling included and appreciated. (Coleman Dec., Ex. 1).

As the court explained in *Mount Healthy, supra*, a borderline employment candidate ought not to be able, by engaging in protected conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire because of that record. 429 U.S. at 286. Based solely on the concerns documented in his evaluation, Coleman would not have recommended rehiring plaintiff as coach in any event. (Coleman Dec., ¶ 3, Ex. 1). For these reasons, the District is entitled to summary judgment on the retaliation claim.

## II.    Defendants Are Entitled to Summary Judgment on Plaintiff's Due Process Claim.

To prevail on a procedural due process claim under Section 1983, a plaintiff must establish (1) a liberty or property interest protected by the Constitution; (2) deprivation of the interest by the government; and (3) lack of process before the deprivation. *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000).

The claim is analyzed in two steps: first, the Court examines whether there was a constitutionally protected liberty or property interest. *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002). If the Court finds a protected interest, it determines if there was a denial of adequate procedural protections. *Id.*

### A.    Plaintiff Did Not Have a Property Interest in His Employment.

A property interest arises only when there is a legitimate claim of entitlement, not an abstract need or desire for the particular benefit. *Vanelli v. Reynolds Sch. Dist. No. 7*, 667 F.2d

**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

773, 777 (9th Cir. 1982). Property interests are not created by the Constitution. They are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law. *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 538 (1985).

Under Oregon law, public employee rights arise solely from statutes or regulations adopted pursuant to a statutory delegation of authority. It is these "tenure" rights that create property interests that cannot be revoked without due process. *Papadopoulos v. Oregon State Bd. of Higher Educ.*, 14 Or. App. 130 (1973), *cert. denied*, 417 U.S. 919 (1974). Oregon laws provide no contract renewal protection for teachers with limited term contracts. *Setty v. State Bd. of Higher Educ.*, 1988 U.S. App. LEXIS 21653, *3 (9th Cir. 1988). Property interests for public employees do not arise solely from an implied or express contract of employment absent some underlying statute or regulation. *Brady v. Gebbie*, 859 F.2d 1543, 1549 (9th Cir. 1988).

A mere expectation that employment will continue does not create a property interest and if, under state law, employment is at-will, then the employee has no property interest in the job. *Portman v. Cnty of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). Under Oregon law, there is a legal presumption that absent a contractual, statutory or constitutional requirement, an employer may discharge an employee at any time and for any reason. *Patton v. J.C. Penney Co.*, 301 Or. 117 (1986); *Brett v. City of Eugene*, 130 Or. App. 53 (1994).

### B.    Plaintiff Had No Property Interest in His Coaching Position.

Plaintiff signed a fixed-term contract as the track and field coach for February 26, 2024 to May 11, 2024, acknowledging, "I understand that the term for this assignment is limited to the dates listed above." (Parks Depo., p. 23:1-24, Ex. 103).

Plaintiff's coaching contract had already expired by the time Haskins made his complaint on May 29, 2024. No provision of law created an expectation that plaintiff's coaching contract

**LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S MOTION FOR SUMMARY JUDGMENT**

**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

would be renewed.  Plaintiff did not have a legitimate claim of entitlement to be re-hired as a coach.  *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577 (1972) (a unilateral expectation of continued employment does not create a property interest).

Plaintiff's own testimony establishes he had no more than a "unilateral expectation" that his coaching contract would be renewed:

> "Q: Did Mr. Coleman ever tell you during the 2024 school year that he was going to roll your contract over to the 2024–25 school year?
>
> "A: Well, he didn't – he didn't state it.  It was *just the expectation* that you got from the way he performed his duties."  (Parks Depo. p. 111:9-14 (emphasis added.))

Coleman never guaranteed plaintiff that he would be re-hired as track coach when he initially accepted the coaching position in February 2023: "We never had any conversation about any of that."  (Parks Depo., p. 109:6-11).  He also conceded that Coleman did not promise plaintiff that he would be rehired when he accepted the 2024 contract: "He didn't say I was guaranteed, but he made reference to things we had to be doing moving forward."  (Parks Depo., p. 109:12-20).

C.    Plaintiff Had No Property Interest in His Educational Assistant Position.

Plaintiff was hired as a temporary Special Education Assistant II on a ten-month contract for the 2023–24 school year.[1]  His acceptance acknowledged that he was a "Temporary 10 Month Classified Employee," with a contract term of August 30, 2023, to June 13, 2024.  (Parks Depo., p. 26:4–22; Ex. 105.).

---

[1] The complaint repeatedly refers to plaintiff's "teaching" position, but this is not accurate as a matter of state law.  Plaintiff was instead an "Instructional Assistant" as defined by ORS 342.120(7) ("'Instructional assistant' means a classified school employee who does not require a license to teach, who is employed by a school district… and whose assignment consists of and is limited to assisting a licensed teacher in accordance with [applicable rules].").  None of the "teacher" tenure provisions of ORS Chapter 342 applied to plaintiff.

Page 15  **LAKE OSWEGO SCHOOL DISTRICT AND LAKE**
-   **OSWEGO SCHOOL BOARD'S MOTION FOR**
    **SUMMARY JUDGMENT**

**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

The importance of a contract as a source of a property interest lies not in the mere existence of some agreement, but in its terms. *Loehr v. Ventura Cty. Cmty. Coll. Dist.*, 743 F.2d 1310, 1314 (9th Cir. 1984). The Notice of Appointment provided that plaintiff's employment would terminate on a specified date, and the term of his employment therefore secured absolutely no possible claim of entitlement to re-employment. *Seitz v. Clark*, 524 F.2d 876, 881 (9th Cir. 1975).

No provision of state law or District policy created any legitimate claim of plaintiff's entitlement to be offered a new educational assistant contract for the 2024–25 school year. *Crampton v. Harmon*, 20 Or. App. 676, 684 (1975) (*former* ORS 342.663, now ORS 332.544, does not create a reasonable expectation of continued employment for "classified employees" under the Due Process Clause); *Setty v. State Bd. of Higher Educ.*, No. 87-3578, 1988 U.S. App. LEXIS 21653, at *4 (9th Cir. July 5, 1988) (school did not terminate the plaintiff before the contractually agreed-to term; it merely exercised its right not to renew his contract, plaintiff established no property interest in continued employment sufficient to trigger due process protections).

### D.    Plaintiff Did Not Have a Protected Liberty Interest.

A liberty interest is implicated only if the employee can establish that his termination was accompanied by the public disclosure of the reason for the discharge implicating conduct that attacked his reputation for honesty or morality. *Brady, supra* at 1552. Claimed injury to reputation alone is not sufficient to establish a deprivation of a liberty interest protected by the Constitution. *Paul v. Davis*, 424 U.S. 693, 701, 711 (1976).

Under the "stigma plus" test, the plaintiff must prove a public disclosure of a stigmatizing statement by the employer, the accuracy of which is contested, and the denial of some more

Page 16 - LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S MOTION FOR SUMMARY JUDGMENT

HART WAGNER LLP
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

tangible interest such as employment. *Id.* at 701. A claimed loss of future income or future employment opportunities alone "do not rise to the level of a deprivation of a constitutionally protected liberty or interest." *Krainski v. Nevada ex rel. Bd. of Regents*, 616 F.3d 963, 971 (9th Cir. 2010).

To infringe on a constitutionally protected liberty interest, the reputational charges must be related to the discharge and published. *Portman*, *supra* at 907. The District never published any statement about plaintiff's non-renewal and plaintiff does not so claim. The District simply decided not to automatically renew his contracts.

In the absence of any publication by defendants of any kind, as a matter of law, plaintiff has no liberty interest claim. *Cox v. Roskelley*, 359 F.3d 1105, 1111 (9th Cir. 2004) (procedural protections apply only if there is some public disclosure of improper conduct that resulted in discharge, disclosed at time of discharge); *Wegner v. Monroe*, 282 F.3d 1068, 1074 (9th Cir. 2002) (public disclosure of damaging charge required for liberty interest claim).

E.    Plaintiff Received Adequate Process in Any Event.

Even if plaintiff could plausibly identify a property interest, he cannot show that he was denied constitutionally adequate process. "Notice and a meaningful opportunity to be heard are hallmarks of procedural due process." *Ludwig v. Astrue*, 681 F.3d 1047, 1053 (9th Cir. 2012). *Bishop v. Wood*, 426 U.S. 341, 350 (1976) (the Due Process Clause is not a guarantee against incorrect or ill-advised personnel decisions).

An employee need only be provided "some opportunity" to present his side before a termination. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985). The essential requirements are notice and an opportunity to respond. *Id.* at 546.

The District procedures were adequate. On May 29, 2024, Colyer met with plaintiff to

Page 17 - **LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S MOTION FOR SUMMARY JUDGMENT**

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

inform him of the complaint and give him a copy of it.   Plaintiff was accompanied by two union representatives and was given the opportunity to respond to questions about each specific allegation against him.  (Parks Depo., p. 74:17-19; 76:12 -77:9; Colyer Depo., p. 68:9-16; Colyer Depo Ex. 123).

At the conclusion of the investigation on June 12, 2024, Colyer and a vice-principal again met with plaintiff, who was again represented by two union representatives.  Colyer presented plaintiff with the written investigation findings.  (Parks Depo., p. 99:1-100:4).  Colyer and the vice-principal then left the room to allow plaintiff to discuss with his representatives.  (Parks Depo., p. 100:11-13).  Colyer then came back and asked plaintiff if he wished to give a rebuttal. (Parks Depo., p. 99:17-19).  Plaintiff offered his rebuttal.  (*Id.*)  This process meets the requirements as a matter of law.  Even if plaintiff had a property interest in his coaching position, which he did not, he had constitutionally sufficient due process.

## CONCLUSION

For the foregoing reasons, the Lake Oswego School District and School Board's motion for summary judgment should be granted.

DATED this 3rd day of February, 2026.

HART WAGNER LLP

By:   */s/ Karen O'Kasey*
Karen O'Kasey, OSB No. 870696
kok@hartwagner.com
Taylor B. Lewis, OSB No. 164263
tbl@hartwagner.com
Zachariah H. Allen, OSB No. 122729
zha@hartwagner.com
*Of Attorneys for Defendants Lake Oswego School District and Lake Oswego School Board*

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 3rd day of February, 2026, I served the foregoing **LAKE**

**OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S MOTION**

**FOR SUMMARY JUDGMENT** on the following parties at the following addresses:

Luke D. Miller
Miller Bradley Law LLC
1567 Edgewater Street, NW PMB 43
Salem, OR  97304
office@millerbradleylaw.com

Dean McGee
Liberty Justice Center
7500 Rialto Blvd., Suite 1-250
Austin, TX  78735
dmcgee@libertyjusticecenter.org

    *Of Attorneys for Plaintiff*

Jonathan M. Radmacher
McEwen Gisvold LLP
1100 SW 6th Avenue, Suite 1600
Portland, OR  97204
jonathanr@mcewengisvold.com

    *Of Attorneys for Oregon School*
    *Activities Association*

Karen M. Vickers
Beth F. Plass
Vickers Plass LLC
5200 SW Meadows Road, Suite 150
Lake Oswego, OR  97035
kvickers@vickersplass.com
bplass@vickersplass.com

    *Of Attorneys for Portland Public Schools*
    *and Marshall Haskins*

by electronic means through the Court's Case Management/Electronic Case File system.

                                        */s/ Karen O'Kasey*
                                        Karen O'Kasey

Page 1 - **CERTIFICATE OF SERVICE**