Luke Miller
miller@millerbradleylaw.com
(175051, Oregon)
Miller Bradley Law, LLC.
1567 Edgewater St. NW, PMB 43
Salem, OR 97304
(800) 392-5682

Tim Kilcullen
tkilcullen@libertyjusticecenter.org
(90020626, District of Columbia)
LIBERTY JUSTICE CENTER
7500 Rialto Blvd. Suite 1-250
Austin, TX 78735
(224) 433-4852

UNITED STATES DISTRICT

COURT DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JOHN PARKS, *Plaintiff,* v. LAKE OSWEGO SCHOOL DISTRICT; LAKE OSWEGO SCHOOL BOARD; OREGON SCHOOL ACTIVITIES ASSOCIATION; PORTLAND PUBLIC SCHOOLS; and MARSHALL HASKINS, individually and in his representative capacity for Oregon School Activities Association and Portland Public Schools *Defendants.* | Case No. 3:24-cv-1198-JR **PLAINTIFF'S RESPONSE TO DEFENDANTS LAKE OSWEGO SCHOOL DISTRICT AND LAKE OSWEGO SCHOOL BOARD'S MOTION FOR SUMMARY JUDGMENT (ECF No. 73)** **Request for Oral Argument** |

## LR 7-1 CERTIFICATION

Pursuant to LR 7-1, the undersigned certifies that counsel for Plaintiff John Parks conferred via video conference with counsel for Defendants Lake Oswego School District and Lake Oswego School Board regarding this dispute and the parties are unable to resolve this matter.

## RESPONSE

This Court should deny the motion for summary judgment filed by Defendants Lake Oswego School District (LOSD) and Lake Oswego School Board (LOSB) (collectively, "Lake Oswego") for three reasons. First, Lake Oswego's own documents from 2024 provide evidence supporting Coach Parks's claim that he was fired for his First Amendment-protected speech. Second, far from demonstrating the absence of material facts, Lake Oswego's motion relies on affidavits that create new factual disputes by contradicting both each other and prior deposition testimony. Finally, Lake Oswego cannot hide behind Coach Parks's status as a contract employee: by publishing a "findings" document that maligned his reputation and effectively blacklisted him from his profession, Lake Oswego implicated a protected liberty interest that requires a trial on the merits.

## STATEMENT OF FACTS

Plaintiff Coach John Parks is an accomplished educator and track and field/cross-country coach. In August 2023, Coach Parks was hired to be the head track and field coach at LOSD, where he was already an instructional assistant. Parks Dep. 24–26. Under his leadership, Lake Oswego athletes reached

unprecedented success, winning consecutive girls' 6A state team titles, setting 23 all-time Oregon track & field records, and putting four athletes on the U.S. Team for the World Track & Field Championship. Parks Decl. ¶ 2..

**Coach Parks's Political Speech**

In May 2024, Coach Parks informed LOSD Athletic Director Coleman of his intent to advocate to the Oregon School Activities Association (OSAA) for changes to its transgender participation policies, which Parks believed were unfair to female athletes. Parks Dep. 50:12–24. Coleman raised no objection to Coach Parks's planned advocacy. *Id.*

On May 15, 2024, Coach Parks wrote to the OSAA Director Peter Weber, proposing an "open category" for transgender athletes participating in high school track and field to ensure competitive equity. *See* Dkt. 7-1, p. 3. Parks expressed concern that the OSAA's current policy invited excessive media scrutiny and created unfair competitive conditions. *Id.* at 2–3. He supported his proposal by citing the standards of other governing bodies, including the International Olympic Committee and USA Track & Field. *Id.*

**The 2024 Oregon High School Track and Field Championships**

On May 16–18, 2024, Coach Parks and Assistant Coach Wayne McCall attended the OSAA Track and Field State Championships at Hayward Field in Eugene, Oregon, where LOSD had numerous athletes participating. Although Coleman was

present on May 17, he did not speak with Coach Parks. Coleman Dep. 32:11–13, 33:7.

On the morning of May 18, Coleman contacted Coach Parks via phone and text, to "discuss coach and student expectations regarding transgender student participation," directing Coach Parks not to discuss the matter further. Parks Dep. 52:19–22; Coleman Dep. 36:1–15. Coleman told Coach Parks that the Lake Oswego students should "remain classy and respectful" and not respond impulsively to transgender student participation at the state track meet. Coleman Dep. 39:4–16. These instructions were based solely on vague "rumblings" by OSAA Assistant Executive Director Kelly Foster that Coach Parks "was having conversations with people about the transgender athlete participating." *Id.* at 37. Coleman admitted he never sought to clarify these "rumblings" or identify who Parks was allegedly speaking with, nor did he attend the meet that day to observe Parks's conduct. *Id.* at 33–34, 37.

On May 18, 2024, the Girls' 400m finals featured both J.D., a Lake Oswego athlete, and A.G., a transgender student from McDaniel High School. *See* Parks Dep. 67–68. Coach Parks watched the 400-meter final from the stands along the 275-meter mark. Parks Decl. ¶ 9. J.D. won the 400m event while setting a new state record time of 52.83 seconds, while A.G. placed second. During the course of celebrating J.D's victory and new state record from the stands, Coach Parks yelled "She fucking did it! *Fifty-two!* She beat 'em!" Parks Decl. ¶ 9. Assistant Coach Wayne McCall celebrated by exclaiming: "She beat the fucking dude!" *Id.* at ¶ 10.

Pl's Resp. in Opp. to Defs' LOSD and LOSB's Mot. for Summ. J. – Page 3

As the winning coach, Coach Parks was responsible for presenting medals to all eight participants in the Girls 6A 400-meter final. Parks Dep. 184:18; Haskins Dep. 29:1–8. Coach Parks previously presented the medals approximately 15 times throughout his career. Parks Dep. 186:13–15. The manner of awarding the medals—placing them around the athletes' neck or handing it to the athlete—varies and is often driven by athlete preference. *Id.* Because the top three finishers stand on an elevated podium, athletes typically must lean down for the presenter to place the medal over their heads. *Id.* at 187. Coach Parks could not reach the athletes on the podium. While J.D. "fully squatt[ed] down" to receive her medal, A.G. remained upright, making it impossible for Parks to reach A.G.'s neck. *Id.* at 187–88, 191–92. Consequently, Coach Parks handed the medal to A.G.—a common variation in the ceremony driven by athlete positioning. *Id.*

That same day, A.G. participated in, and won, the finals of the Girls 6A 200m. Parks Dep. 77:10–16. For that race, Coach Parks was in the warmup area away from the track for the duration of the race and medal ceremony. *Id.* Coach Parks did not present the medals for Girls 6A 200m. *Id.* Throughout the 2024 OSAA Track and Field State Championships, no LOSD student athlete protested or acted discourteously toward any transgender athletes. Parks Decl. ¶ 11.

**The Complaint by Marshall Haskins**

Defendant Marshall Haskins is an OSAA Board Member, OSAA Director of Diversity, Equity, and Inclusion, and Senior Athletic Director for Portland Public Schools. Exh. 1, p. 1, 3; Haskins Dep. 7:6–24. On May 24, 2024, writing "as a

Pl's Resp. in Opp. to Defs' LOSD and LOSB's Mot. for Summ. J. – Page 4

representative of senior leadership at Portland Public Schools and as a member of the OSAA Executive Board," Haskins file a complaint alleging that Coach Parks had acted in a discriminatory fashion toward A.G. ("Haskins' Complaint"). Exh. 1, p. 1. Critically, Haskins later admitted in deposition that he did not know if any of the factual allegations in his complaint were "true" or "valid" at the time he submitted them. Haskins Dep. 52:17–25.

The Haskins Complaint characterized Coach Parks's email to OSAA as "an effort to stop our student from participating at the state track meet." *Id.* at 1.[1] The Haskins Complaint also provided eight purported examples of Coach Parks's alleged discriminatory actions before and during the 2024 OSAA Track and Field State Championships. *Id.* at 1–2. These included allegations of coordinating with other coaches to lobby against A.G.'s participation and boycott any medal ceremonies; harassing families and student athletes at the state tournament; speaking negatively to A.G. during the medal ceremony; and urging the crowd to "boo" A.G. *Id.* The Haskins Complaint also alleged that Coach Parks had violated several Teacher Standard and Practices Commission (TPSC) code sections. *Id.* Haskins emailed his complaint to Lou Bailey and Donna Watson of LOSD District; Larry Ramirez and John Beight of Salem Keizer School; Mary Kane and Jon Franco of Portland Public Schools; and Peter Weber and Kelly Foster of OSAA . *Id.* at 1–3.

---

[1] Note that several exhibits contain multiple page numbers and docket stamps. In his citations to this opposition memorandum, Coach Parks is always referring to the large page number printed in orange.

Pl's Resp. in Opp. to Defs' LOSD and LOSB's Mot. for Summ. J. – Page 5

**The Investigation and Firing of Coach Parks**

Upon receipt of the Haskins Complaint, LOSD Principal Kristen Colyer conducted an investigation into the accusations. *See* Colyer Dep. 13:13–17. On May 31, 2024, during the investigation, Coach Parks sent a letter to Oregon Senate President Robert Wagner, requesting that the state create an open division in which trans athletes could compete, and informed Senator Wagner that he had been accused of discrimination by Haskins for his advocacy to OSAA. (Compl. Exh.7, ECF No. 7-7).

Colyer's subsequent investigation was cursory at best. She interviewed only two students, spoke with Coach Parks, spoke with an athletics program administrator who was not at the OSAA track meet, and held brief phone and videoconferencing calls with purported witnesses from other schools. *See* Colyer Dep. 25–64. She also spoke briefly with Haskins, who provided brief answers and no supporting evidence, sometimes speaking only "ten words." Colyer Dep. 39:8–16. Despite not receiving thorough responses to her questions, Colyer admitted that she did not ask follow-up questions. *Id*. Haskins, for his part, though acknowledging that he spoke with Colyer regarding his complaint, claimed that he did not remember what was discussed or what questions were asked. Haskins Dep. 94:2–14. Despite Haskins's failure to provide promised witness contacts, *id.* at 40, Colyer closed the investigation and issued a 'Complaint Findings and Summary' that consisted of bare conclusions without supporting specifics. Exh. 3, p.1.

While Colyer admitted there was "no evidence" for most of Haskins's claims against Coach Parks, she nevertheless concluded that Coach Parks was "insubordinate and discriminated against [A.G.]." *Id.* at 2. Her findings explicitly characterized Parks's OSAA email as "an effort to stop the transgender athlete from participating in the state track meet" that was a "violation of school board policies" preventing "Hazing, Harassment, Intimidation, Bullying, Menacing, Cyberbullying, Teen Dating Violence, or Domestic Violence." Exh. 3, p. 1.

Colyer sent her "Complaint Findings and Summary" to other in LOSD employees and what she contended were the other "involved parties," including members of Salem-Keizer School, Portland Public Schools, and OSAA. Exh. 3, p. 2.

On June 12, 2024, Colyer met with Coach Parks to discuss the results of the investigation into the Haskins Complaint. *See* Parks Dep. 96–98. During this meeting, Colyer told Coach Parks "he had no right to send the letter to Senator Wagner," and it was "illegal" for him to do so. Dkt. 7, p. 12. Colyer told Coach Parks that he was "being non-renewed" specifically for writing a letter to OSAA, which she alleged "violated board policy." Exh. 4, p. 2.

**The Evaluation Form**

Coleman wrote a Coach Evaluation Form, dated June 10, 2024, for Coach Parks. Dkt 75-1. The form makes specific comments about the alleged shortcomings of the Lake Oswego track team. The evaluation raised concerns over injury rates and stated that Coach Parks "stopped sending athletes to [the school medical professional] late in the season." Dkt 75-1, p. 1. But Coleman neglected to mention

that he had previously given permission, at Coach Parks's request, to Coach Parks to use a former U.S. Olympic Team physician, instead of the school medical professional. Exh. 3, p. 2. When asked at deposition "did you provide this document . . . to Principal Colyer," Coleman responded: "I don't believe I ever did, no." Coleman Dep. 66–67.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) permits summary judgment only when no issue of material fact exists. The moving party carries the burden to show absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must "not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Allen v. Scribner*, 812 F.2d 426, 430 (9th Cir. 1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## ARGUMENT

### I. Lake Oswego's own records provide direct evidence that Coach Parks's termination was based on his First Amendment advocacy.

Lake Oswego cannot prevail in its motion for summary judgment because its own documents from 2024 provide evidence supporting Coach Parks's claim that he was fired for written advocacy to the OSAA.

Courts "review a public employee's First Amendment retaliation claim against their government employer under the two-step *Pickering* framework." *Thompson v.*

*Cent. Valley Sch. Dist. No. 365*, 2025 U.S. App. LEXIS 33820, *11 (9th Cir. 2025); *see also Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968). "At Step One, the plaintiff must show that (1) he spoke on a matter of public concern, (2) he suffered an adverse employment action, and (3) his protected expression was a substantial or motivating factor for the adverse action." *Central Valley*, 2025 U.S. App. LEXIS 33820 at *11; *see also Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 721 (9th Cir. 2022). "If the plaintiff satisfies Step One, he has established a *prima facie* claim for First Amendment retaliation." *Central Valley*, 2025 U.S. App. LEXIS 33820 at *11.

To defeat a *prima facie* claim, "[t]he burden then shifts to the public employer at *Pickering* Step Two to demonstrate either: (1) that its legitimate administrative interests in promoting an efficient workplace and avoiding workplace disruption outweigh the plaintiff's First Amendment interests; or (2) alternatively, the government would have taken the same actions absent plaintiff's expressive conduct." *Id.* at *11–12.

"Whether a public employee's speech was a substantial or motivating factor in an employer's adverse employment action 'is purely a question of fact.'" *Thompson v. Small*, 2023 U.S. App. LEXIS 12448, *3 (9th Cir. 2023) (quoting *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009)). Here, substantial questions of fact remain.

Lake Oswego asserts a single argument to rebut the *Pickering* claim: Coach Parks's letters were not the real reason he was fired. *See* Dkt. 73, p. 9–10. Lake Oswego argues that either Coach Parks's contract was not going to be renewed

Pl's Resp. in Opp. to Defs' LOSD and LOSB's Mot. for Summ. J. – Page 9

anyway, or he was going to be terminated over his conduct at the state track meet. *See id.* However, Defendants' own documents contradict this claim.

First, the "Findings and Summary" document authored by Colyer claimed that when Coach Parks "sent an email to OSAA," he acted in "violation of school board policies" preventing "*Hazing, Harassment, Intimidation, Bullying, Menacing, Cyberbullying, Teen Dating Violence, or Domestic Violence.*" Exh. 3, p. 1. Colyer's summary of the termination meeting documents reported that Coach Parks was "being non-renewed" specifically for the letter that "violated board policy." Exh. 4, p. 2. Colyer also stated Coach Parks's communication to Oregon Senator Wagner was "illegal." Dkt. 7, p. 12. In her summary, Colyer failed to reference any other factors, including performance evaluations or Coach Parks's alleged actions at the 2024 OSAA Track and Field State Championships. Exh. 4.

A reasonable jury viewing these documents could easily conclude that Lake Oswego terminated Coach Parks because of his protected advocacy. Colyer's own summary explicitly links the "non-renewal" to the OSAA letter, which she claimed "violated board policy." Exhs. 4, 2. This direct evidence of retaliatory intent creates a triable issue of fact that precludes summary judgment, regardless of Defendants' post-hoc assertions that Coach Parks would have been fired for other reasons.

## II. Lake Oswego's motion for summary judgment creates material factual disputes.

The affidavits in Lake Oswego's Motion for Summary Judgment contradict statements made elsewhere during the pendency of this dispute.

### A. The conflicting eyewitness testimony of Coach Parks's alleged celebration after the 400m creates a credibility dispute that precludes summary judgment.

A genuine issue of material fact exists over whether Lake Oswego's actions were motivated by Coach Parks's celebration after the Girls 400m state championship final. Conflicting eyewitness testimony, particularly that of a disinterested witness, creates a genuine issue of material fact and precludes summary judgment. The credibility of disinterested eyewitness testimony is not determined at the summary judgment stage: it is reserved for the factfinder at trial. *Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009).

Lake Oswego claims through purported eyewitness testimony that Coach Parks referred to A.G. as a "fucking dude." Dkt. 76, p. 2; Dkt. 77, p. 2. However, these claims are contradicted by another eyewitness, Nani Bauman, a disinterested witness who was located closer to Coach Parks. Bauman Decl. ¶¶ 3–7. This creates the need for a credibility determination, which is reserved for the factfinder. *See Balint*, 180 F.3d at 1054.

In its motion, Lake Oswego says Coach Parks's denial is "irrelevant," because what matters is that "Colyer had no reason to doubt these reports." Dkt. 73, p. 11. However, Colyer's Findings create a dispute of material fact regarding the exclamation "She beat a fucking dude." Colyer was told about this exclamation by

Wayne McCall before issuing her findings. (Exh. 7, p. 3) (appearing in her notes). However, she did not cite this in her finding. And, to the extent this exclamation could be interpreted as riling up the crowd, Colyer found "no evidence" to support that claim from the Haskins Complaint. Compare Exh. 7, p. 3 ("John yelled out, 'he beat the Fucking dude!'"); and Exh. 3. To the extent this exclamation was material to Lake Oswego's actions against Coach Parks, a material issue of fact persists regarding the credibility of Mr. McCall's account of this incident.

> B. **The contradictory accounts of the girls' 400m medal ceremony demonstrate a genuine issue of material fact as to whether Coach Parks acted improperly.**

A genuine issue of material fact exists over whether Lake Oswego's actions were motived by Coach Parks's alleged behavior at the 400-meter medal ceremony. Wayne McCall's affidavit asserts that Coach Parks insulted a student athlete from McDaniel High School when "he set the medal on the podium, instead of handing it to the McDaniel athlete, as he had done with the [other contestants]." Dkt. 77, p. 2. In contrast, David Heslam, a parent of a Roosevelt High School athlete who attended the 400-meter race at the OSAA State Championships, claimed that "Mr. Parks stopped and spoke to the McDaniel athlete before handing over the medal." Dkt. 76, p. 3. Kelly Foster, an OSAA staff member who was standing mere feet away from the podium, claimed that she could not hear the interaction between Coach Parks and A.G. Foster Dep. 37:24–25. According to Colyer's own notes, Foster told her that the discussion between Coach Parks and A.G. was inaudible, and that Haskins had asserted he could not hear what was said. *See* Exh. 7, p. 3. Because of these contradictory eyewitness accounts of the medal ceremony, the credibility of

these accounts rests with the finder of fact and are inappropriate for summary judgment. *Nelson*, 571 F.3d at 928.

### C. The post-hoc reliance on Coach Parks's performance evaluation is a pretextual justification contradicted by Lake Oswego's own prior approvals.

Lake Oswego also claims that "[b]ased solely on the concerns documented in his evaluation, Coleman would not have recommended rehiring plaintiff as coach in any event." Dkt. 73, p. 13. Shifting justifications for employment actions, particularly when they appear *post hoc*, may undermine the credibility of the employer's stated reasons and create a genuine issue of material fact. *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 569 (9th Cir. 2004). When presented with conflicting explanations of conduct, "a jury could reasonably conclude that its most recent explanation was pretextual." *Id.* (citations omitted). The contents of Director Coleman's evaluation also create dispute of fact. For example, the evaluation admonishes Coach Parks for failing to send student athletes to the Lake Oswego trainer. However, Coach Parks was in fact sending athletes to an Olympic doctor after gaining permission from Coleman, and regardless, Colyer was not ever given the evaluation form. *See* Coleman Dep. 66–67; Parks Decl. ¶ 4. To the extent that Lake Oswego relies on this evaluation, it creates a dispute of material fact for a jury.

### III. Coach Parks held a liberty interest in the renewal of his contract.

While Lake Oswego is afforded some protections as an employer of a contract worker rather than a tenured employee, it gave those privileges up by impugning Coach Parks's reputation and limiting his future employment opportunities.

Coach Parks's status as a contract employee provides no shelter to Lake Oswego. Even in the non-renewal of contract employees, liberty interests may be implicated where one's reputation is maligned. *E.g. Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972). A liberty interest persists where "dismissal effectively precludes future work in the individual's chosen profession." *Braswell v. Shoreline Fire Dep't*, 622 F.3d 1099, 1103 (9th Cir. 2010) (citing *Merritt v. Mackey*, 827 F.2d 1368, 1373 (9th Cir. 1987)). Whether a plaintiff has suffered a deprivation of liberty interest in pursuing his career is a triable issue of fact. *Id.* Here, Lake Oswego published a findings document referring to him as "insubordinate" and saying his letter was "*Hazing, Harassment, Intimidation, Bullying, Menacing, Cyberbullying, Teen Dating Violence, or Domestic Violence.*" Exh. 3, p. 1. This document was sent to multiple entities within the Oregon education and high school athletic community. Exh. 3, p. 2. Since Lake Oswego terminated Coach Parks he has been unable to secure a new coaching position, despite applying to eight job positions, due to the accusations against him. Parks Decl. ¶ 12.

Lake Oswego did more than simply decline to renew a contract: it branded Coach Parks a "discriminator" and an "insubordinate" bully in a document disseminated throughout the state's athletic community. By making "extreme statements" that impugned Parks's "good name, reputation, honor, or integrity" and effectively barred him from his chosen profession, Lake Oswego crossed the line from a standard personnel decision to a deprivation of a protected liberty interest. *See Roth*, 408 U.S. at 573. Whether this stigma has precluded Parks's future

employment—as evidenced by his eight unsuccessful job applications—is a question of fact for the jury. *Braswell*, 622 F.3d at 1103.

## CONCLUSION

Because disputes of material fact exist, created by Defendants' own evidence, this Court should deny Defendants' Motion for Summary Judgment.


Dated: February 24, 2026                    Respectfully submitted,

                                                 ***/s/ Tim Kilcullen***
Tim Kilcullen*
LIBERTY JUSTICE CENTER
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
(512) 481-4400
tkilcullen@libertyjusticecenter.org

Luke D. Miller
Miller Bradley Law, LLC.
1567 Edgewater St. NW
PMB 43
Salem, OR 97304
luke@millerbradleylaw.com

* *Admitted pro hac vice*

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically with the Court's Case Management/Electronic Case Filing (CM/ECF) system. The Court and/or Clerk of Court may serve and give notice to counsel by CM/ECF electronic transmission.

The referenced exhibits are under seal, and are submitted to the court with the Attorney Declaration, in compliance with L.R. 10 and F.R.C.P. 10.

The 24th day of February 2026.

*/s/ Tim Kilcullen*

Tim Kilcullen*
LIBERTY JUSTICE CENTER
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
(512) 481-4400
tkilcullen@libertyjusticecenter.org


* *Admitted pro hac vice*

*Attorney for Plaintiff John Parks*